UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER FREEMAN,

            Plaintiff,

      v.

STAKE.COM, PRIMEDICE, EDWARD CRAVEN,
BIJAN TEHRANI, SLICEMEDIA B.V., MEDIUM
RARE N.V., EASYGO SOLUTIONS PTY LTD,
MEBIT.IO, AND MLADEN VUČKOVIĆ.

            Defendants.

Case No. 22-CV-7002 (RA)

## CORRECTED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

David McGill
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Email: dmcgill@orrick.com

Sachi Schuricht (pro hac vice pending)
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-4583
Email: sschuricht@orrick.com

R. David Hosp
222 Berkeley Street
Suite 2000
Boston, MA 02116
Telephone: (617) 880-1802
Email: dhosp@orrick.com

Eliza Lehner (pro hac vice pending)
51 West 52 Street
New York, NY 10019
Telephone: (212) 506-5000
Email: elehner@orrick.com

Orrick, Herrington & Sutcliffe LLP
*Attorneys for Defendants*

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ............................................................... 1

II.     BACKGROUND .................................................................................. 5

        A.      Parties............................................................................................ 5

        B.      Procedural Background.................................................................. 8

III.    ARGUMENT ...................................................................................... 8

        A.      The Court lacks subject-matter jurisdiction, as Tehrani and
                Primedice destroy diversity jurisdiction. ..................................... 9

                1.      Freeman fails to allege all of the Defendants' citizenship,
                        thus failing to prove diversity jurisdiction. ................................ 10

                2.      Tehrani—and any partnership of which he is allegedly a
                        member, including Primedice—is "stateless" and cannot be
                        subject to diversity jurisdiction.................................................. 11

                3.      Primedice—and any other partnership of which Freeman
                        claims to be a member—also adopts Freeman's citizenship
                        and destroys diversity. ................................................................ 12

        B.      Stake.com is a non-jural entity that cannot be sued................................ 13

        C.      The Court lacks personal jurisdiction over nearly all the
                Defendants. ............................................................................... 14

                1.      The Court lacks general jurisdiction over all the Defendants
                        under § 301 and the Due Process Clause. ................................... 15

                2.      The Court lacks specific jurisdiction over Craven,
                        Vučković, and the entity Defendants. .......................................... 18

        D.      The Court should dismiss as untimely all claims related to
                Stake.com's development and launch (claims 1-5) and conversion
                (claims 7 and 8)........................................................................... 25

                1.      Under the choice of law analysis, New York's and
                        borrowed jurisdiction's statutes of limitations apply.................. 25

                2.      The first fraud claim (claim 1) is untimely under D.C. law......... 27

                3.      The breach of fiduciary duty claim (claim 2) is time-barred. ...... 27

                4.      The unfair competition claim (claim 3) is untimely. .................. 28

                5.      The claim for misappropriation of ideas (claim 4) is
                        untimely. ..................................................................................... 29

                6.      The claim for tortious interference with prospective
                        economic advantage (claim 5) is time-barred. ............................ 30

                7.      The conversion claims (claims 7 and 8) are untimely. ............... 31

E.  Impermissible group pleading dooms several claims (claims 1-6 and 8) against the entity Defendants and Vučković.............................. 32

F.  The secondary claims (1, 3-6, 9, and 10) should be dismissed as duplicative. ............................................................................................. 34

  1.  The claims for fraud, unfair competition, idea misappropriation, tortious interference, and unjust enrichment (claims 1, 3-6, and 10) impermissibly duplicate other claims. .............................................................................. 34

  2.  The equitable claims for unjust enrichment and accounting (claims 6 and 9) fall flat because they repeat legal claims. ......... 35

G.  Freeman fails to adequately plead several claims (claims 1, 3-5, 7-9, and 10). ...................................................................................... 36

  1.  Under the choice-of-law analysis, New York law usually governs because it has the greatest interest in most claims. ........ 36

  2.  Freeman fails to adequately plead and allege fraud (claims 1 and 10) under Rules 9(b) and 12(b)(6)........................ 37

  3.  Freeman fails to state a claim for unfair competition (claim 3). .................................................................................. 38

  4.  Freeman fails to allege novelty and thus fails to state a claim for idea misappropriation (claim 4). ................................. 39

  5.  Freeman's tortious interference claim (claim 5) fails because he identifies no third-party business relationship.......... 41

  6.  The conversion of equity claim (claim 7) is inadequately pleaded and both conversion claims (claims 7 and 8) fail for lack of jurisdiction................................................. 42

  7.  Freeman's accounting claim (claim 9) is barred by laches.......... 44

IV.  CONCLUSION................................................................................. 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases from the United States**

*Abbott Labs v. Feinberg*,
    No. 21-45, 2023 WL 19076 (2d Cir. Jan. 3, 2023) ................................................42

*Abe's Rooms, Inc. v. Space Hunters, Inc.*,
    38 A.D.3d 690, 833 N.Y.S.2d 138 (2007) .....................................................38, 39

*Afloat in France, Inc. v. Bancroft Cruises Ltd.*,
    No. 03-cv-917-SAS, 2003 WL 22400213 (S.D.N.Y. Oct. 21, 2003) ....................22

*Alston v. Stone*,
    No. 02-cv-05338, 2005 WL 668395 (S.D.N.Y. Mar. 21, 2005) ...........................31

*Am. Bus. Training Inc. v. Am. Mgmt. Ass'n*,
    50 A.D.3d 219, 851 N.Y.S.2d 491 (2008) .............................................................39

*Aritomo v. Rhee*,
    No. 21-cv-4875-RA, 2022 WL 17156554 (S.D.N.Y. Nov. 22, 2022) ...................15

*Ash v. Richards*,
    572 F. App'x 52 (2d Cir. 2014) ............................................................................42

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    813 F.3d 98 (2d Cir. 2016) ...................................................................................37

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2011) ..............................................................................32

*Aybar v. Aybar*,
    37 N.Y.3d 274, 177 N.E.3d 1257, 156 N.Y.S.3d 104 (2021) ..........................15, 17

*B & W Mgmt., Inc. v. Tasea Inv. Co.*,
    451 A.2d 879 (D.C. 1982) ....................................................................................39

*Ball v. Hershey Foods Corp.*,
    842 F. Supp. 44 (D. Conn. 1993) .........................................................................39

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999) .................................................18, 19, 21, 43

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002) ............................................................14, 15

*Brady v. John Goldman, Esq.*,
    No. 16-cv-2287-GBD, 2016 WL 8201788 (S.D.N.Y. Dec. 5, 2016) ....................10

*Brodsky v. Stadlen*,
   138 A.D.2d 662, 526 N.Y.S.2d 478 (1988) ........................................................14

*Broughel v. Battery Conservancy*,
   No. 07-cv-7755, 2010 WL 1028171 (S.D.N.Y. Mar. 16, 2010)...............................39

*Bryant v. Broad. Music Inc.*,
   721 F. App'x 78 (2d Cir. 2018) .......................................................................31

*Calderoni v. Senese*,
   No. cv-085017724, 2014 WL 7530169 (Conn. Super. Ct. Dec. 3, 2014) ..............44

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)...............................................................................10

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (2004)................................41

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018)...............................................................................15

*Chiste v. Hotels.com L.P.*,
   756 F. Supp. 2d 382 (S.D.N.Y. 2010)................................................................37

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
   No. 12-cv-1667-ER, 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014)........................32

*Coudert Bros. v. Easyfind Int'l, Inc.*,
   601 F. Supp. 525 (S.D.N.Y. 1985)....................................................................11

*Cresswell v. Sullivan & Cromwell*,
   922 F.2d 60 (2d Cir. 1990)...........................................................................9, 11

*Daou v. BLC Bank, S.A.L.*,
   42 F.4th 120 (2d Cir. 2022) .........................................................18, 19, 42, 43

*Datto Inc. v. Braband*,
   856 F. Supp. 2d 354 (D. Conn. 2012)................................................................35

*Davis v. Scot. Re Grp. Ltd.*,
   30 N.Y.3d 247, 88 N.E.3d 892, 66 N.Y.S.3d 447 (2017).....................................25

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)..............................................................................42

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987).............................................................................33

*Doe v. McAdam Fin. Grp. LLC*,
   No. 22-cv-00113-GHW-SN, 2022 WL 3579700 (S.D.N.Y. Aug. 3, 2022),
   *adopted*, 2022 WL 3578569 (Aug. 19, 2022) .................................................................23

*Eades v. Kennedy, PC L. Offs.*,
   799 F.3d 161 (2d Cir. 2015)............................................................................................23

*Enyia v. New York City Health & Hosps. Corp.*,
   No. 16-cv-6344-RA, 2019 WL 5308896 (S.D.N.Y. Oct. 18, 2019).........................................13

*Equitable Life Assurance Soc'y*,
   627 F. Supp. 1023 (S.D.N.Y. 1985) .................................................................................12

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
   400 F. App'x 611 (2d Cir. 2010) ....................................................................................35

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019)..............................................................................................11

*Frank v. P N K (Lake Charles) L.L.C.*,
   947 F.3d 331 (5th Cir. 2020) ...........................................................................................17

*Friedman v. Bloomberg L.P.*,
   884 F.3d 83 (2d Cir. 2017)......................................................................................15, 22

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
   991 F.3d 370 (2d Cir. 2021)............................................................................................13

*Gerena v. Korb*,
   617 F.3d 197 (2d Cir. 2010)............................................................................................25

*Gillespie v. St. Regis Residence Club*,
   343 F. Supp. 3d 332 (S.D.N.Y. 2018)..........................................................................32, 34

*Glob. Fin. Corp. v. Triarc Corp.*,
   93 N.Y.2d 525, 715 N.E.2d 482, 693 N.Y.S.2d 479 (1999)....................................................37

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006)...............................................................................25, 36, 37

*Golub Capital LLC v. NB Alts. Advisers LLC*,
   No. 21-cv-3991-LJL, 2022 WL 540653 (S.D.N.Y. Feb. 22, 2022)...........................................13

*Greenlight Cap., Inc. v. GreenLight (Switzerland) S.A.*,
   No. 04-cv-3136, 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005) ...................................................29

*Grgurev v. Licul*,
   203 A.D.3d 624, 165 N.Y.S.3d 63 (2022) .........................................................................35

*Grusd v. Arccos Golf LLC*,
No. 653239/2013, 2014 WL 2531511 (N.Y. Sup. Ct. June 3, 2014)......................................34

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
331 F. Supp. 3d 221 (S.D.N.Y. 2018)......................................................41

*Hamilton Nat. Bank v. Belt*,
210 F.2d 706 (D.C. Cir. 1953)..................................................39

*Hawkins v. Greenfield*,
797 F. Supp. 30 (D.D.C. 1992)...............................................27

*Hood v. Ascent Med. Corp.*,
691 F. App'x 8 (2d Cir. 2017) ..........................................17

*Hudson & Broad, Inc. v. J.C. Penney Corp.*,
553 F. App'x 37 (2d Cir. 2014) ........................................39

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
12 N.Y.3d 132, 907 N.E.2d 268, 879 N.Y.S.2d 355 (2009)..............................28, 36

*K&D LLC v. Trump Old Post Off. LLC*,
951 F.3d 503 (D.C. Cir. 2020) ..........................................39

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984).........................................................22

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)...............................................41

*La Russo v. St. George's Univ. Sch. of Med.*,
747 F.3d 90 (2d Cir. 2014)................................................13

*Lemelson v. Carolina Enterprises, Inc.*,
541 F. Supp. 645 (S.D.N.Y. 1982) ....................................30

*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*,
87 F.3d 44 (2d Cir. 1996)..................................................10

*Longi v. New York*,
No. cv-02-5821, 2006 WL 8441210 (E.D.N.Y. June 26, 2006)...........................41

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015)...............................................38

*Lund's Inc. v. Chem. Bank*,
870 F.2d 840 (2d Cir. 1989)...............................................42

*Marvel Characters, Inc v. Kirby*,
   726 F.3d 119 (2d Cir. 2013)................................................................19

*McGhan v. Ebersol*,
   608 F. Supp. 277 (S.D.N.Y. 1985) ......................................................40

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..................................................................16

*Mopex, Inc. v. Am. Stock Exch., LLC*,
   No. 02-cv-1656, 2002 WL 342522 (S.D.N.Y. Mar. 5, 2002)................29

*Morrison v. Nat'l Australia Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008)..................................................................9

*Murphy v. Gutfreund*,
   624 F. Supp. 444 (S.D.N.Y. 1985) ......................................................12

*Murphy v. Morlitz*,
   751 F. App'x 28 (2d Cir. 2018) ...........................................................36

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
   208 F.3d 368 (2d Cir. 2000)...........................................................39, 40

*Newman-Green, Inc. v. Alfonzo-Larrain*,
   490 U.S. 826 (1989)............................................................................11

*Newmyer v. Sidwell Friends Sch.*,
   128 A.3d 1023 (D.C. 2015) ................................................................41

*Norbrook Lab'ys Ltd. v. G.C. Hanford Mfg. Co.*,
   126 F. App'x 507 (2d Cir. 2005) .........................................................28

*Okoroafor v. Emirates Airlines*,
   195 A.D.3d 540, 145 N.Y.S.3d 807 (2021) ........................................17

*Opals on Ice Lingerie v. BodyLines, Inc.*,
   425 F. Supp. 2d 286 (E.D.N.Y. 2004) ................................................29

*Page v. Democratic Nat'l Comm.*,
   2 F.4th 630 (7th Cir. 2021) ............................................................11, 12

*In re Parmalat Sec. Litig.*,
   381 F. Supp. 2d 283 (S.D.N.Y. 2005)..................................................22

*Pearson Education, Inc. v. ABC Books LLC*,
   No. 19-cv-7642-RA, 2020 WL 3547217 (S.D.N.Y. June 30, 2020) ..................5, 23

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)...................................................................................18, 20, 44

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*,
    943 F.3d 613 (2d Cir. 2019)........................................................................................11, 12

*Portfolio Recovery Assocs., LLC v. King*,
    14 N.Y.3d 410, 927 N.E.2d 1059, 901 N.Y.S.2d 575 (2010)...................................26

*Ray v. Proxmire*,
    581 F.2d 998 (D.C. Cir. 1978)..........................................................................................39

*Red Mountain Med. Holdings, Inc. v. Brill*,
    563 F. Supp. 3d 159 (S.D.N.Y. 2021).............................................................................31

*REI Holdings, LLC v. Marcus*,
    No. 3:20-cv-01178, 2021 WL 3173733 (D. Conn. July 27, 2021).........................44

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)........................................................................................15, 16, 17

*Rodriguez v. City of New York*,
    No. 11-cv-2053-RA, 2013 WL 3584834 (S.D.N.Y. July 15, 2013)........................13

*In re Roman Cath. Diocese of Albany, New York, Inc.*,
    745 F.3d 30 (2d Cir. 2014)........................................................................................15, 16, 17

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*,
    672 F.2d 1095 (2d Cir. 1982)....................................................................................28, 29, 38

*Schoolcraft v. City of New York*,
    103 F. Supp. 465 (S.D.N.Y. 2015) ..................................................................................6

*Smith v. Penn Cent. Corp.*,
    No. 83-cv-6296, 1983 U.S. Dist. LEXIS 11850 (S.D.N.Y. Nov. 9, 1983)............30

*Soley v. Wasserman*,
    639 F. App'x 670 (2d Cir. 2016) .....................................................................................35

*Spinap Corp. v. Cafagno*,
    302 A.D.2d 588, 756 N.Y.S.2d 86 (2003) ................................................................30

*Sporn v. MCA Rec., Inc.*,
    88 A.D. 2d 857, 451 N.Y.S.2d 750 (1982) ...............................................................29

*Sporn v. MCA Records*,
    58 N.Y.2d 482, 448 N.E.2d 1324, 462 N.Y.S.2d 413 (1983)................................29

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)..................................................................41

*Suber v. VVP Servs., LLC*,
    No. 21-2649, 2023 WL 115631 (2d Cir. Jan. 10, 2023) .........................21

*Sulehria v. New York*,
    No. 13-cv-6990-AJN, 2014 WL 4716084 (S.D.N.Y. Sept. 19, 2014)....................38

*Tanges v. Heidelberg N. Am., Inc.*,
    93 N.Y.2d 48, 710 N.E.2d 250, 687 N.Y.S.2d 604 (1999)......................25

*Thea v. Kleinhandler*,
    807 F.3d 492 (2d Cir. 2015)..................................................................26

*Timothy Coffey Nursery Landscape Inc. v. Soave*,
    760 F. App'x 58 (2d Cir. 2019) ..............................................................44

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022)...................................................14

*Travelers Ins. Co. v. 633 Third Assocs.*,
    973 F.2d 82 (2d Cir. 1992)....................................................................35

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
    729 F.3d 215 (2d Cir. 2013)..................................................................20

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)..................................................................23

*United States v. Taame*,
    830 F. App'x 53 (2d Cir. 2020) ..............................................................35

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
    924 F.3d 32 (2d Cir. 2019)..........................................................28, 29, 30

*Wall v. CSX Transp., Inc.*,
    471 F.3d 410 (2d Cir. 2006)..................................................................36

*Washington v. U.S. Tennis Ass'n, Inc.*,
    290 F. Supp. 2d 323 (E.D.N.Y. 2003) ...................................................13

*White Plains Coat & Apron Co. v. Cintas Corp.*,
    460 F.3d 281 (2d Cir. 2006)..................................................................41

*White v. Priester*,
    78 A.D.3d 1169, 912 N.Y.S.2d 127 (2010) ......................................44, 45

*Williams v. Nat'l Gallery of Art, London*,
  No. 16-cv-6978, 2017 WL 4221084 (S.D.N.Y. Sept. 21, 2017) ...........................................44

*Williams v. Williams*,
  No. CV-065000985-S, 2010 WL 4075277 (Conn. Super. Ct. Sept. 15, 2010) ......................44

*Williams v. Williams*,
  No. CV-065000985-S, 2011 WL 6945652 (Conn. Super. Ct. Nov. 21, 2011).......................45

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
  846 F.3d 58 (2d Cir. 2017)..................................................................................................13

*Yak v. BiggerPockets LLC*,
  No. 20-3498, 2022 WL 67740 (2d Cir. Jan. 7, 2022) ...........................................................20

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016)..................................................................................32

**Australian Cases**

*Daebo Shipping Co Ltd. v. The Ship Go Star*,
  (2012) FCAFC 156 (Austl.)................................................................................................41

*Kafataris v. Davis*,
  (2016) FCAFC 134 (Austl.)................................................................................................39

*Penfolds Wines Pty Ltd. V. Elliott*,
  (1946) 74 CLR 204 (Austl.) ...............................................................................................43

**Statutes**

28 U.S.C. § 1332...................................................................................................................9, 11

D.C. Code § 12-301 ..................................................................................................................27

N.Y. C.P.L.R. § 202.............................................................................................................26, 37

N.Y. C.P.L.R. § 214.....................................................................................................28, 29, 30, 31

N.Y. C.P.L.R. § 301...........................................................................................................14, 15

N.Y. C.P.L.R. § 302..........................................................................................................*passim*

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 7.1..............................................................................................................8, 10

Fed. R. Civ. P. 8.................................................................................................................9, 32

Fed. R. Civ. P. 9 ................................................................................................ *passim*

Fed. R. Civ. P. 12 ...................................................................................5, 8, 10, 36

Fed. R. Civ. P. 17 .....................................................................................................13

Fed. R. Civ. P. 19 .....................................................................................................12

**Other Authorities**

Australian Securities and Investments Commission, ASIC's Registers,
    https://asic.gov.au/online-services/search-asic-s-registers/ .......................................4

Curacao Chamber of Commerce Registry Search,
    www.curacaochamberofcommerce.com/index.php/registry-services/registry-
    search/ ..............................................................................................................4

Ryan Haar, "How to Decide on a Hot Wallet or Cold Wallet for Your Crypto,"
    *Time*, Sept. 2021, https://time.com/nextadvisor/investing/cryptocurrency/hot-
    wallet-vs-cold-wallet.............................................................................................3

Serbian Business Registers Agency, https://www.apr.gov.rs/searches.4090.html .........................4

4 Wright & Miller, Fed. Prac. & Proc. Civ. § 1067.5 (4th ed. updated Apr. 2022) .....................17

Defendants Primedice, Stake.com,[1] Edward Craven, Bijan Tehrani, Slicemedia B.V. ("Slicemedia"), Medium Rare N.V. ("Medium Rare"), Easygo Solution Pty Ltd ("Easygo"), MeBit.io a/k/a MEBIT.d.o.o. ("MeBit"), and Mladen Vučković (a/k/a Mladen Vukotic or Mladen Vukovic or Mladen Vuckovic) (collectively "Defendants") hereby move to dismiss the First Amended Complaint ("Amended Complaint" or "FAC") with prejudice.

## I.   <u>PRELIMINARY STATEMENT</u>

With friends like Chris Freeman, who needs enemies? Although his latest work of fiction, the Amended Complaint, was filed in the wrong place at the wrong time and lacks any semblance of legal merit, it does succeed in illustrating how Freeman has allowed envy and greed to overwhelm whatever allegiance he once had to the truth. In his Amended Complaint, Freeman transforms a long-running friendship and his own decision to abandon Primedice into a dramatic tale of supposed "bullying," "secret[]" betrayals, and "deceit." FAC, Dkt. No. 27 ¶¶ 9-12, 22, 55.[2] This is pure fantasy. As his own inconsistent allegations show, the emotion driving Freeman's rhetoric is not righteousness; it is regret—regret that he passed on the opportunity to join a successful business in favor of absconding with tens of millions of dollars in cryptocurrency that he had surreptitiously embezzled from Primedice. Apparently not content to siphon away Primedice assets, and no doubt concerned that his former business partners might soon hold him to account for his misdeeds, Freeman commenced this litigation to concoct a narrative that shamelessly positions *him* as the victim of betrayal and abandonment in this story.

The real story, as even Freeman admits, is that while he and his best childhood friend, Bijan Tehrani, were at college, Freeman expressed an interesting in helping Tehrani and his partner

---

[1] As described below, Stake.com is not a legal entity and has no capacity to be sued. *Infra* § III.B.
[2] The blackline that Freeman submitted with his Amended Complaint, Dkt. No. 27-1, changed the original paragraph numbers, so that the crossed-out numbers do not align with the paragraph numbers in the original complaint. A corrected redline is attached as Exhibit 1 to this motion.

Edward Craven as they worked to create what would become Primedice—a cryptocurrency-based gambling website that allowed non-U.S. users to play online dice games. *Id.* ¶¶ 2-3, 34-40. Tehrani invited Freeman to join in developing the business only due to their childhood friendship, with hopes that he might contribute to marketing and website design. *See id.* ¶ 59. But Freeman's contributions were fleeting and, after 2016, he turned his attention elsewhere. Indeed, the Amended Complaint alleges no meaningful contributions by Freeman to Primedice after that time.

Unlike Freeman, Craven and Tehrani were interested in actually building new businesses. In 2016, Tehrani, Craven, and others formed a separate venture in Australia, where Tehrani moved to intensively focus on developing the new business that would eventually launch and operate the Stake.com platform. *See id.* ¶¶ 6, 22, 115-116. By his own admission, Freeman had the opportunity to join this venture at the start but "declined to join," because he did not want "to leave his home to begin a new life halfway around the world." *Id.* ¶¶ 9, 115.

Although Stake.com encountered early struggles (which is perhaps why Freeman declined a later opportunity to invest in the business that operates it), through the hard work of Tehrani, Craven, and others, Stake.com became a popular online cryptocurrency gambling platform that allows users outside the U.S. to wager fiat currency, as well as cryptocurrency, on a wide variety of online casino games and sporting events (unlike Primedice, which hosts only a dice game). *Id.* ¶ 159. The business operating Stake.com is now worth "over $1 billion." *Id.* ¶ 175.

Instead of making peace with his decision to opt out of the new business opportunity, Freeman apparently became consumed with bitterness, leading him to steal tens of millions of dollars of assets from Primedice and then manufacture a tale about how he made these bad decisions only because his best friend "lied … about the true nature of Stake.com," "acted to freeze [him] out," and "conceal[ed] his rights" to the new business. *Id.* ¶¶ 14, 16, 145, 220. All Freeman

can allege to back up these sensational claims is that, at first, Tehrani and Craven envisioned building a "fiat money casino," not a cryptocurrency one. *Id.* ¶ 8. Of course, Freeman alleges no facts to show that (i) Tehrani and Craven were not, in fact, considering a fiat casino at that time; (ii) Stake.com does not, in fact, accept fiat currency (which it does); or (iii) that he was denied the opportunity to invest in the business running Stake.com after it launched and began accepting cryptocurrency (he turned that opportunity down as well). But Freeman does not let those details get in the way of a good story.

Also left unaddressed in the Amended Complaint is how Freeman obtained exclusive control over the Primedice cold-storage wallet and held it hostage with the express aim of developing leverage over his then partners.[3] For all the manufactured drama in the Amended Complaint, Freeman somehow fails to disclose that he used the Primedice cold wallet as a personal piggy bank, surreptitiously funneling its multi-million-dollar contents to his own personal Coinbase account in or about January 2021.

As if that were not bad enough, even as he omits key details about his own misconduct, Freeman stretches to invoke sensational public events in hopes of bolstering his fictional account. It is no mere coincidence that, after the public implosion of the cryptocurrency company FTX, Freeman conspicuously evolved his narrative to feature a new regulatory compliance theme in the Amended Complaint, even adding gratuitous mention of FTX along the way. *Compare* FAC ¶ 31, *with* Complaint, Dkt. No. 1, ¶¶ 18-19. This theme, he seems to think, can transform him from a villain to a hero who deserves part of a new business that he had no role in creating. According to

---

[3] A "hot wallet" or "software wallet" is a digital wallet connected to the internet. A "cold wallet" is a physical device (similar to a USB drive) that holds cryptocurrency entirely offline. Ryan Haar, "How to Decide on a Hot Wallet or Cold Wallet for Your Crypto," *Time*, Sept. 2021, https://time.com/nextadvisor/investing/cryptocurrency/hot-wallet-vs-cold-wallet/.

this latest account, his decision not to join Stake.com can be explained not by his "cho[ice] not to leave his home," but by his newly invented "fidelity to proper compliance." FAC ¶¶ 115, 26. He "stood," he writes with no apparent irony, "as the last bulwark against Craven and Tehrani's illegal schemes." *Id.* ¶ 206. Tellingly, however, the Amended Complaint fails to allege a single action taken by Freeman to advance compliance at Primedice.

Freeman's breathless claims of regulatory malfeasance ring hollow in much the same way. His allegations that Primedice and Stake.com are "availing [themselves] to the markets in the U.S. and New York" to "taunt[] regulators" are not only unsupported, but also belied by Freeman's carefully worded allegation that only the Primedice homepage, not its gaming pages, are accessible in New York. *Id.* ¶¶ 21, 25, 28, 203; Declaration of David H. McGill ("McGill Decl.") ¶¶ 2, 6. In fact, Primedice, Stake.com, and Stake.us all take extensive measures to make their games *unavailable* to users in New York, including by: (i) prohibiting New York users in their terms of service; (ii) requiring potential users to state their location when registering for an account, and refusing registration to users in New York; (iii) deploying geo-blocking software to prevent potential customers with New York IP addresses from using the websites; and (iv) for users who may attempt to circumvent the foregoing limitations by using a virtual private network ("VPN") software, requiring upload and verification of official government identification. *See* McGill Decl. ¶¶ 2, 6-9; Declaration of Bijan Tehrani ("Tehrani Decl.") ¶ 3; Declaration of Mladen Vučković (Vučković Decl.) ¶¶ 13, 14.

Finally, Freeman's dramatic claims about "deceit" and "opaque" corporate structures show only how little he cared to learn about the businesses he now claims to own. FAC ¶¶ 12, 22. Setting aside that it is quite common for companies founded by 20-year-olds "without significant business experience" to develop, formalize, and incorporate businesses as they and their creators grow more

established, *id.* ¶ 46, in this case, even a basic online search would have revealed the corporate activity that the Defendants supposedly intended to "conceal" from the world, *id.* ¶¶ 136, 143.[4]

Fortunately, the Court need not wade into any factual dispute about the tale that Freeman has spun. That is because his Amended Complaint must be dismissed for threshold legal reasons. Indeed, the Court must dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), respectively, because it lacks subject-matter jurisdiction and personal jurisdiction. Although the Court need not go any farther, the Amended Complaint also alleges facially untimely claims and fails to state claims under Rules 9(b) and 12(b)(6) for an array of reasons—many of them obvious—that independently warrant dismissal.

Ultimately, every claim that Freeman asserts suffers from multiple fatal flaws, thereby necessitating dismissal of the entire case with prejudice.

## II.    BACKGROUND[5]

### A.    Parties

Freeman is a Florida resident. FAC ¶ 18. He was a resident of Connecticut until 2015, then Washington, D.C., from 2015 to 2017, and New York from later in 2017 to 2021. *Id.* Craven is and has been a citizen and resident of Australia since at least 2014. *Id.* ¶ 20; Declaration of Edward Craven ("Craven Decl.") ¶ 2; Amended Disclosure ("AD"), Dkt. No. 30, p. 2. Mladen Vučković

---

[4] *See* Curacao Chamber of Commerce Registry Search, www.curacaochamberofcommerce.com/index.php/registry-services/registry-search/ (showing Slicemedia's and Medium Rare's registration); *see also* Australian Securities and Investments Commission, ASIC's Registers, https://asic.gov.au/online-services/search-asic-s-registers/; Serbian Business Registers Agency, https://www.apr.gov.rs/searches.4090.html.

[5] Facts referenced herein are derived from the Amended Complaint, the documents incorporated therein, the Declarations of David McGill, Bijan Tehrani, Edward Craven, and Mladen Vučković, and matters of which this Court may take judicial notice. *See Pearson Education, Inc. v. ABC Books LLC*, No. 19-cv-7642-RA, 2020 WL 3547217, at *3 & n.3 (S.D.N.Y. June 30, 2020) ("[I]t is well established that a district court may consider materials outside the pleadings on a 12(b)(2) motion," including "affidavits submitted by the defendant."). Facts derived from the Amended Complaint and incorporated documents are assumed true for purposes of this motion only.

is and has been a citizen and resident of Serbia since at least 2016. FAC ¶ 29(a); Vučković Decl. ¶ 2; AD 2. Neither Craven nor Vučković lived in, worked in, or traveled to New York from 2016 to 2022. Craven Decl. ¶ 2; Vučković Decl. ¶ 2.

Tehrani is a United States citizen. Tehrani Decl. ¶ 2; AD 2. He was a resident of Connecticut "through at least 2015"; then a New York resident; and by 2017, an Australian resident. FAC ¶ 19; Tehrani Decl. ¶ 2. Freeman's dates for Tehrani's New York residence are incorrect and internally inconsistent because he states that Tehrani was both a Connecticut resident "*through … 2015*" and a New York resident in 2015. FAC ¶ 19. In fact, Tehrani was a Connecticut resident through 2015; a New York resident beginning only in 2016; and an Australia resident after he left New York for Australia in August 2016. *See* Tehrani Decl. ¶ 2.[6]

Primedice started as an unincorporated business venture formed around 2012 or 2013 pursuant to an oral agreement. FAC ¶¶ 35, 38, 40, 53, 282. The website Primedice.com is designed to be inaccessible in New York. To take any action, a user must "register" or "log in," and when a New York user attempts to do so, a message blocks the player from taking action, saying, "Sorry, Primedice isn't available in your region." McGill Decl. ¶ 2. Primedice has been designed to deny access to New York users since at least 2014. Tehrani Decl. ¶ 3. Freeman's suggestion that

---

[6] This is one of the many inconsistencies in Freeman's allegations about the parties' residences. Because Freeman is incorrect about the date that Tehrani left New York, he also incorrectly alleges that Tehrani resided in New York during the "creation, development, launch, and early operation of Stake.com." FAC ¶¶ 19, 24. In addition, Freeman is notably inconsistent as to even his *own* residence, saying both that he "was a resident of Washington D.C. from 2015 to 2017" and that he chose not to "uproot himself *from New York*" after the Defendants explained in "August 2016" that he would "have to agree to move to Australia" to participate in a fiat casino. *Id.* ¶¶ 18, 112, 115 (emphasis added). Given these inconsistencies, the Court can reject Freeman's erroneous statements, particularly that Tehrani became a New York resident in 2015. *See Schoolcraft v. City of New York*, 103 F. Supp. 465, 525 (S.D.N.Y. 2015) (court may disregard a plaintiff's inconsistent factual allegations). But ultimately the Court need not resolve these inconsistencies because the disposition of the motion does not turn on the answer. *See infra* §§ III.C.1, III.D.

Primedice "is accessible in" and "currently avails itself of New York" ignores this purposeful blocking of Primedice in New York—as Freeman surely knows. FAC ¶ 21.

Stake.com is not a legal entity, but rather a website operated by Medium Rare as an online casino and sports wagering apparatus that accepts fiat and cryptocurrency. *Id.* ¶ 22; Vučković Decl. ¶ 12. It, too, is designed to be inaccessible in New York and all other U.S. states. In addition to restrictions in the terms of service, a pop-up on the website blocks users' access to the website, saying, "Sorry, Stake.com isn't available in your region." McGill Decl. ¶ 6; Vučković Decl. ¶¶ 13, 14. If users try to circumvent this with a VPN (as Freeman alleges, *e.g.*, FAC ¶ 179), the websites require additional government identification before an account can be registered (Stake.us) or funds can be deposited (Stake.com). McGill Decl. ¶¶ 7, 9. Stake.us is a free, online social casino game that does not accept real wagers and is available in only certain states. FAC ¶ 200. Users from New York are not allowed to play on Stake.us, as is clear from the terms of use and blocking features. McGill Decl. ¶ 8. Stake.us also requires potential customers to submit and verify identification documents. *Id.* ¶ 9.

Slicemedia[7] and Medium Rare are limited liability companies (LLCs) incorporated in Curacao, whose sole member is Vučković. Vučković Decl. ¶¶ 3, 7; AD 2. Their principal places of business are Australia and Serbia. Vučković Decl. ¶¶ 4, 8. Easygo is an Australian LLC whose sole member is Craven. Craven Decl. ¶ 3. MeBit is a Serbian LLC whose sole member is Vučković, and principal place of business and incorporation is Serbia. Vučković Decl. ¶¶ 15, 16; AD 2. None of these entities—Slicemedia, Medium Rare, Easygo, or MeBit—has ever owned

---

[7] Freeman suggests that Primedice incorrectly lists Slice Media *N.V.* rather than Slice Media *B.V.* online to "obfuscate" and create "a deception." FAC ¶¶ 29(b), 139-143. But, when that typo existed (it has since been corrected), in each case, immediately after saying Slice Media "N.V.," Primedice listed the correct license number (145203) for Slice Media B.V. Vučković Decl. ¶ 6. These mistakes were nothing more than harmless typos obvious to anyone who looked at the license.

property in New York, had offices or employees in New York, or had bank accounts in New York.
Craven Decl. ¶ 4; Vučković Decl. ¶¶ 5, 9, 17.

### B.   Procedural Background

As relevant to the instant motion:

- Freeman filed his Complaint in the Southern District of New York on August 17, 2022. Dkt. No. 1. On November 2, 2022, the Defendants in the original Complaint (Craven, Tehrani, and Primedice) agreed to waive service of the summons and Complaint for themselves and on behalf of "Stake.com." Dkt. No. 19. Tehrani accepted service "on behalf of the 'Stake.com' product," but concurrently noted that Stake.com "is not a legal entity," thus reserving the right to argue that here. *Id.*

- The Court held the initial pretrial conference on December 2, 2022. Dkt. No. 12. At this conference, the Defendants previewed concerns about the Court's subject-matter and personal jurisdiction over this case.

- On December 14, 2022, the Defendants filed a Rule 7.1 Statement. Dkt. No. 24.

- On January 4, 2023, Freeman filed his First Amended Complaint, adding as Defendants Mladen Vučković, Slicemedia B.V., Medium Rare N.V., Easygo Solutions Pty Ltd, and Mebit.io. Dkt. No. 27.

- On January 19, 2023, the Defendants filed an updated Rule 7.1 Statement. Dkt. No. 30.

## III.   ARGUMENT

The Amended Complaint suffers from incurable jurisdictional defects that necessitate dismissal. Fed. R. Civ. P. 12(b)(1), (2). First, there is not even a colorable argument to support the Court's exercise of subject-matter jurisdiction. The Amended Complaint does not raise a question of federal law, and Freeman cannot establish diversity between the parties for three independent reasons: (i) Freeman omits allegations of citizenship for all parties and thus fails to carry his jurisdictional burden; (ii) Tehrani, a U.S. citizen residing abroad, is "stateless," meaning that he and any alleged partnership of which he is a member defeat diversity; and (iii) Freeman's own citizenship must be attributed to any alleged partnership of which he claims to be a member, including Primedice, which separately destroys diversity. *Infra* § III.A. Second, Stake.com must

be dismissed because it is a non-jural entity that cannot be sued. *Infra* § III.B. Third, the Court lacks personal jurisdiction over the remaining Defendants because none—including the Australian resident Craven, Serbian resident Vučković, and their entities—ever acted (or are ever alleged to have acted) in or with effects in New York, let alone in any way related to this action. *Infra* § III.C. These failures necessitate dismissal of the Amended Complaint.

But that is not all. The Amended Complaint fails for an array of other independent reasons. First, under Freeman's own allegations, the applicable statutes of limitations bar his claims related to the development and launch of Stake.com (claims 1-5) and conversion (claims 7 and 8). *Infra* § III.D. Second, Freeman impermissibly groups the Defendants in his pleading, failing to specify, as Rule 8 requires, which Defendants he accuses in claims 1-6 and 8. *Infra* § III.E. Third, Freeman dresses the same claims up in different legal clothing, dooming the duplicative ones (claims 1, 3-6, and 10), as well as the equitable ones for which legal remedies suffice (claims 6 and 9). *Infra* § III.F. Fourth, Freeman fails to adequately allege the claims for fraud, unfair competition, idea misappropriation, tortious interference, conversion, and accounting (claims 1, 3-5, 7-9, and 10). *Infra* § III.G. In sum, even independent of the Amended Complaint's glaring jurisdictional failures, each claim warrants dismissal for pleading failures.

### A. **The Court lacks subject-matter jurisdiction, as Tehrani and Primedice destroy diversity jurisdiction.**

The Court lacks subject-matter jurisdiction over the Amended Complaint because Freeman relies exclusively on diversity jurisdiction (FAC ¶ 32), and he has no way to establish it. Under 28 U.S.C. § 1332, "there must be complete diversity and that diversity is not complete if any plaintiff is a citizen of the same state as any defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). As the plaintiff, Freeman bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence without the benefit of inferences. *See*

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010). Because he cannot meet his burden, this Court cannot adjudicate this case, and the Amended Complaint must be dismissed. *See* Fed. R. Civ. P. 12(b)(1), (h)(3); *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996).

### 1.     Freeman fails to allege all of the Defendants' citizenship, thus failing to prove diversity jurisdiction.

As a threshold matter, Freeman fails to even allege the citizenship of the parties—including of his childhood best friend, whose citizenship he surely knows. Freeman merely alleges that Tehrani and Craven are currently "resident[s] of Australia," while Vučković is "a resident of Trstenik, Serbia." FAC ¶¶ 19-20, 29(a). But "a statement of the parties' residence is insufficient to establish their citizenship." *Leveraged Leasing*, 87 F.3d at 47.

This insufficiency applies not only to the individual defendants, but also to any partnership of which they are allegedly members—including Primedice. FAC ¶ 1. "Where a [party] is a partnership, a plaintiff must allege the citizenship of each member of the partnership in order to adequately plead subject matter jurisdiction." *Brady v. John Goldman, Esq*., No. 16-cv-2287-GBD, 2016 WL 8201788, at *4 (S.D.N.Y. Dec. 5, 2016). Likewise, for limited liability companies, the plaintiff must specifically allege the citizenship of all their members. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016). But again, Freeman alleges only where Slicemedia, Medium Rare, MeBit, and Easygo are "located," FAC ¶ 29(b)-(e); he does not identify their members or their citizenship. Because he has not alleged the parties' citizenship, Freeman has failed to carry his burden. *See Leveraged Leasing*, 87 F.3d at 47.[8]

---

[8] Freeman's failure is particularly egregious in light of Amended Rule of Civil Procedure 7.1, which the Defendants complied with by disclosing "the citizenship of every individual or entity whose citizenship is attributed to that party … for purposes of establishing jurisdiction based upon diversity of citizenship." Dkt. Nos. 24, 30. Indeed, this Court's Rule 7.1 form expressly instructs that "the citizenship of an L.L.C. is the citizenship of each of its members." *Id.*

**2.      Tehrani—and any partnership of which he is allegedly a member, including Primedice—is "stateless" and cannot be subject to diversity jurisdiction.**

Any effort by Freeman to correct this pleading deficiency would be futile. Complete diversity is clearly lacking because Tehrani is a "stateless" citizen who cannot be sued in federal court under § 1332(a). "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state." *Force v. Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019) (quoting *Cresswell*, 922 F.2d at 68); *see also Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021) ("United States citizens who are domiciled abroad … are not 'citizens' of any state" and thus are "stateless."). And "§ 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Force*, 934 F.3d at 74. "In other words, 'a suit by or against United States citizens domiciled abroad may not be premised on diversity.'" *Id.* at 74-75 (quoting *Cresswell*, 922 F.2d at 68); *accord Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) (such "stateless" U.S. citizens may not be parties to diversity-based suits).

Because Tehrani is a U.S. citizen residing in Australia, he is "stateless," and this Court cannot exercise diversity jurisdiction over any suit to which he is a party. The same is true for any partnership of which Tehrani is allegedly a partner, including Primedice, because "[f]or the purposes of diversity jurisdiction, a partnership takes the citizenship of all of its partners." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 615 (2d Cir. 2019); *e.g.*, *Coudert Bros. v. Easyfind Int'l, Inc.*, 601 F. Supp. 525, 526-27 (S.D.N.Y. 1985) (diversity lacking where members of partnership included U.S. citizens residing abroad).[9] Thus,

---

[9] Stake.com does not have the capacity to be sued. *Infra* § III.B. But to the extent Freeman alleges that Stake.com is a partnership, FAC ¶ 30(a), it would also adopt Tehrani's citizenship and likewise be "stateless" for purposes of diversity jurisdiction.

this lawsuit cannot proceed because Tehrani is "stateless" and Freeman has alleged Primedice to be a partnership that includes the stateless Tehrani. *See Page*, 2 F.4th at 637 ("[A] partnership made up of at least one stateless citizen is itself stateless and cannot be sued in diversity.")

### 3.   Primedice—and any other partnership of which Freeman claims to be a member—also adopts Freeman's citizenship and destroys diversity.

Complete diversity is destroyed for another reason: Freeman alleges not only that Primedice is a partnership, but also that he himself is a partner. FAC ¶¶ 1 ("Freeman founded Primedice, a common law partnership, with two partners, Bijan Tehrani and Edward Craven"), 16, 143, 262, 301. Because a partnership assumes the citizenship of all its partners, *Platinum-Montaur*, 943 F.3d at 615, under Freeman's own allegations, the Primedice partnership assumes his Florida citizenship, which applies equally to him in his capacity as plaintiff and to Primedice. This deprives the Court of diversity jurisdiction because "a court does not have diversity jurisdiction over a suit by a plaintiff against a partnership in which any partner's citizenship is identical to that of the plaintiff." *Murphy v. Gutfreund*, 624 F. Supp. 444, 448 (S.D.N.Y. 1985); *see also Equitable Life Assurance Soc'y*, 627 F. Supp. 1023, 1026 (S.D.N.Y. 1985) ("Even if a single partner is not diverse to the plaintiff, the action must be dismissed."). Freeman therefore cannot invoke diversity jurisdiction over a partnership in which he purports to be a partner.[10]

In sum, Freeman not only fails to establish diversity; his allegations foreclose it.[11]

---

[10] This same analysis holds for Stake.com (if it is not—as it should be found to be—a non-jural entity that cannot be sued, *infra* § III.B) and any of the LLC Defendants, to the extent that Freeman alleges he is a partner or member of any of them.

[11] Freeman cannot cure these jurisdictional defects by dropping Tehrani and Primedice as defendants because they are necessary and indispensable parties given the specific claims asserted in this case. *See* Fed. R. Civ. P. 19(a)(1). The Defendants will explain this point in greater depth if Freeman suggests otherwise.

**B.**  **Stake.com is a non-jural entity that cannot be sued.**

Stake.com must also be dismissed as a defendant. An entity that "lack[s] legal existence" cannot be sued. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382-83 (2d Cir. 2021); *see also* Fed. R. Civ. P. 17(b). Any suit against it must be dismissed because lack of capacity to be sued "is a ground for dismissal." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 66 n.6 (2d Cir. 2017); *see, e.g.*, *Rodriguez v. City of New York*, No. 11-cv-2053-RA, 2013 WL 3584834, at *3 (S.D.N.Y. July 15, 2013) (dismissing claims against "not suable entities").

This rule applies when a "plaintiff improperly sue[s a] fictitious trade name" or a non-juridical entity "own[ed] and operate[d]" by a legal entity. *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 92, 96 (2d Cir. 2014); *Enyia v. New York City Health & Hosps. Corp.*, No. 16-cv-6344-RA, 2019 WL 5308896, at *6 (S.D.N.Y. Oct. 18, 2019). It governs here because "under New York law, it is well settled that a trade name has no separate jural existence, and that it can neither sue nor be sued independently of its owner." *Golub Capital LLC v. NB Alts. Advisers LLC*, No. 21-cv-3991-LJL, 2022 WL 540653, at *11 (S.D.N.Y. Feb. 22, 2022) (cleaned up). So, for example, because "[t]he U.S. Open" is an "event, run by the U.S.T.A.," and not an entity, it is "incapable of being sued." *Washington v. U.S. Tennis Ass'n, Inc.*, 290 F. Supp. 2d 323, 324 n.1 (E.D.N.Y. 2003).[12]

Stake.com is such a non-suable entity. As Freeman recognizes, Stake.com is "a domain" that allows players to bet on "games of chance." FAC ¶¶ 30(f)(ix), 35. It is not a company or

---

[12] New York law applies because Stake.com is not a corporate entity and thus has no place of incorporation. "[T]he legal existence of a foreign corporate entity is ordinarily determined by the laws of the country where it has been created." *Fund Liquidation*, 991 F.3d at 384 n.8. "But Federal Rule of Civil Procedure 17(b)(3) suggests that" for "all other non-corporate parties," the "capacity to sue is governed by the law of the state in which the court is located." *Id.*; Fed. R. Civ. P. 17(b)(3).

unincorporated association. Vučković Decl. ¶ 10. Nor does Freeman's misguided effort to fold all the Defendants into an alleged "Stake Partnership Enterprise" establish that Stake.com is a partnership. *See* FAC ¶¶ 29, 30 (alleging an "association of additional constituent entities and individuals and facilitating mechanisms" as part of the purported Stake "Partnership Enterprise"). "[C]alling an organization a partnership does not make it one." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 587 (S.D.N.Y. 2022) (quoting *Brodsky v. Stadlen*, 138 A.D.2d 662, 526 N.Y.S.2d 478, 480 (1988)). Indeed, even where defendants describe themselves as partners, "[p]laintiffs are still required to plead the existence of a legal partnership." *Id.* at 588.

Here, Freeman does not allege the necessary facts to support the allegation that "Stake.com is both a domain … and a partnership," no matter whether the law of New York (which Freeman appears to allege applies, FAC ¶ 21) or Connecticut (where Freeman and Tehrani resided at the alleged formation of Primedice, *id.* ¶¶ 2, 18, 19, 21) governs. *Id.* ¶ 22. For example, the Amended Complaint does not identify specific profit-sharing partners. Stake.com is simply a website. It thus lacks the legal capacity to be sued, *see* Fed. R. Civ. P. 9(a)(2); McGill Decl. ¶ 4, and must be dismissed as a defendant.

## C.   <u>The Court lacks personal jurisdiction over nearly all the Defendants</u>.

Compounding the grounds for dismissal, Freeman fails to plead sufficient allegations of personal jurisdiction over the remaining Defendants: Craven, Vučković, Slicemedia, Medium Rare, Easygo, and MeBit (i.e., everyone but the already-eliminated Tehrani, Primedice, and Stake.com). In a diversity case, the Court "may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). To do so, it must first look to whether "New York law would confer … jurisdiction." *Id.* It does so if "either … the defendant was 'present' and 'doing business' in New York within the meaning of C.P.L.R. § 301, general

jurisdiction, or … the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302, specific jurisdiction." *Aritomo v. Rhee*, No. 21-cv-4875-RA, 2022 WL 17156554, at *5 (S.D.N.Y. Nov. 22, 2022) (cleaned up). Next, the Court must assess whether jurisdiction "would be permissible under the Due Process Clause." *Bank Brussels*, 305 F.3d at 124.

The Court cannot evaluate jurisdiction in the aggregate because Freeman must demonstrate "that the court has personal jurisdiction *over each defendant*." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (emphasis added). And because specific jurisdiction confers jurisdiction over only specific claims, the Court similarly must evaluate specific personal jurisdiction "with respect *to each claim asserted*." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (emphasis added). Freeman fails to clear these basic hurdles, and this Court is not the proper forum for him to litigate his grievances against foreign people and companies.

### 1. The Court lacks general jurisdiction over all the Defendants under § 301 and the Due Process Clause.

Freeman does not adequately allege general jurisdiction over any Defendant here. N.Y. C.P.L.R. § 301 permits general jurisdiction over a company that is "engaged in … a continuous and systematic course of doing business" in New York. *Aybar v. Aybar*, 37 N.Y.3d 274, 289 n.6, 177 N.E.3d 1257, 156 N.Y.S.3d 104 (2021). This statute's reach is limited by the due process requirement that general jurisdiction exists only when a defendant's contacts—its "affiliations with the State"—"are so continuous and systematic as to render [the defendant] essentially at home" in New York. *In re Roman Cath. Diocese of Albany, New York, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (cleaned up); *see Aybar*, 37 N.Y.3d at 289. A corporation is at home where it has its state of incorporation, its principal place of business, or, in the "exceptional case" only, where its "operations" are "so substantial and of such a nature" to render it at home. *Aybar*, 37 N.Y.3d at

289; *see also Roman Cath. Diocese*, 745 F.3d at 38. An individual is at home in his "domicile." *Roman Cath. Diocese*, 745 F.3d at 38; *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017).

**Individuals**. Starting with the individuals, Freeman fails to establish general jurisdiction over Craven, Vučković, and Tehrani. Craven is a resident of Australia; he is not alleged to have been, and never was during the relevant period, domiciled in New York. FAC ¶ 20; *supra* 5-6. The same is true for Vučković, who resides in Serbia. FAC ¶ 29a; *supra* 5-6. So, consistent with due process, there cannot be general jurisdiction over either. *Reich*, 858 F.3d. at 63.

The conclusion should be the same for Tehrani. The allegations of Tehrani's New York connections do not show that he was primarily domiciled in New York over the relevant period (2013-2022). "[A] person may have only one domicile." *Reich*, 858 F.3d at 63 (internal quotation marks omitted). According to the allegations, Tehrani spent at most just over a year as a New York domiciliary (2016-2017, as he was a Connecticut resident "through at least 2015"). *See* FAC ¶ 19; *supra* 6 & n.6 (in reality, Tehrani resided in New York for only eight months). Although the contacts needed for general jurisdiction "are commonly assessed over a period of years prior to" and "up to and including the date the suit was filed," "the appropriate period for evaluating a defendant's contacts will vary in individual cases," depending on what "is reasonable under the circumstances." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996). Here, it is not reasonable to look back six to seven years to latch onto the tail end of the alleged one-year period when Tehrani lived in New York, particularly given that, under Freeman's own allegations, most of the relevant actions took place in Connecticut (where Primedice was started) and Australia (where the new business was launched). Moreover, Tehrani lost any "continuous and systematic" contacts after he left New York—more than six years before this suit. *Id.* In total, Tehrani lived in New York for a very small percentage of the time at issue. It is not reasonable,

and does not comport with due process, to exert general jurisdiction over Tehrani on these allegations. *See, e.g.*, *Reich*, 858 F.3d at 63 (looking to the total percent "of nights in New York" to evaluate due process and rejecting jurisdiction based on only 5% of nights).

**Entity Defendants**. There is also no general jurisdiction over the entity Defendants. None were incorporated in New York. FAC ¶ 29; *see supra* 6-7. In fact, the only relevant allegations state that Freeman and Tehrani were Connecticut residents when Primedice was formed. *See* FAC ¶¶ 18, 19, 21. None of the entities have a place (let alone a *primary* place) of business in New York; there is no allegation that they "own real property, maintain an office, or possess any bank accounts" in New York—and they never have. *Supra* 7-8. In any event, a New York office alone cannot support general jurisdiction. *See Roman Cath. Diocese*, 745 F.3d at 38; *see, e.g.*, *Okoroafor v. Emirates Airlines*, 195 A.D.3d 540, 541, 145 N.Y.S.3d 807 (2021). So, assuming the incorporation/principal place of business test applies to these LLCs and partnerships, there cannot be general jurisdiction.[13] Accordingly, without general jurisdiction, this Court cannot "hear any and all claims" against the Defendants, *Aybar*, 37 N.Y.3d at 289, and must turn to specific jurisdiction.

---

[13] The proper approach to general jurisdiction is uncertain to some extent because "[t]he Supreme Court has yet to address specifically how to evaluate whether an entity other than a corporation is subject to general jurisdiction." 4 Wright & Miller, Fed. Prac. & Proc. Civ. § 1067.5 (4th ed. updated Apr. 2022); *see Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 n.10 (5th Cir. 2020). But the Court need not decide that here because there is no jurisdiction under either the incorporation/principal place of business test or a looser "continuous and systematic" standard, under which intermittent operation of Primedice by a partner "from [an] apartment in New York" is still insufficient to establish contacts "so continuous and systematic as to render [Primedice] essentially at home" in New York. *See Roman Cath. Diocese*, 745 F.3d at 38; FAC ¶ 33. Additionally, Freeman's apparent agency theory of jurisdiction—that Freeman and Tehrani (as partners and thus agents of the partnership) can confer general jurisdiction over the Primedice partnership based solely on *their* New York location, *see* FAC ¶ 21—fails because the "Supreme Court has rejected so expansive an understanding of 'agency' as a basis for general jurisdiction." *Hood v. Ascent Med. Corp.*, 691 F. App'x 8, 10 (2d Cir. 2017) (unpub).

### 2.   The Court lacks specific jurisdiction over Craven, Vučković, and the entity Defendants.

Specific personal jurisdiction cannot save the Amended Complaint because the allegations fail to confer specific personal jurisdiction over Craven, Vučković, and any entity Defendant (and Tehrani and Primedice cannot remain in this diversity suit, *supra* § III.A).

The standard is clear. Because New York's long-arm statute "does not coincide with the limits of the Due Process Clause," the Court looks first to the long-arm statute. *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022) (cleaned up). Under that statute, "a court may exercise personal jurisdiction over any non-domiciliary" who, as relevant: "transacts any business within the state," N.Y. C.P.L.R. § 302(a)(1); "commits a tortious act within the state," § 302(a)(2); or commits a tortious act that causes injury within the state if the defendant regularly does or solicits business in the state, including "deriv[ing] substantial revenue from … services rendered in the state," and/or should have expected his acts to have in-state consequences, § 302(a)(3). Under both § 302(a)(1) and (a)(3), the cause of action must arise from the relevant act, and under § 302(a)(2), the defendant must act in New York. *Daou*, 42 F.4th at 129; *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999); *see supra* 14-15. Freeman does not identify which of the three provisions supports jurisdiction, and none does.

**Craven and Vučković**. There is no specific jurisdiction over Craven and Vučković under § 302. The first part of that provision, § 302(a), requires that, first, "[t]he defendant must have transacted business within the state" and second, "the claim asserted must arise from that business activity." *Daou*, 42 F.4th at 129 (cleaned up). The Amended Complaint does not allege that Craven or Vučković acted (let alone "transact[ed] business") in New York *at all*. *Id.* And any alleged communications they had with Tehrani and Freeman while they lived in New York cannot suffice,

because New York courts "refuse[] to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Marvel Characters, Inc v. Kirby,* 726 F.3d 119, 128-29 (2d Cir. 2013) (cleaned up).

Additionally (and independently), none of the alleged torts—which allege misconduct against Freeman—"arise from" the supposed business activity that third parties took in New York. The allegations that third parties attempted to help New York *customers* circumvent Primedice and Stake's sophisticated bars on online gambling from New York does not show that *the Defendants* were "availing [themselves] to the markets in the U.S. and New York." FAC ¶ 203; *see also id.* ¶¶ 178, 193; McGill Decl. ¶¶ 6-9. Even if these acts could be attributed to Tehrani, Craven, and the other Defendants, *cf. infra* 23-24, these allegations are irrelevant under § 302 because they do not relate to the alleged torts. Craven (and Vučković and the entity Defendants) supposedly injured Freeman as a partner or owner, not as a customer, of Primedice and Stake.com. *See, e.g.*, FAC ¶¶ 230, 242, 249-250, 259, 269, 279, 290, 298, 303-04, 313-14. Whether customers could access these websites in New York (in contravention of the websites' extensive efforts to block them from doing so) is "merely coincidental" and "too attenuated from" the alleged tortious acts *against Freeman*. *Daou*, 42 F.4th at 130.

Second, Craven and Vučković did not "commit[] a tortious act within the state," § 302(a)(2), because "a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)," *Bank Brussels*, 171 F.3d at 790. The Amended Complaint does not allege that Craven or Vučković ever physically acted in New York. And Freeman cannot rework this reality with amended pleadings, as Craven and Vučković lived and worked outside the United States during the entire period at issue. *Supra* 6.

Third, the Amended Complaint fails to support jurisdiction on the theory that Craven or Vučković committed a tort that "caus[ed] injury … within the state" and "regularly do[] or solicit[] business" or "expect[ed] or should reasonably [have] expect[ed]" a New York injury. § 302(a)(3). The Amended Complaint does not show that Craven and Vučković regularly do or solicit business in New York because, as discussed below, allegations that others provided instructions for how to evade the websites' restrictions on New York (and U.S.) gambling cannot show that these Defendants acted in New York (nor that Freeman's injury arose out of such allegations). *Infra* 23-24.

The only remaining jurisdictional hook requires that Craven and Vučković expected or should reasonably have expected in-state consequences of their actions that gave rise to Freeman's claims. § 302(a)(3)(ii). Under this subsection, (1) they must have committed a tortious act "outside New York"; (2) "the cause of action [must] ar[i]se from that act"; (3) the act must cause injury "to a person … in New York"; (4) they must have "expected or should reasonably have expected that" the act "would have consequences in New York"; and (5) they must "derive[] substantial revenue from interstate or international commerce." *Penguin Grp.*, 609 F.3d at 35. But the allegations fail to meet these requirements—including, most notably, the third requirement. Freeman is the only party allegedly injured, and he does not state what specific activity supposedly injured him in New York. Any New York nexus must then be Freeman's temporary residence in New York from 2017 to 2021. FAC ¶ 18. But under § 302(a)(3), "the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction." *Penguin Grp.*, 609 F.3d at 36 (internal quotation marks omitted); *see also Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) ("[t]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes"); *Yak v.*

*BiggerPockets LLC*, No. 20-3498, 2022 WL 67740, at *2 (2d Cir. Jan. 7, 2022) (unpub) (The Second Circuit has "consistently rejected as insufficient to support personal jurisdiction allegations of 'remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here.'").

Even if residence were enough, most of the key episodes of alleged misconduct—Primedice's formation, launch, and initial operation, FAC ¶¶ 34-54, 71-72; the redistribution of Freeman's equity, *id.* ¶¶ 75, 79; issues with Primedice's accounting, *id.* ¶¶ 207-209; and the launch of Stake.com and the Defendants' conversations with Freeman about it, *id.* ¶¶ 80-112—occurred before 2017, and thus before Freeman lived in New York. Finally, as with § 302(a)(1), *supra* 19, Freeman fails to allege how any purported conduct targeting New York relates to his injuries, further dooming his claim. *See, e.g.*, *Suber v. VVP Servs., LLC*, No. 21-2649, 2023 WL 115631, at *4 (2d Cir. Jan. 10, 2023) (unpub) (faulting the plaintiff for failing to explain "how the … alleged tortious conduct in New York … caused *her* injuries"). In short, the Amended Complaint offers no basis for the Court to exercise personal jurisdiction over Craven and Vučković.[14]

**Entity Defendants**. There is no specific jurisdiction over Slicemedia, Medium Rare, Easygo, and MeBit. These entities are based in Curacao, Serbia, and Australia. FAC ¶ 29. The Amended Complaint alleges not a single New York act or transaction for any of these entities, precluding jurisdiction under § 302(a)(1); no physical presence in New York, barring jurisdiction under § 302(a)(2), *supra* 18 (citing *Bank Brussels*, 171 F.3d at 790); and no direct business or solicitation in New York, no "substantial revenue" from New York services, and no expectation of in-state consequences for any tortious action, eliminating jurisdiction under § 302(a)(3). Nor

---

[14] Like with Tehrani and Primedice, Freeman cannot cure the jurisdictional deficiencies as to Craven because he is a necessary and indispensable party. *Supra* n.11.

could Freeman amend to allege any of these things, as none are true for these entirely foreign companies. *See supra* 7-8.

Nor could jurisdiction over other people or entities create jurisdiction over these companies. To the extent the allegations could be interpreted as suggesting that Slicemedia was somehow used to commit a tort with in-state injury because Slicemedia was created to perpetrate a fraud against Freeman while he lived in New York, FAC ¶¶ 309-313, that fails to create § 302(a)(3) jurisdiction because Freeman's location cannot be the sole basis for a New York injury. *Supra* 20 (citing cases). Nor does any corporate relationship between these entities and Primedice or Stake.com establish jurisdiction. *See, e.g.*, FAC ¶¶ 29(b), 135 (alleging that Slicemedia is the owner of Primedice); *id.* ¶¶ 24, 144 (alleging that Medium Rare owns Stake.com's license); *id.* ¶¶ 29(e), 164 (claiming Easygo hires Stake's employees). This is because jurisdiction must be evaluated with respect to *each* defendant, *supra* 15 (citing *Friedman*, 884 F.3d at 90), meaning that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary," *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984); *see In re Parmalat Sec. Litig.*, 381 F. Supp. 2d 283, 288 (S.D.N.Y. 2005) (quoting *Keeton*). Thus, even if the Court could exercise jurisdiction over Primedice or Stake.com in the absence of any relevant New York acts, *see infra* n.15, it would not confer jurisdiction over any of the other entities at issue. Here, no allegations connect *these* entities to New York; accordingly, specific jurisdiction does not exist.[15]

---

[15] The § 302 discussion focuses on the Defendants other than Primedice and Stake.com because Primedice and Stake.com must be dismissed for reasons already articulated. *See supra* §§ III.A, III.B. In the unlikely event that the Court views it as necessary to assess specific jurisdiction as to Primedice, it is lacking here for three reasons. First, Freeman attempts to ground jurisdiction based

**Due process**. The due process limitations on personal jurisdiction—which must be satisfied as a matter of federal law—further reinforce the conclusion that personal jurisdiction over Tehrani, Craven, Vučković, and all the entity Defendants (including Primedice and Stake.com) is impermissible. *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).

Due process depends on the *defendants'* acts. It requires "(1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168-69 (2d Cir. 2015). "To meet the minimum contacts requirement …, the defendant *[it]self* must create those contacts." *U.S. Bank*, 916 F.3d at 150 (cleaned up). Here (as with the statute), this requirement means that Freeman's New York residence is irrelevant because "mere injury to a forum resident is insufficient" to permit jurisdiction. *Id.* at 150-51 (cleaned up). In addition, a further requirement is that the defendants must create their contacts "purposefully"—that is, "purposefully avail[ing] [themselves] of the privilege of doing business in the forum." *Eades*, 799 F.3d at 169. But the allegations not only show that Tehrani, Craven, Vučković, and the entity Defendants did not

---

on allegations that he and Tehrani "operated it" out of New York (FAC ¶ 21); however, courts look to the *partnership-related* New York contacts—not merely incidental contacts due to the partner's personal location. *Compare Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03-cv-917-SAS, 2003 WL 22400213, at *6 (S.D.N.Y. Oct. 21, 2003) (finding jurisdiction where the partnership made "considerable effort … to attract New York customers," and, later, conducted sales meetings in New York), *with Doe v. McAdam Fin. Grp. LLC*, No. 22-cv-00113-GHW-SN, 2022 WL 3579700, at *6 (S.D.N.Y. Aug. 3, 2022), *adopted*, 2022 WL 3578569 (Aug. 19, 2022) (rejecting jurisdiction where employee worked remotely in New York but did not direct her work activity at New York). Second, the Amended Complaint alleges that Primedice is "accessible in" New York. FAC ¶ 21. But "the mere availability of the site to users in New York does not amount to transacting business in the state for purposes of section 302(a)." *Pearson Educ., Inv. v. ABC Books LLC*, No. 19-cv-7642-RA, 2020 WL 3547217, at *5 (S.D.N.Y. Jun. 30, 2020) (cleaned up). Third, specific jurisdiction over Primedice fails because any New York contacts or transactions (which relate to New York *customers*) do not give rise to the alleged torts (which relate to Freeman as an *owner or partner*). *See supra* 19. Specific jurisdiction over "Stake.com" also fails for the second and third reasons.

*themselves* create contact with New York customers; the allegations actually show that the Defendants *purposefully prevented* New York users from accessing their websites, by affirmatively blocking them for all New York users *and* going beyond that, using sophisticated measures designed to capture New York users who attempted to evade restrictions. FAC ¶¶ 179, 180; *see supra* 6-7. Indeed, Freeman admits that Tehrani and Craven made "effort[s] … to block U.S. players from accessing Primedice," but then says that *others*—e.g., "United States players" who cannot fairly be attributed to Tehrani and Craven (or the entity Defendants)—attempted to circumvent those limits. FAC ¶ 183; *see id.* ¶¶ 179 ("numerous players"), 180 (a "Reddit user respcare89"), 183 ("United States players"), 187-188 ("a US player" and "four users"), 189 (describing a "cottage industry" of Reddit threads and "YouTube videos" of instructions for how to *evade* Stake.com's limit by "us[ing] VPNs to access Stake.com"). An exercise of personal jurisdiction is not reasonable when, as here, the alleged contacts: (a) were performed by unrelated third parties; (b) were contrary to the Defendants' efforts and policies to prevent them from occurring; and (c) do not even give rise to the claims at issue. In short, Freeman's incendiary allegations about these purported regulatory violations are immaterial to personal jurisdiction, and the Court should view them for what they are: another illegitimate (and failed) attempt by Freeman to create leverage.

*      *      *

These glaring jurisdictional problems doom Freeman's case, and they are incurable defects. In sum, (1) the Court lacks subject-matter jurisdiction because at least Tehrani and Primedice destroy, and will always destroy, complete diversity; (2) the Court cannot hear a case against Stake.com because it is non-jural entity that cannot be sued; and (3) the Court cannot exercise personal jurisdiction over any remaining Defendant because none have the necessary suit-related contacts with New York. The Defendants previewed the existence of multiple jurisdictional

defects at the initial conference with the Court, and yet, even after amending his pleading, Freeman fails to plead facts that could cure these deficiencies. Accordingly, the Court must dismiss the Amended Complaint for lack of jurisdiction.

### D.   The Court should dismiss as untimely all claims related to Stake.com's development and launch (claims 1-5) and conversion (claims 7 and 8).

Underscoring the frivolous nature of the Amended Complaint, New York's statutes of limitations (and those borrowed from other jurisdictions) bar the majority of the claims even on Freeman's own allegations. Specifically, at least five claims—fraud, breach of fiduciary duty, unfair competition, misappropriation of ideas, and tortious interference (claims 1-5)—are untimely because they arise from allegations concerning or predating Stake.com's 2017 launch and carry three-year time limits that expired years ago. The conversion claims (claims 7 and 8) accrued even earlier, in 2014, and expired long ago. Thus, Freeman has, once again, missed his opportunity.

### 1.   Under the choice of law analysis, New York's and borrowed jurisdiction's statutes of limitations apply.

**Choice of law**. New York's choice-of-law rules govern here. *See also infra* § III.G.1. "A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006). In New York, "matters of procedure are governed by the law of the forum" (i.e., New York), while "matters of substantive law fall within the course charted by [further] choice of law analysis." *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 53, 710 N.E.2d 250, 687 N.Y.S.2d 604 (1999) (citation omitted); *see also Davis v. Scot. Re Grp. Ltd.*, 30 N.Y.3d 247, 252, 88 N.E.3d 892, 66 N.Y.S.3d 447 (2017). Forum law also determines whether a matter is procedural or substantive. *Davis*, 30 N.Y.3d at 252. Here, New York law controls on statutes of limitations questions because, "[i]n New York, Statutes of Limitation are generally considered procedural." *Tanges*, 93 N.Y.2d at 54; *see Gerena v. Korb*, 617 F.3d 197, 206 (2d Cir. 2010).

**Statutes of limitations**. Under New York law, the applicable statutes of limitations include both New York's own limitations periods and those proscribed by its borrowing statute. Under the latter, "[w]hen a nonresident sues on a cause of action accruing outside New York," the action must "be timely under the limitation periods of *both* New York and the jurisdiction where the cause of action accrued." *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416, 927 N.E.2d 1059, 901 N.Y.S.2d 575 (2010) (cleaned up and emphasis added); N.Y. C.P.L.R. § 202. Here, because Freeman is an out-of-state plaintiff, each claim that accrued outside New York must be timely under the statute of limitations of New York and the state where the claim accrued.[16]

**Accrual**. In New York, "a cause of action accrues at the time and in the place of the injury." *Thea v. Kleinhandler*, 807 F.3d 492, 498 (2d Cir. 2015) (citing New York law). As for the time of accrual, most of Freeman's claims accrued before—or at the very latest—at the time of Stake.com's launch in 2017. *See infra* §§ III.D.2-7 (identifying accrual date for each claim). As for their place, because these claims are primarily economic, the place of injury is usually "where the plaintiff resides and sustains the economic impact of the loss." *Thea*, 807 F.3d at 498 (citing New York law). Freeman's claims thus accrued either in Washington D.C. or New York, the two locations where he resided leading up to and during Stake.com's launch. FAC ¶ 18. Notably, Freeman fails to allege precisely when he moved from New York to Washington, D.C., perhaps in an attempt to enjoy whichever state provides the longer statute of limitations. Nevertheless, as

---

[16] Because a claim must be timely under the statute of limitations of *both* New York and the borrowed jurisdiction, *Portfolio Recovery Assocs.*, 14 N.Y.3d at 416—a rule imposed to "guard[] against forum shopping," *Thea v. Kleinhandler*, 807 F.3d 492, 498 n.7 (2d Cir. 2015)— untimeliness under New York's law is enough to sink a claim. The Defendants thus address New York law alone when it bars the claim, for efficiency. The borrowed jurisdictions' statutes of limitations also bar several claims—including, at least, breach of fiduciary duty, unfair competition, misappropriation of ideas, tortious interference, and conversion—and thus independently require dismissal of these claims.

explained below, each of his claims is untimely either by virtue of New York's always-applicable statute of limitations or by application of D.C. law.

2.    __The first fraud claim (claim 1) is untimely under D.C. law__.

Freeman's claim for fraud against all the Defendants (claim 1) is time-barred in light of New York's borrowing statute. The statute of limitations for fraud in Washington, D.C. is three years, D.C. Code § 12-301(8), and "begins to run when the fraud is or should have been discovered through plaintiff's due diligence." *Hawkins v. Greenfield*, 797 F. Supp. 30, 33 (D.D.C. 1992). According to the Amended Complaint, starting in November 2015 and continuing through June 2016, Tehrani and Craven publicly described plans for a "massive project" for online cryptocurrency gaming that would "pretty much cover[] all aspects of gambling." FAC ¶ 105; *see also id.* ¶¶ 99-107 (alleging that Defendants publicly announced their development of a "new website" that "was clearly positioned" as a broader "cryptocurrency" gaming site, specifically a "provably fair casino"). Against this backdrop of public commentary, Freeman alleges that on August 20, 2016, Tehrani abruptly informed him that "he and Craven had decided to direct their focus on creating a fiat money casino, and specifically not a cryptocurrency-based on-line gaming business." *Id.* ¶ 112. Under D.C. law, Freeman's fraud claim accrued at or shortly after this August 2016 discussion, given that Tehrani's supposed misrepresentation about the intended focus of the new business could not be reconciled with his and Craven's public announcements to the contrary. *See Hawkins*, 797 F. Supp. at 33 (fraud claims accrue upon notice of facts requiring due diligence). Accordingly, under Freeman's own allegations, the fraud claim accrued in 2016 and expired in 2019, making it many years too late under the borrowing statute.

3.    __The breach of fiduciary duty claim (claim 2) is time-barred__.

New York's statute of limitations bars the claim for breach of fiduciary duty. Freeman alleges that many actions relating to the "separate commercial enterprise" operating Stake.com

constitute a breach of fiduciary duty, which supposedly "enriched [Defendants] to the exclusion of Freeman." FAC ¶ 237. Those alleged actions occurred leading up to and at the launch of Stake.com in 2017.

Under New York law, a three-year statute of limitations governs a claim for breach of fiduciary duty when the plaintiff seeks purely or primarily monetary relief. N.Y. C.P.L.R. § 214(4); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139, 907 N.E.2d 268, 879 N.Y.S.2d 355 (2009) (when the remedy is monetary, "courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214(4)"). Although Freeman frames his claims for relief as "restitution and disgorgement" of $200 million (technically equitable remedies), "looking to the reality, rather than the form," it is clear he seeks purely monetary relief. FAC p. 56; *IDT Corp.*, 12 N.Y.3d at 139-40. Indeed, Freeman later describes the relief he seeks as "damages" to compensate for "the period of disloyalty as described in each of the above claims." FAC p. 56. Nor is there any claim that a legal remedy would not be adequate. *IDT Corp.*, 12 N.Y.3d at 139. So because Freeman "seeks a monetary remedy," "the three-year limitations period of CPLR 214(4) applies." *Id.* at 140. And because the claim accrued when Stake.com launched in 2017, it expired in 2020, and must be dismissed.

### 4.    The unfair competition claim (claim 3) is untimely.

The claim for unfair competition, however construed, is also barred by a three-year statute of limitations. The "essence" of this New York unfair competition claim is "that the defendant has misappropriated the labors and expenditures" of the plaintiff with "bad faith." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50-51 (2d Cir. 2019); *see Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982). This type of claim—one "based on misappropriation," rather than fraudulent representations to consumers—is subject to a three-year statute of limitations. *Norbrook Lab'ys*

*Ltd. v. G.C. Hanford Mfg. Co.*, 126 F. App'x 507, 509 (2d Cir. 2005) (unpub). Here, Freeman broadly alleges misappropriation of "time," "resources," and "assets," *e.g.*, FAC ¶¶ 245, 246, 249, and so the three-year statute of limitations applies.[17]

This claim is barred because the latest the claim accrued was when Stake.com launched. An unfair competition claim accrues when the defendants, for example, make public use of the trade secrets or property, *Mopex, Inc. v. Am. Stock Exch., LLC*, No. 02-cv-1656, 2002 WL 342522, at *11 (S.D.N.Y. Mar. 5, 2002) (trade secret); *Sporn v. MCA Rec., Inc.*, 88 A.D. 2d 857, 857, 451 N.Y.S.2d 750 (1982) (property), or manufacture and sell misappropriated designs as their own, *Opals on Ice Lingerie v. BodyLines, Inc.*, 425 F. Supp. 2d 286, 297 (E.D.N.Y. 2004). The analogous act here is when the Defendants allegedly made use of allegedly appropriated labor and assets to publicly launch Stake.com in 2017. *E.g.*, FAC ¶¶ 116, 120, 151, 158. Thus, Freeman's unfair competition claim expired no later than 2020 and is now barred.

### 5.    The claim for misappropriation of ideas (claim 4) is untimely.

Freeman's claim for idea misappropriation, like his claims for breach of fiduciary duty and unfair competition, fails because it also centers on allegations related to the leadup to Stake.com's launch and carries a three-year statute of limitations. Freeman alleges that he provided Tehrani and Craven with ideas and "mock-ups" of games from about 2015 until "prior to the formation of

---

[17] This holds even if Freeman's claim is construed more narrowly, allegation by allegation. Because unfair competition is a "broad and flexible doctrine," "courts typically analyze the nature of [an] unfair competition claim to determine which statutory period applies." *Greenlight Cap., Inc. v. GreenLight (Switzerland) S.A.*, No. 04-cv-3136, 2005 WL 13682, at *7 (S.D.N.Y. Jan. 3, 2005). If the allegations of misuse of "proprietary technology and confidential trade secret information" allege a claim based on "misappropriation of a trade secret," the statute of limitations remains three years because Freeman seeks monetary relief. *Universal Instruments*, 924 F.3d at 49; FAC ¶¶ 246, 248 & p. 55-56. If the allegations of misuse of "Primedice partnership assets, equity, name value, and reputation" establish a claim based on "conversion of property," the limit is also three years. N.Y. C.P.L.R. § 214(4); *Sporn v. MCA Records*, 58 N.Y.2d 482, 488-89, 448 N.E.2d 1324, 462 N.Y.S.2d 413 (1983) (tangible property); FAC ¶ 249.

Stake," and that Tehrani and Craven used these ideas to create Stake.com. FAC ¶¶ 82, 85, 90, 255-257, 259. The latest that Freeman's "ideas" were disclosed and first used, then, was upon Stake.com's launch in 2017. *Id.* ¶¶ 6, 116, 259.

Under New York law, the statute of limitations for a claim of misappropriation is three years from the time the idea was unlawfully used or disclosed. N.Y. C.P.L.R. § 214(4); *see Smith v. Penn Cent. Corp.*, No. 83-cv-6296, 1983 U.S. Dist. LEXIS 11850, at *4-6 (S.D.N.Y. Nov. 9, 1983) (applying three-year statute of limitations to idea misappropriation), *aff'd*, 751 F.2d 371 (2d Cir. 1984) (unpub); *see also Universal Instruments*, 924 F.3d at 49 (same, although for misappropriation of trade secret seeking monetary relief). Because a cause of action for misappropriation "accrues" when the defendant "first makes use of the plaintiff's ideas," *see Lemelson v. Carolina Enterprises, Inc.*, 541 F. Supp. 645, 659 (S.D.N.Y. 1982), this claim accrued no later than 2017 and expired in 2020.

### 6.    The claim for tortious interference with prospective economic advantage (claim 5) is time-barred.

Freeman's claim of tortious interference with prospective economic advantage is also time-barred because, again, it accrued in 2017 and expired after three years. New York has a three-year statute of limitations for tortious interference, which accrues from the date that damage was sustained. N.Y. C.P.L.R. § 214(4); *Spinap Corp. v. Cafagno*, 302 A.D.2d 588, 588, 756 N.Y.S.2d 86 (2003). Because Freeman fails to identify any third party or business relationship with which the Defendants allegedly interfered, *see infra* 41, the Defendants can only guess what conduct constituted the alleged interference and when it occurred. As it stands, the only allegations that could possibly support this claim are that the Defendants interfered in Freeman's prospective economic advantage by allegedly launching Stake.com using his ideas, FAC ¶ 266, misrepresenting their intentions regarding Stake.com, *id.* ¶¶ 267-268, and using Primedice assets

for Stake.com, *id.* ¶ 269. Each of these acts took place before and upon Stake.com's 2017 launch. *Id.* ¶ 24. Freeman thus sustained any resulting harm by 2017, because a claim for tortious interference accrues when the plaintiff "first sustain[s]" damages, not later when the plaintiff learns of "the full extent of the measure of damages." *Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 178 (S.D.N.Y. 2021). Accordingly, the claim accrued in 2017; the statute of limitations ran in 2020; and the claim is now barred.

### 7.   <u>The conversion claims (claims 7 and 8) are untimely.</u>

Finally, Freeman's claims for conversion are untimely because the alleged conversion occurred in 2014, meaning that New York's three-year statute of limitations expired long ago. "Under New York law, the statute of limitations for a claim of conversion is three years." *Bryant v. Broad. Music Inc.*, 721 F. App'x 78, 81 (2d Cir. 2018) (unpub) (citing N.Y. C.P.L.R. § 214(3)). "The period begins to run from the time of the tort, rather than from the time of discovery." *Id.* (citing New York law); *see also Alston v. Stone*, No. 02-cv-05338, 2005 WL 668395, at *5 (S.D.N.Y. Mar. 21, 2005). Freeman's claim for conversion against Tehrani and Craven (claim 7) is premised on the allegedly unauthorized redistribution of 6% of his equity to Craven and Coldridge in "February 2014." FAC ¶ 286. The limitations period thus began to run in 2014 and expired in 2017.

The conversion of altcoins claim against all the Defendants (claim 8) fares no better. Because Freeman does not specify when the alleged altcoin conversion took place, but instead only when the Defendants supposedly "conceded" the altcoins "were owed to Freeman," *id.* ¶ 293, it appears these allegations arise from the same conversion-of-equity claim that expired in 2017. *See, e.g.*, *Bryant*, 721 F. App'x at 81 (unpub) (finding that conversion accrued when royalties were first withheld regardless of defendant's continued retention).

In sum, under Freeman's own allegations, either New York's or Washington D.C.'s statutes of limitations bar his claims for fraud, breach of fiduciary duty, unfair competition, misappropriation of ideas, tortious interference, and conversion (claims 1-5 and 7-8).

**E.      Impermissible group pleading dooms several claims (claims 1-6 and 8) against the entity Defendants and Vučković.**

Freeman's case is already long dead, but if the Court needs more, much of the Amended Complaint must be dismissed for another, independent reason: impermissible group pleading. Rule 8(a) mandates "a short and plain statement of the claim(s)." Fed. R. Civ. P. 8(a)(2). This "requires, at a minimum, that a complaint give *each defendant* 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2011) (unpub) (emphasis added). A plaintiff cannot simply "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Id.* A complaint that does so—i.e., "rel[ies] on group pleading"—is "insufficient to state a claim." *Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 352 (S.D.N.Y. 2018). This rule applies even when "allegations are made against families of affiliated entities." *Concord Assocs., L.P. v. Ent. Props. Tr.*, No. 12-cv-1667-ER, 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014).

Here, Freeman flagrantly defies this basic rule of pleading. He lumps most of the Defendants (Slicemedia, Medium Rare, Easygo, MeBit, and Vučković) into a group he calls the "Partnership Enterprise Defendants." FAC ¶ 29. But "grouping multiple defendants who are affiliated together with a single name" cannot circumvent the requirements of Rule 8. *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016). By group pleading, Freeman attempts to obscure the Amended Complaint's failure to allege facts sufficient to put each Defendant (other than Tehrani and Craven) on notice of their misconduct vis-à-vis each claim. This deficiency is particularly egregious for the first claim (fraud), given that Rule 9(b)'s particularity requirement

applies and requires the complaint to "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see* Fed. R. Civ. P. 9(b). Here, Freeman pulls "others" and the "Defendants" as a group into the first fraud claim, *see, e.g.*, FAC ¶¶ 17, 222, even though his allegations of fraud implicate exclusively Tehrani and Craven, *see, e.g.*, *id.* ¶¶ 112-113, 116, 223-228. Pleading in such broad strokes does not satisfy Rules 8(a) or 9(b).

Similarly, for his claims of breach of fiduciary duty and duty of loyalty, unfair competition, idea misappropriation, tortious interference with prospective economic advantage, unjust enrichment, and conversion, the Amended Complaint fails to put each Defendant (other than Tehrani and Craven) on notice of how they were involved in the alleged torts. Freeman alleges specific conduct only with respect to Tehrani and Craven or "the Defendants" generally. *See, e.g.*, FAC ¶¶ 234-242 (alleging Tehrani and Craven owed and breached fiduciary duties; no similar duties or conduct alleged against other Defendants), 244-251 (alleging Tehrani and Craven improperly used Primedice technology and confidential information; no differentiation of conduct attributed to "Defendants" generally), 252-260 (alleging "Tehrani and Craven stole Freeman's novel and concrete ideas"; no similar conduct attributed to other Defendants), 261-270 (alleging "Tehrani and Craven stole [Freeman's] ideas and plans" and "lied to Freeman"; no similar conduct alleged against other Defendants), 271-280 (alleging unjust enrichment against "Defendants" without differentiation), 292-299 (alleging "neither Tehrani nor Craven have paid Freeman"; no similar conduct attributed to other Defendants). This widespread and impermissible group pleading requires dismissal of claims 2-6 and 8 against Primedice, Stake.com, Slicemedia, Medium Rare, Easygo, Mebit, and Vučković. *See, e.g.*, *Gillespie*, 343 F. Supp. 3d at 353 (dismissing for impermissible group pleading).

### F.      **The secondary claims (1, 3-6, 9, and 10) should be dismissed as duplicative**.

Several claims—fraud, unfair competition, idea misappropriation, tortious interference, unjust enrichment, and accounting—duplicate the other legal claims for relief. This dooms the duplicative claims because, first, duplicative claims are not permitted under New York law and, second, equitable claims survive only when they do not repeat legal claims.

### 1.      **The claims for fraud, unfair competition, idea misappropriation, tortious interference, and unjust enrichment (claims 1, 3-6, and 10) impermissibly duplicate other claims**.

Under New York law, the majority of Freeman's claims fail for being duplicative of each other and of conversion or other claims. A New York court dismissed many of the same claims as duplicative in nearly identical circumstances. *See Grusd v. Arccos Golf LLC*, No. 653239/2013, 2014 WL 2531511, at *7 (N.Y. Sup. Ct. June 3, 2014). In *Grusd*, one partner told the other he was "walking away" from their shared project (an app called Dolphin Golf) but instead "mov[ed] forward" on his own with a related project (Golfkick). *Id.* at *2. When Golfkick received generous funding, the first partner relied on a grab bag of claims—including fraud, unfair competition, idea misappropriation, tortious interference with business relations, and unjust enrichment—to assert that he was "entitled to 50% of Golfkick" based on the earlier partnership. *Id.* at *7. This attempt failed. The court dismissed these claims as "duplicative" because the "gravamen of this lawsuit" was the "alleged theft" of the former partner's interest in "their joint venture/de facto partnership," proving that the "entire case rises and falls on the claim that he has a right to Golfkick." *Id.* at *7-8. If the plaintiff "fail[ed] to prove this, his other claims necessar[ily] fail," and if he "prevail[ed]," "his other claims [we]re either duplicative or moot." *Id.* The same reasoning applies here: Freeman's claims for fraud, unfair competition, idea misappropriation, tortious interference, and unjust enrichment are purely duplicative of his primary claim—that Tehrani and Craven

unlawfully excluded him from the Stake.com endeavor (breach of fiduciary duty) and converted his equity (conversion)—and thus must be dismissed.

### 2.     The equitable claims for unjust enrichment and accounting (claims 6 and 9) fall flat because they repeat legal claims.

The unjust enrichment and accounting claims are also duplicative insofar as they duplicate legal claims that provide adequate relief. "Equitable relief is generally available where legal remedies are unavailable or inadequate." *Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 86 (2d Cir. 1992). This rule applies to unjust enrichment and accounting claims. *See, e.g.*, *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613-14 (2d Cir. 2010) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."); *United States v. Taame*, 830 F. App'x 53, 54 (2d Cir. 2020) (unpub) ("An accounting is an equitable remedy."); *Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016) (unpub) ("New York law clearly requires … the unavailability of an 'adequate remedy at law' in order to prevail on a claim for an equitable accounting."); *Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 375 (D. Conn. 2012) ("[T]he crux of the equitable remedy of an accounting is the 'inadequacy of the legal remedy,' which forms the basis for equity jurisdiction."); *but see Grgurev v. Licul*, 203 A.D.3d 624, 625, 165 N.Y.S.3d 63 (2022).

Here, Freeman asks for "damages" of at least $200 million for his unjust enrichment claim, FAC p. 55 ¶ (f); that is, he "seeks only *monetary* relief on [his] unjust enrichment claim," *Fed. Treasury*, 400 F. App'x at 613-14. This is a telltale sign that "an adequate remedy at law exists." *Id.* And Freeman does not—and cannot—allege that he lacks an adequate remedy at law for the allegations that underlie his accounting claim, for his breach of fiduciary duty and conversion claims seek the very same $200 million that are properly characterized as damages. FAC ¶¶ 303, 307; *see supra* § III.D.3 (citing *IDT Corp.*, 12 N.Y.3d at 139); FAC p. 55-56 ¶ (b), (g), (h). For his

claim over "partnership assets" and "cryptocurrencies including Bitcoin and altcoin," FAC ¶ 307, he seeks $200 million in damages to cover the conversion of his "Primedice equity" and "altcoins," *id.* p. 56 ¶ (g), (h). Nor does it save Freeman that he is not sure of "[t]he precise amount of damage" because "where an accounting claim exists 'merely [as] a method to determine the amount of the monetary damages sought …, money damages alone afford a full and complete remedy.'" *Murphy v. Morlitz*, 751 F. App'x 28, 31 (2d Cir. 2018) (unpub). Accordingly, Freeman's equitable claims duplicate his legal claims and must be dismissed.

> ### G.   Freeman fails to adequately plead several claims (claims 1, 3-5, 7-9, and 10).

Finally, a fifth set of independent reasons for dismissal: the Amended Complaint inadequately pleads most claims. *See* Fed. R. Civ. P. 9(b) & 12(b)(6). Due to these failures, Freeman's claims for fraud, unfair competition, idea misappropriation, tortious interference, conversion, and accounting must be dismissed.

> ### 1.   Under the choice-of-law analysis, New York law usually governs because it has the greatest interest in most claims.

As with statutes of limitations, New York law determines choice of law, and it applies its own law to procedure and a choice of law analysis to substantive matters. *Supra* § III.D.1. But undertaking a choice of law analysis is necessary only if "there is an actual conflict" between the jurisdictions' law, *GlobalNetFinancial.Com*, 449 F.3d at 382; if there is not, New York "appl[ies] its law," *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006).

Here, as set out below, no conflicts arise between the jurisdictions that are possibly relevant to Freeman's claims. In a tort action, courts compare the law of those jurisdictions with "the greatest interest in the litigation." *GlobalNetFinancial.Com*, 449 F.3d at 384. When assessing states' interests, the "significan[t]" facts or contacts "are those which relate to the purpose of the particular law in conflict" and they are, "almost exclusively, the parties' domiciles and the locus

36

of the tort." *Id.* (quoting New York law). When the tort is a "conduct-regulating law" that "involv[es] the appropriate standards of conduct," as nearly all are here, "the law of the jurisdiction where the tort occurred will generally apply." *Id.*

The crucial question here, then, is "where the tort occurred." *Id.* "A tort's locus … is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 109 (2d Cir. 2016) (cleaned up). "Usually this is the location where the plaintiff was injured." *Id.* So, the relevant jurisdictions here are largely (if not entirely) those where Freeman was allegedly injured: Washington, D.C., where he lived before and around Stake.com's launch, or New York, where he lived around and after the launch. FAC ¶ 18.[18]

### 2. Freeman fails to adequately plead and allege fraud (claims 1 and 10) under Rules 9(b) and 12(b)(6).

**Rule 9(b)**. Both the fraud claims neglect Rule 9(b)'s mandate because they do not describe "with particularity" the who, what, when, where, and how of the Defendants' alleged misconduct. Fed. R. Civ. P. 9(b). Under Rule 9(b)'s heightened pleading standard, the claim "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements … were made, and (4) explain why the statements … are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Here, among the details missing from both fraud claims are the locations of each alleged

---

[18] The state where the injury accrued for the statute-of-limitations analysis (§ III.D.1) and the state with the greatest interest in the substantive choice-of-law analysis (§ III.G.1) can differ. That is because the "choice-of-law question … is a matter of common law," while the statute of limitations are "governed by particular terms of the CPLR." *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528-29, 715 N.E.2d 482, 693 N.Y.S.2d 479 (1999). Accordingly, the "substantive choice-of-law interest analysis test used in tort cases … [is] inapplicable to the question of statutory construction presented by CPLR 202." *Id.* Thus, for example, conversion can accrue in Wisconsin for the statute of limitations, but still be governed by Texas substantive law. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 410-11 (S.D.N.Y. 2010).

misrepresentation about Stake.com being a fiat casino and about Slicemedia's ownership of Primedice, respectively, as well as any details as to the timing of the latter. *See* FAC ¶¶ 112-113, 145-146, 224-225, 312-314. Based on those omissions alone, the fraud claims flunk Rule 9(b)'s test.

**Rule 12(b)(6)**. Freeman's fraud claim against Slicemedia (claim 10) also fails because the Amended Complaint does not allege any misconduct on behalf of Slicemedia—the only defendant against whom this claim is directed. It alleges actions by Tehrani and Craven, *see id.* ¶¶ 312-314, but not Slicemedia. Where the plaintiff "does not allege that [the relevant defendant] made any false statements," he has failed to state a claim for fraud. *Sulehria v. New York*, No. 13-cv-6990-AJN, 2014 WL 4716084 at *7 (S.D.N.Y. Sept. 19, 2014). Thus, claim 10 must be dismissed.

### 3.      Freeman fails to state a claim for unfair competition (claim 3).

The Amended Complaint fails to allege facts sufficient to sustain the unfair competition claim. As relevant here, such claims involve the Defendants taking the "labor," "expenditures," or assets of the plaintiff and using it to their own commercial advantage. *Roy Exp. Co.*, 672 F.2d at 1105 ("the taking and using of the plaintiff's property"); *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692-93, 833 N.Y.S.2d 138 (2007); *supra* 28-29. The allegation that the Defendants misappropriated "*Primedice* partnership assets, equity, name value, and reputation" relates to the Defendant Primedice, not to Freeman. FAC ¶ 249 (emphasis added). The same is true about the allegations related to the "proprietary technology and confidential trade secret information" that Freeman allegedly "develop[ed]" because, again, that information belongs to Primedice. *Id.* ¶¶ 245, 246, 248. The Amended Complaint offers no allegations about misappropriation of

*Freeman*'s labor, expenditures, or assets. Thus, the claim must be dismissed. *See Abe's Rooms, Inc.*, 38 A.D.3d 690 at 692-93 (dismissing unfair competition claim for same reason).[19]

### 4.   Freeman fails to allege novelty and thus fails to state a claim for idea misappropriation (claim 4).

Freeman's claim for idea misappropriation must be dismissed because it fails to state the required element of novelty.[20] A "misappropriation claim can only arise from the taking of an idea that is original or novel in absolute terms." *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 378 (2d Cir. 2000); *see also Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 F. App'x 37, 42 (2d Cir. 2014); *Am. Bus. Training Inc. v. Am. Mgmt. Ass'n*, 50 A.D.3d 219, 222-223, 851 N.Y.S.2d 491 (2008). "The test for novelty is rather stringent [and] the idea must show true invention and not a mere adaptation of existing knowledge." *Broughel v. Battery Conservancy*, No. 07-cv-7755, 2010 WL 1028171, at *4 (S.D.N.Y. Mar. 16, 2010); *see also Nadel*, 208 F.3d at 378 (contrasting "genuine novelty and invention" with "a merely clever or useful adaptation of existing knowledge"). In assessing novelty, courts look to "the idea's specificity or generality (is it a generic concept or one of specific application?), its commonality (how many people know of

---

[19] To the extent that Washington, D.C., law is relevant (because Freeman lived in D.C. during the leadup to Stake.com's launch), these allegations also fail to establish a basis for unfair competition under D.C. law, which recognizes unfair competition claims based on "defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, [and] false advertising or deceptive packaging." *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982); *see also Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978). Freeman "makes no meaningful attempt to square [his] unfair-competition claim with District law." *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 509 (D.C. Cir. 2020).

[20] New York law governs because all the jurisdictions with interest in any misappropriation leading up to and at Stake.com's launch recognize that the idea underlying the claim must be "novel and concrete," or at least not in the public domain. *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 378 (2d Cir. 2000) (New York law); *see Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn. 1993) (Connecticut law); *Hamilton Nat. Bank v. Belt*, 210 F.2d 706, 708 (D.C. Cir. 1953) (Washington D.C. law); McGill Decl., Ex. D, p. 7 (Australian law, citing *Kafataris v. Davis*, (2016) FCAFC 134 (Austl.)).

this idea?), … and its commercial availability (how widespread is the idea's use in the industry?)." *Nadel*, 208 F.3d at 378.

Freeman's own allegations demonstrate that his "idea" to launch a cryptocurrency casino was not "novel" in any relevant sense. For one, the idea of an online casino paid for with cryptocurrency—the supposedly novel idea behind Stake.com, *see, e.g.*, FAC ¶ 80—is generic. And Primedice's very existence proves that Freeman's alleged idea to expand into more casino games was, at most, "a merely clever or useful adaptation of" those preexisting games. *Nadel*, 208 F.3d at 378; *see also McGhan v. Ebersol*, 608 F. Supp. 277, 286 (S.D.N.Y. 1985) (refashioning ideas sounds more in "the nature of elaboration and renovation than of innovation" (cleaned up)). Indeed, Freeman concedes that the idea to "cover[] additional gambling opportunities including online cryptocurrency slot machines and online cryptocurrency poker games" merely "expand[ed]" Primedice into "these [additional] areas." FAC ¶¶ 255-257. Furthermore, he admits that the idea of online cryptocurrency gaming preexisted even Primedice—which Freeman allegedly "conceived of" as a "Bitcoin gambling website which would *improve upon* and compete with 'Satoshi Dice,'" an existing "blockchain-based gambling concept." *Id.* ¶ 35 (emphasis added); *see McGhan*, 608 F. Supp. at 286 (an idea is not novel "if the idea was already in use in the industry at the time"). Several other Bitcoin casino games also predated his purportedly new idea, as news reports show. *See* McGill Decl. ¶ 10 & Ex. B (2014 article by PBS about "billions" of dollars being wagered on "Bitcoin betting sites," including Satoshidice.com, Just-Dice.com, and SealsWithClubs.eu); ¶ 11 & Ex. C (2014 article by CoinDesk discussing existing crypto-

gambling websites).[21] Given its admitted lack of novelty, Freeman's alleged idea cannot support a misappropriation claim.

### 5. Freeman's tortious interference claim (claim 5) fails because he identifies no third-party business relationship.

Freeman's claim for tortious interference with prospective economic advantage must be dismissed because he does not allege a necessary element: a "business relationship [between Freeman and] a third party" with which the Defendants "interfered." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006); *see Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018) (The "defendant[s] must target some activities directed toward the third party and convince the third party not to enter into a business relationship with the plaintiff.").[22] He alleges that Tehrani and Craven directed all sorts of misconduct *at him*. *See* FAC ¶¶ 267 ("Tehrani and Craven lied to Freeman"), 268 (they violated "their fiduciary obligations to Freeman and to Primedice"), 269 (they intended to "tak[e] advantage of Freeman"). But "conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a [business] relationship." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 818 N.E.2d 1100, 785 N.Y.S.2d 359

---

[21] The Court can take judicial notice of these articles, for they are offered not for their truth but to show what information was publicly available at the time. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008); *e.g.*, *Longi v. New York*, No. cv-02-5821, 2006 WL 8441210, at *31 (E.D.N.Y. June 26, 2006), *aff'd*, 363 F. App'x 57 (2d Cir. 2010) (dismissing idea misappropriation claim after taking judicial notice of newspaper articles indicating that general idea "already existed in the public domain").

[22] Because Freeman does not allege a third party with whom the Defendants interfered, it is impossible to decipher where this alleged tort "substantially occurred" and thus which state's law applies. *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006). But this requirement exists whatever law applies. In D.C., the tort requires the "existence of a valid … business relationship" between the plaintiff and a "third person." *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038-39 (D.C. 2015) (internal quotation marks omitted). And in Australia, the most analogous tort—inducing breach of contract—requires proof of a contract between the plaintiff and a third party. *See* McGill Decl., Ex. D, p. 2-3 (citing *Daebo Shipping Co Ltd. v. The Ship Go Star*, (2012) FCAFC 156 at 88 (Austl.)).

(2004). Freeman's failure to "describe any third party" is "fatal to this claim." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010). Consequently, this claim must be dismissed as well.

6.     **The conversion of equity claim (claim 7) is inadequately pleaded and both conversion claims (claims 7 and 8) fail for lack of jurisdiction.**

The claim for conversion of equity against Tehrani and Craven (claim 7) fails for being inadequately pleaded under Australian law. And both conversion claims (claims 7 and 8) also cannot stand because the Court cannot exercise specific personal jurisdiction over either claim.

This pleading failure arises from the fact that both alleged conversions occurred in Australia, not New York. And, for conversion claims, the choice of law analysis depends on where the taking occurred, not where the plaintiff suffers the harm. *See, e.g.*, *Abbott Labs v. Feinberg*, No. 21-45, 2023 WL 19076, at *2 (2d Cir. Jan. 3, 2023) (unpub) (assessing choice of law based on where the defendant "refus[ed] to hand over" the contested property); *Daou*, 42 F.4th at 132 (conversion "turn[ed] on alleged measures taken by [the Lebanese defendants] in Lebanon," even though the plaintiff lived in the United States); *Ash v. Richards*, 572 F. App'x 52, 53 (2d Cir. 2014) (unpub) (for personal jurisdiction, looking to where the defendant was when the conversion occurred); *Lund's Inc. v. Chem. Bank*, 870 F.2d 840, 845 (2d Cir. 1989) (holding determinative for the choice of law analysis that the conversion "occurred in New York"). Here, Freeman alleges that an act of conversion occurred in February 2014, when "Craven unilaterally stated he was redistributing 6% of Freeman's equity," FAC ¶ 286, and Craven lived in Australia, *id.* ¶ 20. Likewise, in August 2020, when "Craven and Tehrani … conceded [that they] owed to Freeman" the altcoins listed in "an accounting spreadsheet," *id.* ¶ 293, both Craven and Tehrani resided in Australia, *id.* ¶¶ 19, 20. Thus, Australian law applies to these claims.

**Failure to allege conversion of equity (claim 7)**. Freeman does not allege a required element of conversion under Australian law. "The essence of conversion is a dealing with a chattel repugnant to the immediate right of possession of the person who has the property." McGill Decl., Ex. D, p. 5 (quoting *Penfolds Wines Pty Ltd. v. Elliott*, (1946) 74 CLR 204 at 229 (Austl.)). To assert such a claim, Freeman must clearly define a "certain sum" to which he holds an "immediate right of possession." *Id.* But Freeman does no such thing here. He claims that because he "never agreed to" and never "signed any written agreement to allow for" Craven's redistribution of 6% of his equity, the redistribution is "illegal" and "a breach of the partners' fiduciary duties." FAC ¶¶ 75-77. But then he offers a series of inconsistent allegations as to what he lost, shifting from the allegation that his "partnership share remains at least 20%" to contending "one-third each" to suggesting it might be "based on the actual amounts each invested." *Id*. ¶¶ 76, 287, 289. Such competing allegations do not establish any rights at all, let alone an "immediate right" to a "certain sum" of equity. McGill Decl., Ex. D, p. 5. These pleading failures require dismissal.[23]

**Personal jurisdiction**. Freeman's conversion claims also fail for the independent reason that the Court lacks personal jurisdiction to adjudicate them. In 2014 and 2020, the time of the alleged conversions, no Defendant was "transact[ing] any business" in New York (because Primedice's alleged availability does not meet this standard, *supra* n.15), let alone any business that gave rise to these conversion claims (because alleged contacts with Primedice customers do not relate to these conversion claims, *supra* 19). § 302(a)(1); *Daou*, 42 F.4th at 129, 132. No Defendant was physically present in New York. § 302(a)(2); *Bank Brussels*, 171 F.3d at 790. And no Defendant converted property in New York, *supra* 18-20, or could have expected New York

---

[23] The conversion of altcoin claim (claim 8) is similarly dubious because it requires a cause of action for conversion of cryptocurrency and, under Australian law, it "has not yet been determined" "whether cryptocurrency can be the subject of conversion." McGill Decl., Ex. D, p. 6.

consequences, since the location where Freeman felt the harm "is not a sufficient basis for jurisdiction under § 302(a)(3)." *Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 61 (2d Cir. 2019); *see supra* 20-21. There is thus no basis for asserting specific personal jurisdiction over the conversion claims.

### 7.   Freeman's accounting claim (claim 9) is barred by laches.

Lastly, laches bars the accounting claim. This is so whether the claim is governed by the law of Connecticut or New York. *See supra* 14 (explaining the options). The defense of laches is properly considered on a motion to dismiss when the defense is "clear on the face of the complaint" and "it is clear that the plaintiff can prove no set of facts" to avoid its application. *Williams v. Nat'l Gallery of Art, London*, No. 16-cv-6978, 2017 WL 4221084, at *12 (S.D.N.Y. Sept. 21, 2017), *aff'd*, 749 F. App'x 13 (2d Cir. 2018) (applying laches at this stage); *see REI Holdings, LLC v. Marcus*, No. 3:20-cv-01178, 2021 WL 3173733, at *21 (D. Conn. July 27, 2021).

The "right to an accounting" is "limited by … laches" if "there was an inexcusable delay … in seeking the accounting" and "prejudice[]" caused "by the delay." *Williams v. Williams*, CV-065000985-S, 2010 WL 4075277, at *3, *6 (Conn. Super. Ct. Sept. 15, 2010) (unpub); *see Calderoni v. Senese*, No. cv-085017724, 2014 WL 7530169, at *3-4 (Conn. Super. Ct. Dec. 3, 2014) (unpub); *White v. Priester*, 78 A.D.3d 1169, 1171, 912 N.Y.S.2d 127 (2010).

Here, Freeman has delayed inexcusably in seeking an accounting. Perhaps that is because he was the one initially tasked with maintaining the accounting. *See* FAC ¶¶ 50-51. According to his own allegations, after his "accounting failures," the partners set a "baseline" and "institute[d] a more formal accounting system" more than seven years ago, in September 2016. *Id.* p. 39 & ¶ 207. But Freeman did not seek an accounting then; instead, he waited more than six years to dispute the accounting and request an alternative one. Tehrani, Craven, and others were and are prejudiced by this delay because their positions have changed (e.g., the value of cryptocurrency

has changed dramatically since 2016, *id.* ¶ 296), evidence has been lost (e.g., memories have faded as to the earlier transactions), and most basically, Tehrani and Carven were and are entitled to rely on their "agree[ment] to a 'baseline' figure" and their accounting system after it was implemented in 2016, as they focused on building a billion-dollar business. *See White*, 78 A.D.3d at 1171 ("Prejudice may be demonstrated 'by a showing of injury, change of position, loss of evidence, or some other disadvantage resulting from the delay.'"). Any objection to the formalized accounting "should have, and could have, been raised years ... earlier." *Williams v. Williams*, No. CV-065000985-S, 2011 WL 6945652, at *3 (Conn. Super. Ct. Nov. 21, 2011) (unpub). The accounting claim must be dismissed.

## IV.    <u>CONCLUSION</u>

In the final analysis, this lawsuit is just another of Freeman's bad decisions. After passing on the opportunity of a lifetime and stealing from a childhood friend, Freeman now doubles down in court, demanding a payout for his own mistakes. But he should have let this opportunity pass him by too, because the Amended Complaint is doomed for at least five independent reasons: (1) pervasive jurisdictional failures; (2) untimeliness of claims; (3) impermissible group pleading; (4) duplicative claims; and (5) failure to adequately allege claims. For these reasons and those set forth above, the Court should dismiss the Amended Complaint with prejudice.

Dated: February 15, 2023

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ David McGill*_____

    David McGill
    Columbia Center
    1152 15th Street, N.W.
    Washington, D.C. 20005-1706
    Telephone: (202) 339-8400
    Email: dmcgill@orrick.com

    R. David Hosp
    222 Berkeley Street
    Suite 2000
    Boston, MA 02116
    Telephone: (617) 880-1802
    Email: dhosp@orrick.com

    Sachi Schuricht (pro hoc vice forthcoming)
    405 Howard Street
    San Francisco, CA 94105
    Telephone: (415) 773-4583
    Email: sschuricht@orrick.com

    Eliza Lehner (pro hoc vice forthcoming)
    51 West 52 Street
    New York, NY 10019
    Telephone: (212) 506-5000
    Email: elehner@orrick.com

    *Attorneys for Defendants*