SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------

CHRISTOPHER FREEMAN,

                              Plaintiff,           Case No. 22-cv-7002 (RA)

        -against-

STAKE.COM, PRIMEDICE, EDWARD CRAVEN,
BIJAN TEHRANI, SLICEMEDIA B.V., MEDIUM
RARE N.V., EASYGO SOLUTIONS PTY LTD,
MEBIT.IO, AND MLADEN VUCKOVIC,

                         Defendants.

-------------------------------------------------------------------------------

**Exhibit "L" to the Affidavit of 'Glenn Ferguson'**



23 March 2023

Mr Glenn Ferguson AM
Managing Director
FC Lawyers
Brisbane Club Tower
Level 8, 241 Adelaide Street
Brisbane  Qld  4000

BRISBANE

Level 8, Waterfront Place
1 Eagle Street
Brisbane Qld 4000 Australia

PO Box 7822, Waterfront Place
Brisbane Qld 4001 Australia

ABN: 54 105 489 661

Our ref:      2363117 - Timothy Edwards

Dear Mr Ferguson AM

***Freeman v Tehrani and* Others**
**Case 22-cv-7002 (RA)**
**United States District Court**
**Southern District of New York**

I have been asked to provide initial comments and advice in relation to the application of Australia's online gambling laws to Stake.com.

I am provided with a copy of a document entitled First Amended Complaint (**FAC**), filed in the United States District Court, Southern District of New York by Christopher Freeman on or about 4 January 2023, and other material filed in that proceeding.

For the purposes of my advice, I understand Mr Freeman is the client.  I accept as true, but have not personally verified, the allegations contained in the FAC.

This letter contains my opinion as to the application of Australia's online gambling laws to Stake.com.  My curriculum vitae is **enclosed**.  I am the Head of my firm's Digital Assets practice group, an Accredited Specialist in Commercial Litigation (as awarded by the Queensland Law Society) and a Special Counsel in my firm's Dispute Resolution & Litigation team.

## Prohibition on providing certain online gambling services to Australian residents

1.      I have examined whether any of the gambling activities offered by Stake.com offend Australia's online gambling legislation regime.

2.      I understand from my instructions and the material provided to me that, despite its website's reference to a number of gambling activities that <u>might</u> be – not necessarily are - lawful in Australia, Stake.com is primarily, if not exclusively, an online cryptocurrency gambling casino.

3.      Therefore the short answer is 'yes' – the intentional provision of that service to customers residing in Australia would, in the absence of a relevant defence, most certainly be an offence which attracts a criminal penalty[1];

---

[1] The 'Dictionary' within the *Criminal Code Act 1995* (Cth) defines 'offence' to be an offence against a law of the Commonwealth; and the Act is federal legislation and thus a law of the Commonwealth.

BRISBANE

**T** +61 7 3024 0000
**F** +61 7 3024 0300

PERTH

**T** +61 8 9211 8111
**F** +61 8 9221 9100

www.hopgoodganim.com.au

Mr Glenn Ferguson AM
Managing Director
FC Lawyers

23 March 2023



and even the unintentional provision of those services may still attract a civil penalty.

4.  I will elaborate below, including on the most relevant defence and why it is likely very difficult to ever maintain.

5.  The *Interactive Gambling Act 2001* (Cth) (**Act**) provides that any entity, wherever in the world he, she or it may be based, which intentionally provides what is defined to be a 'prohibited interactive gambling service'[2] which has an 'Australian-customer link',[3] commits an offence attracting a criminal penalty.

6.  The same conduct can result in the imposition of a civil penalty – even if the service is not provided intentionally.

7.  The meaning of each of the terms 'prohibited interactive gambling service' and 'Australian-customer link' is important in this case.

8.  The term 'Australian-customer link' has a very broad meaning.  In short, a service will have that sort of link if it is provided to 'any' customer or end-user who is physically present in Australia.[4]  Consistently with that, the Act provides that section 15.4 of the *Criminal Code Act 1995* (Cth) applies to the abovementioned offence;[5] and that section, in turn, provides that the offence will be prosecutable against a person or entity, regardless of whether the offending conduct occurred in Australia or not, and regardless of whether the result of the conduct occurred in Australia or not.

9.  Thus, it is clear that the Act is consumer-protection legislation which focuses on protecting Australian residents, rather than regulating the activities of persons or entities necessarily based in Australia.

10.  The Act prohibits lotteries (which are not trade promotion lotteries) and most traditional casino games.  It would, for instance, prohibit online slot machines, online Blackjack and online roulette, among many other similar games of chance.[6]  An online equivalent of a full-service casino – whether fiat or cryptocurrency-based - would most certainly offend the Act.

11.  Thus, based on my understanding noted above, Stake.com could not provide its service offering to Australian residents without committing an offence (likely numerous offences) and incurring civil penalties; and, in particular, gambling on Stake.com's online cryptocurrency casino cannot be offered legally in Australia.

**The price for non-compliance and the 'attempted compliance' defence**

12.  Where the Act provides that conduct is a criminal offence or a breach of statute giving rise to a civil penalty, it provides that the offence or the breach is deemed to occur each day for which the non-compliance continues.[7]

13.  Consequently, and depending upon the scope, volume and size of the gambling activities it facilitates, non-compliant entities may be exposed to massive penalties (criminal and/or civil).  For instance, the civil penalty currently imposed for providing a prohibited interactive

---

[2] The Act, s 5(1) definition of 'prohibited interactive gambling'.
[3] Ibid, s 15(1).
[4] Ibid, s 8.
[5] Ibid, s 15(5).
[6] See the definition of "gambling service" in s 4 of the Act, which should be read together with s 5(1) of the Act.
[7] Ibid, s 15(2A) and s 15(2B).

Mr Glenn Ferguson AM
Managing Director
FC Lawyers

23 March 2023



---

gambling service with an Australian-customer link is AUD$2,062,500.00 as at the date of writing.

14.     The Act provides that it will be a defence to the abovementioned offences or civil penalty provisions if the provider did not know that Australian customers were accessing the relevant website,[8] and (crucially) could not have, with reasonable diligence, ascertained that.[9]

**Ability for ancillary legislation to alter the advised position**

15.     As mentioned above, the Act provides some means for the Australian legislature to alter, by passing small ancillary legislative instruments which expressly deal with specific issues, what online gambling services are or are <u>not</u> prohibited.[10]   This should be kept in mind when construing the Act and relying on the above advice.

16.     That said, any instances of this which have occurred to date appear to be either relatively minor[11] or irrelevant to the purposes of this advice.[12]   Further, common sense would dictate that this form of modification would only be used to make minor changes dealing with specific events or issues (rather than to indirectly amend the substantive and important provisions of the Act); but this is nonetheless something to monitor when relying upon the above advice, or construing the Act, from time to time.

**Relevant conclusion**

17.     Insofar as you have asked for my specific advice about the legality of Stake.com's online gambling via a casino model using either fiat or cryptocurrency, my answer is that it <u>is</u> unlawful in Australia as, I understand, it is in many other countries around the world.

18.     Indeed, if Stake.com was available to Australian residents (and this was not due to those residents using technical and difficult to detect means to access the website despite reasonable steps being taken by the operators of the website to prevent just that), then the operators of the website would be liable to be prosecuted for a criminal offence in the Australians Courts, which attracts a significant penalty and, potentially, a sizable civil penalty as well.

---

[8] The Act, s 15(5)(a).
[9] Ibid, s 15(5)(b).
[10] As is seen throughout the Act, whereby the Minister (currently the Commonwealth Minister for Infrastructure, Transport, Regional Development, Communications and the Arts) is delegated the power to declare certain things to be so for the purposes of the Act by way of enacting a legislative instrument (such as through regulations, rules, determinations or otherwise).
[11] See for example the Act, s 10A(3) and *Interactive Gambling (Sporting Events and Excluded Wagering Services) Determination 2017* (Cth) s 5(a): which primarily work to clarify whether betting 'overnight' during the course of a multi-day cricket match counts as 'in play' betting.
[12] The only relevant example found at the time of writing is ancillary legislation which created a mechanism for persons to 'ban' themselves from even legal and regulated online gambling services – designed to assist gambling addicts.  This reinforces my view that the Act is, primarily, consumer protection legislation.  dSee the *Interactive Gambling (National Self-exclusion Register) Register Rules 2022* (Cth) and the Act, ss 61KA(3), 61KA(4).

Mr Glenn Ferguson AM
Managing Director
FC Lawyers



23 March 2023

---

Yours faithfully

**HopgoodGanim Lawyers**

**Contact:** **Timothy Edwards**
**Head of Digital Assets**
**Special Counsel**
**Accredited Specialist (Commercial Litigation) - Qld**
T 07 3024 0310
F 07 3024 0010
E t.edwards@hopgoodganim.com.au

Approach to Market – Consultancy Services Annexures (RFQ-SCO001692)

# Key personnel curriculum vitae



## Tim Edwards

### Head of Digital Assets
### Special Counsel

LLB (HONS), BBUS (MGMT), ACC.
SPEC. (COM. LIT.) – QLD.

+61 7 3024 0310
t.edwards@hopgoodganim.com.au

**Areas of practice**

- Cryptocurrency and other Digital Asset Disputes
- Insolvency and Restructuring
- Complex Commercial Litigation and Dispute Resolution
- PPSA Enforcement Matters

**Tim is the Head of HopgoodGanim's Digital Assets practice and a Special Counsel in its Dispute Resolution and Insolvency practices.**

Tim is an Accredited Specialist in Commercial Litigation who advises on all types of litigation and disputes, with a specific focus on matters involving distributed ledger technology (cryptocurrencies, smart contracts and NFTs) and other fintech, insolvency and restructuring, the enforcement of security interests, proceeds of crime matters, partnership and shareholder disputes, misleading or deceptive conduct actions, complex commercial or construction contract disputes, and novel estates litigation. He routinely appears in Court and at mediations.

Whilst a specialist technical litigator by profession, he has in recent years garnered industry-leading experience working in the digital assets and fintech space. He advises businesses of all sizes (from a NASDAQ top-10 entity to Brisbane-based start-ups) working in or interacting with the digital asset space – particularly in his specialty area of dispute resolution, but also by assisting them to negotiate significant contracts, providing regulatory advice, and assisting with interactions with regulators.  For many of his clients in this space, he functions akin to an 'external in-house counsel'.

| Receivers appointed by ASIC | • Acted for and advised receivers appointed by ASIC to the assets of a former financial planner, with a view to assisting them to recover, preserve and dispose of property including cryptocurrency and digital assets themselves estimated to be worth between $30 million and $40 million. |
| --- | --- |
| | • This work included detailed and ongoing advice in relation to: |
| |   - the legal tests for ownership of digital assets; |
| |   - the obligations relating to safe custody and responsible disposal of digital assets; |
| |   - interpretation and application of smart contracts; |
| |   - briefing of and liaising with forensic specialists to trace and seek to recover digital assets; and |
| |   - dealing with third party custodians such as digital asset exchanges in both amicable and disputed contexts. |
| | • The work also included preparation of Court Documents and instructing Paul Betros or Counsel in the Federal Court in various hearings relation to digital assets (including the explanation of digital asset concepts to the Court). See: *Australian Securities and Investments Commission v A One Multi Services Pty Ltd* [2021] FCA 1297 and *Australian Securities and Investments Commission v A One Multi Services Pty Ltd (No 2)* [2022] FCA 1100. |
| ASFA | • Advised AFSA in relation to, and acted for the Official Trustee, in litigation related to, the preservation and disposal of assets of Mr Steven Hart and his related entities. The assets included fighter jets and the litigated matters included proceedings to recover funds and defense of a challenge to the validity of a receivership instigated by the Official Trustee. See: *Flying Fighters Pty Ltd v Official Trustee in Bankruptcy* [2019] 3 QdR 552. |
| | • Advised AFSA in relation to the technical workings of the *Proceeds of Crime Act 2002* (Cth) on various matters. |

*"Based on my experience with Tim Edwards and the HopgoodGanim Digital Assets practice group, Tim and the team demonstrate a unique competitive advantage in the marketplace as they have at their disposal the skills and experience needed to act in complex recovery, commercial litigation and insolvency matters; and the technical and practical knowledge needed to neatly explain what cryptocurrencies, NFTs and other digital assets are, how they work, and how they interact with all aspects of Australian law."*

**– Mark Holland, Partner, McGrathNicol**

| | |
|---|---|
| **Confidential top-10 NASDAQ client** | • Advised a confidential top-10 NASDAQ client in relation to the application of every facet of Australian law and regulation applicable to a global NFT project. Tim is the firm's lead relationship practitioner with the client. |
| **Zerocap Pty Ltd** | • Advice as to various disputes with customers, stakeholders and suppliers, all of which were in the digital asset context. Includes disputes as to the custody and disposal of digital assets.<br>• Regulatory advice including as to the custody, preservation and disposal of digital assets.<br>• General legal and commercial advice (akin to external, inhouse counsel role). |
| **Confidential ASX-listed client** | • Advised an ASX-listed client on the creation and functioning of a white label NFT exchange, including negotiating of and drafting of agreement terms and practical advice on the mechanisms needed to responsibly create, hold and transfer NFTs. |
| **Confidential cryptocurrency ATM operator** | • Advising a business which operates cryptocurrency ATMs as to the suspected misappropriation of its funds, including in litigation in a State Supreme Court as to the same. This involved legal and evidentiary consideration of issues relating to the tracing and recovery of blockchain assets. |
| **Other recent notable digital assets work** | • Various disputes between entities involving the transfer or failure to transfer digital assets.<br>• Contract disputes where the contract subject matter involved digital assets.<br>• Other regulatory advice to numerous entities seeking to create, market or deal with digital assets for a profit, including various clients seeking to operate exchanges, operate payment facilitates, manage or facilitate investments, or issue digital assets. |
| **Urgent mandatory injunction in fintech context** | • Successfully acted for a fintech start-up in obtaining an urgent mandatory injunction in the Federal Court of Australia against a major financial services provider to compel performance of a financial services agreement pending the resolution of a dispute as to the reserving of funds. |
| **Department of Attorney General (Commonwealth Government)** | • Acted for the Department of Attorney General (Commonwealth Government) in relation to the recovery of the priority dividends which it is owed under the FEG Scheme from the receivers, liquidators and administrators of various insolvent companies. Assisted and ran elements of high-profile legal proceedings (including Hastie Services and RWE Robinson & Sons) which have attracted considerable interest in the insolvency and banking sectors. See: *Kirman v RWE Robinson and Sons Pty Ltd (in liq); Re RWE Robinson and Sons Pty Ltd (in liq)* [2019] FCA 372. |
| **Other recent notable traditional commercial litigation work** | • Acted in a complex contract and alleged joint venture dispute involving claims in contract, equity, misleading or deceptive conduct, unconscionable conduct and other claims; total alleged claims exceeded $20 million and the various defendants were large international construction and engineering firms. |

3

Approach to Market – Consultancy Services Annexures (RFQ-SCO001692)

| | |
|---|---|
| **Other recent notable traditional insolvency work** | • Acted for the Administrators of Ellume Limited (Subject to Deed of Company Arrangement) in technical and urgent insolvency applications, including by appearing in Court without Counsel on urgent applications. See *Park (Admins), Ellume Ltd (Admins App) v Evangayle Pty Ltd (Trustee)* [2022] FCA 1102.<br><br>• Acted in a technical challenge to the validity of a receivership where the secured asset was a mine and related property and the positions of Liquidators and Receivers were at odds.<br><br>• Assisted an Australian government statutory body to recover and sell, pursuant to a security interest, an array of valuable mining equipment pursuant to security interests under the PPSA. |
| **Estate of Allison Baden Clay (deceased)** | • Successfully appeared for the Administrator of the estate to procure orders in each of the Supreme Court and Federal Court pertaining to the administration generally and, in particular, the distribution of life insurance proceeds in circumstances where a murderer was otherwise a beneficiary of the proceeds. |