UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER FREEMAN,

                Plaintiff,

        v.

STAKE.COM, PRIMEDICE, EDWARD
CRAVEN, BIJAN TEHRANI, SLICEMEDIA
B.V., MEDIUM RARE N.V., EASYGO
SOLUTIONS PTY LTD, MEBIT.IO, MLADEN
VUCKOVIC,

                Defendants.

22-CV-7002 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Christopher Freeman, a founder of Primedice, an online cryptocurrency gambling site, brings this suit against his former business partners, Edward Craven and Bijan Tehrani, several corporate entities purportedly under their control, and another individual, Mladen Vučković, asserting ten causes of action for, among other things, fraud, idea misappropriation, tortious interference, and unjust enrichment. Freeman's Complaint—which reads not unlike *The Social Network's* account of the creation of Facebook—alleges that Craven and Tehrani stole his idea for developing an expansive online cryptocurrency-based casino, subsequently launched Stake.com, an online cryptocurrency casino now worth more than a billion dollars, and, through a series of corporate transfers, left him without any real partnership stake in the original Primedice venture.

    Now before the Court is Defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction over several Defendants, and for failure

to state a claim. Although the Complaint's factual allegations related to the purported theft of Freeman's work in the launch of Stake.com are themselves detailed, its allegations as to the Court's subject matter jurisdiction are lacking in critical respects. Accordingly, for the reasons which follow, the motion to dismiss is granted, albeit without prejudice.

## BACKGROUND

The following facts are taken from the Amended Complaint (hereafter, "Complaint") and are assumed to be true for purposes of the present motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

In 2013, Freeman, Tehrani, and Craven, each then younger than 20 years-old, partnered to create Primedice, an online cryptocurrency gambling site. Am. Compl. ¶ 2. Primedice's single-dice-game interface allowed users to gamble with Bitcoins (or percentages thereof) on a basic game of chance. *Id*. Freeman invested significant time, money, and effort into Primedice's operation, *id*. ¶¶ 43, 72, and claims he made significant efforts toward expansion of the Primedice concept into an online, full-service cryptocurrency casino offering end-users additional games of chance, *id*. ¶¶ 80–87. In 2016, he allegedly pitched this development plan to Tehrani and Craven, and "pushed the partnership towards expansion into other online cryptocurrency gambling games." *Id*. ¶ 4.

In August 2016, Tehrani and Craven informed Freeman that they were not interested in pursuing an online cryptocurrency casino, as Freeman had envisioned, and would instead be developing a fiat casino together. *Id*. ¶¶ 112–14. Among other things, they claimed that the virtual casino Freeman envisioned would be "too expensive to build." *Id*. ¶ 8. Instead, they invited Freeman to relocate to Australia to participate in their fiat casino project, *id*. ¶ 9; Freeman declined, believing "that a fiat money casino presented too many competitors, too many personal risks, and too much regulatory scrutiny given the partnership's poor history of record-keeping, compliance,

and accounting at Primedice." *Id*.

After "induc[ing]" Freeman to withdraw from participation in the fiat casino project, Tehrani and Craven ultimately launched Stake.com—a broad online cryptocurrency-based casino which offers numerous casino-style gambling options—in June 2017. *Id*. ¶¶ 115–17. They allegedly incorporated Freeman's work and funds into the Stake.com project in the process, as they had "secretly planned all along," never having intended to establish a fiat money casino as they had represented. *Id*. ¶¶ 10, 108–09, 116–18. Among the dozen casino games operated by Stake.com is a dice game, Stakedice, which was developed as a "fifth generation" dice game "derived from the original Primedice technology," and which "immediately began to siphon business, revenues, and profits from Primedice." *Id*. ¶¶ 151, 153. Following its launch, Stake.com was publicly characterized as the "newest edition to [sic] the Primedice family," and allegedly used Primedice's gambling license to operate. *Id*. ¶¶ 23–24. Upon information and belief, Freeman alleges Tehrani and Craven used Primedice funds to pay the programmers who developed the gaming technology for Stake.com. *Id*. ¶ 155.

Tehrani and Craven eventually hired Defendant Vučković as Primedice's CEO, and—unbeknownst to Freeman—transferred ownership of the Primedice entity to Defendant Medium Rare N.V., a private limited liability company based in Curaçao (whose sole member is Vučković), and then re-transferred it to Defendant Slicemedia B.V., another private limited liability company based in Curaçao (and whose sole member is also Vučković). *Id*. ¶ 135. The net effect of these transfers converted Freeman's partnership interest in Primedice to Slicemedia. *Id*. According to Freeman, he "did not consent to, and would not have consented to, any transfer of his interests to a new corporate entity, especially one in which he was not a shareholder director, partner or any other official position." *Id*. ¶ 137. Tehrani and Craven thereafter allegedly "conceal[ed] the nature of Primedice's true ownership," not only from Freeman, but "also from global and American

regulators." *Id*. ¶ 143.

Based upon public reporting, and upon information and belief, Freeman asserts Stake.com was worth more than $1 billion as of the filing of his Complaint. *Id*. ¶ 175, 176. All the while, since the launch of Stake.com, he claims to have been a net depositor, rather than withdrawer, of Bitcoins into Primedice—at the same time, Tehrani and Craven have allegedly withdrawn thousands of Bitcoins (worth tens of millions of dollars) from the site. *Id*. ¶¶ 211, 212.

On August 17, 2022, Freeman brought this action asserting claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., Dkt. 1, Compl. ¶¶ 151–58; fraud, *id*. ¶¶ 159–68; breach of fiduciary duty, *id*. ¶¶ 169–79; unfair competition, *id*. ¶¶ 180–86; idea misappropriation, *id*. ¶¶ 187–94; tortious interference, *id*. ¶¶ 195–204; unjust enrichment, *id*. ¶¶ 205–14; conversion, *id*. ¶¶ 215–25; and an accounting of financial damage, *id*. ¶¶ 226–41. After the parties conferred and agreed to a schedule for amendment, Freeman filed the operative Amended Complaint on January 4, 2023, *see* Dkt. 27, eliminating his cause of action for trade secret misappropriation and asserting an additional cause of action for fraud against Defendant Slicemedia, *see* Compl. ¶¶ 222–316. Defendants moved to dismiss on February 9, 2023, *see* Dkt. 31, correctinga their memorandum of law in support of that motion on February 15, 2023, *see* Dkt. 42. The motion was fully briefed as of April 13, 2023. *See* Dkt. 51.

## LEGAL STANDARD

Federal courts have leeway to "choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Where, as here, a party challenges both subject matter and personal jurisdiction, the Court must be assured that neither presents grounds for dismissal before proceeding to the merits. *Id*.; *see also Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998). In most cases, "expedition and sensitivity to state courts' coequal stature" will lead courts to analyze subject matter jurisdiction

first. *Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 585 (1999).

Were the Court to proceed to the merits of the motion to dismiss under Rule 12(b)(6), the "[C]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The Court accepts as true all factual allegations and draws all reasonable inferences in Plaintiffs' favor, *see Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), but need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

## DISCUSSION

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). For the reasons set forth below, because Freeman has failed to establish complete diversity between the parties, the Court concludes that it does not have subject matter jurisdiction over this action and therefore cannot adjudicate Freeman's claims.[1]

Because Freeman is unable to establish complete diversity between the parties, the Court lacks subject matter jurisdiction. For diversity jurisdiction to exist, there must be "complete

---

[1] "Having found that this Court lacks subject matter jurisdiction, [it] need not reach the merits of [D]efendants' argument[s]" that personal jurisdiction over several Defendants is lacking, or that Freeman has failed to plead facts stating a claim for which relief can be granted. *Ahmed v. Meissner*, 896 F. Supp. 138, 141 n.6 (S.D.N.Y. 1995).

diversity" of citizenship between the plaintiff and the defendants, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014). "[D]iversity is not complete if any plaintiff is a citizen of the same state as any defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). "For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

As a threshold matter, the Complaint does not even allege the citizenship of each of the Defendants, and thus cannot meet Freeman's burden of establishing that diversity jurisdiction exists by a preponderance. For the individual Defendants, the Complaint only vaguely alleges that Tehrani and Craven are "resident[s] of Australia," and that Vučković is a "resident of Trstenik, Serbia." Am. Compl. ¶¶ 19–20; 29(a). It is well-settled, however, that "a statement of the parties' residence is insufficient to establish their citizenship." *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996); *see also John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir. 1967) (observing that a "statement of residence … tells the court only where the parties are living and not of which state they are citizens," and that such a defect may only be cured "if there is anything on the record from which actual citizenship may be determined"). The Complaint's allegations are similarly deficient for the Defendant partnership entities, including Primedice, *see* Am. Compl. ¶ 1, as "a plaintiff must allege the citizenship of each member of [a] partnership in order to adequately plead subject matter jurisdiction." *Brady v. John Goldman, Esq.*, 2016 WL 8201788, at *4 (S.D.N.Y. Dec. 6, 2016). So too, for limited liability companies, such as Defendants Medium Rare and Slicemedia here, a complaint must allege the citizenship of each of the LLC's members, *see Carter v. HealthPort Techs., LLC*, 822

F.3d 47, 60 (2d Cir. 2016), whereas the Complaint alleges only where Slicemedia and Medium Rare are "located," failing to identify their members or their citizenship, *see* Am. Compl. ¶ 29(b)–(e). Given these pleading deficiencies alone, the Court would be obliged to conclude that Freeman has failed to carry his burden to establish that subject matter jurisdiction over the action is proper. *See Morrison*, 547 F.3d at 170.

But even setting aside the Complaint's failure to adequately identify the citizenship of Defendants, its inclusion of Tehrani in the action—and any partnership of which he is allegedly a member—necessarily destroys diversity. This is so because Tehrani is a "stateless" U.S. citizen who cannot be sued on the basis of diversity jurisdiction. Specifically, he is a U.S. citizen residing in Australia, and "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state." *Force v. Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990)); *see also Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021) ("United States citizens who are domiciled abroad … are not 'citizens' of any state" and thus are "stateless."). Because "§ 1332(a) does not provide that the [federal] courts have jurisdiction over a suit to which such persons are parties," "'a suit by or against United States citizens domiciled abroad may not be premised on diversity.'" *Force*, 934 F.3d at 74–75 (quoting *Cresswell*, 922 F.2d at 68); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) ("stateless" U.S. citizens may not be parties to diversity-based suits). Tehrani's statelessness for jurisdictional purposes also extends to any partnership of which he is allegedly a member, including Primedice here, because "[f]or the purposes of diversity jurisdiction, a partnership takes the citizenship of all of its partners." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 615 (2d Cir. 2019); *see also Coudert Bros. v. Easyfind Int'l, Inc.*, 601 F. Supp. 525, 526–27 (S.D.N.Y. 1985) (finding diversity jurisdiction lacking where members of a partnership included

U.S. citizens residing abroad); *Page*, 2 F.4th at 637 ("[A] partnership made up of at least one stateless citizen is itself stateless and cannot be sued in diversity.").

In response, Freeman argues that Tehrani does not qualify as "stateless" because he is not "lawfully domiciled in Australia." Opp. at 14. But this argument—which Freeman admits is novel, and would present an "issue of first impression" if accepted, *id*.—confuses the issues and improperly invites this Court to wade into adjudicating a foreign jurisdiction's application of its own immigration law. For purposes of the subject matter jurisdictional inquiry, Tehrani's "statelessness" is simply the function of his U.S. citizenship and his not being domiciled in any U.S. state. *See Newman-Green, Inc.*, 490 U.S. at 828 ("The problem in this case is that [the defendant], although a United States Citizen, has no domicile in any state."). The test of one's domicile turns on (1) the party's physical residence and (2) intent to remain at the time a complaint is filed—nothing more, and nothing less. *See Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 53 (2d Cir. 2019). Both point here to Tehrani being domiciled in Australia: (1) the Complaint alleges Tehrani has physically resided in Australia since 2016, *see* Am. Compl. ¶ 19, and (2) the Complaint, along with Freeman's own filings, establish Tehrani's continued intent to remain there, *see, e.g.,* Am. Compl. ¶ 115 (alleging Tehrani invited Freeman to move to Australia in order to "begin a new life halfway around the world"); Freeman Aff. ¶ 41.

It therefore matters not how this Court might adjudicate the application of Australian law to the legality of Tehrani's immigration status. For one, any future immigration consequences Tehrani may or may not face in Australia cannot impact the established rule that a party's domicile is assessed as of the time that an action is commenced. *See Van Buskirk*, 955 F.3d at 53. And speculating, moreover, about how Australian officials and courts would apply their own immigration law would run afoul of basic principles of comity, by having this Court wade into questions of foreign law in an effort to determine its own jurisdiction. *Cf. United Bank Ltd v.*

8

*Cosmic Int'l Inc.*, 542 F.2d 868, 874 (2d Cir. 1976) (warning against interpretations which would "require American courts to engage in complex interpretation of foreign … law"). Because Freeman's own filings affirm that Tehrani was physically living in Australia as the Complaint was filed, and that he intends to remain there, *see* Ex. M. to Ferguson Aff., Dkt. 48-113 ¶¶ 22–24 (legal opinion letter indicating Tehrani is an "Australian tax resident"), he is "stateless" and thus cannot be sued in diversity.

In any event, even if the Complaint's inclusion of Tehrani (and, by extension, Primedice) as a Defendant did not already defeat diversity jurisdiction, diversity would nevertheless be destroyed given that Freeman alleges that he is, *himself*, a partner of Primedice. *See* Compl. ¶ 1 ("Freeman founded Primedice, a common law partnership, with two partners, Bijan Tehrani and Edward Craven"); *see also id*. ¶¶ 143, 262, 301. Because a partnership assumes the citizenship of each of its partners, *see Platinum-Montaur*, 943 F.3d at 615, the allegations here result in Primedice assuming Freeman's Florida citizenship. And "a court does not have diversity jurisdiction over a suit by a plaintiff against a partnership in which any partner's citizenship is identical to that of the plaintiff." *Murphy v. Gutfreund*, 624 F. Supp. 444, 448 (S.D.N.Y. 1985); *see also Equitable Life Assurance Soc'y v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1026 (S.D.N.Y. 1985) ("Even if a single partner is not diverse to the plaintiff, the action must be dismissed.").

While Freeman now argues that the Complaint's allegations should be interpreted to somehow disregard his plain allegation that "Primedice is a New York common law partnership," Compl, ¶ 16; *see also id*. ¶¶ 21, 254, 263, 301, 302, his briefing in opposition cannot contradict the allegations in the pleadings which this Court is bound to accept as true. *See Wright v. Ernst & Young*, 152 F.3d 169, 178 (2d Cir. 1998) (observing that a party is "not entitled to amend its complaint through statements made in motion papers") (citing *ITT v. Cornfeld*, 619 F.2d 909, 914

& n.6 (2d Cir. 1980)); *see also* Opp. 17 (Freeman now claiming "Primedice is *no longer* a simple New York partnership") (emphasis added).  Rather, the Complaint's allegations that Primedice is a partnership—and that Freeman is himself a partner—governs, and necessarily destroys diversity by placing Freeman's Florida citizenship on both sides of the action.  *See Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977) (finding that a party may not amend pleadings through statements in briefs).

For each of these reasons, any one of which is independently sufficient to grant the motion as a matter of law, Freeman has not carried his burden of establishing that diversity jurisdiction is proper.  The motion to dismiss for lack of subject matter jurisdiction is therefore granted.

Whether to grant leave to amend a complaint is committed to the "sound discretion of the district court."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint."  *Obra Pia Ltd. v. Seagrape Inv'rs LLC*, 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021).  This is especially true on the Court's first ruling on a motion to dismiss.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").  "Granting leave to amend is futile," however, "if it appears that a plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).  Although skeptical that Freeman will be able to amend his allegations to establish diversity—or, for that matter, that he will be able to show that the exercise of personal jurisdiction over several Defendants would be proper—the Court cannot conclude that any amendment would necessarily be futile.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted, albeit without prejudice. Freeman is granted leave to further amend his pleadings within thirty (30) days, provided he has a good faith basis for doing so. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 31.

SO ORDERED.

Dated:      June 26, 2023
            New York, New York

                                            _____
                                            Hon. Ronnie Abrams
                                            United States District Judge