# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER FREEMAN,

        Plaintiff,

        v.

STAKE.COM, PRIMEDICE, EDWARD
CRAVEN, BIJAN TEHRANI, SLICEMEDIA
B.V., MEDIUM RARE N.V., EASYGO
SOLUTIONS PTY LTD, MEBIT.IO, AND
MLADEN VUČKOVIĆ,

        Defendants.

Case No. 22-CV-7002 (RA)

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SANCTIONS</u>**

GAGE SPENCER & FLEMING LLP
410 Park Avenue, Suite 810
New York, New York 10022
Attorneys for Plaintiff

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

PROCEDURAL HISTORY ......................................................................................... 2

LEGAL STANDARD .................................................................................................. 4

I.    **In Seeking To Establish Diversity Jurisdiction, Plaintiff Did Not Raise Any Unsupported Factual Assertions, Frivolous Arguments, or Legal Positions With No Chance of Success.** ........... 6

    A.    Plaintiff raised well-founded arguments with precedential support to argue that Tehrani is not domiciled in Australia and is not stateless. .................................................................... 6

    B.    The unresolved factual disputes as to Tehrani's place of domicile indicate that Plaintiff's assertion of diversity jurisdiction was not unreasonable or frivolous .................... 9

    C.    The unresolved factual disputes as to whether and when Plaintiff was removed from Primedice indicate that Plaintiff's assertion of diversity jurisdiction was not unreasonable or frivolous. ........................................................................................................ 12

    D.    Defendants rely on distinguishable cases that do not support the imposition of sanctions here. ........................................................................................................ 14

II.    **Defendants Have Not Met Their Burden To Show That Plaintiff Violated Any Privilege or Otherwise Violated Rule 11 as to Privileged Information.** .............................................................. 17

III.    **Defendants Have Not Met Their Burden To Show That Any Substantive Allegations or Claims Were Frivolous.** ................................................................................................. 19

IV.    **Defendants, not Plaintiff, Have Caused the Needless Expense of Attorneys' Fees** ............ 22

    A.    Defendants have not shown fees and other expenses directly resulting from the alleged Rule 11 violation. ........................................................................................................ 22

    B.    Defendants should pay Plaintiff's fees and costs incurred in responding to this unmeritorious Motion. ........................................................................................................ 23

V.    **To the Extent the Court Is Considering Sanctions, Plaintiff Requests an Evidentiary Hearing.** ............................................................................................................ 24

CONCLUSION ........................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arcadia Biosciences, Inc. v. Vilmorin & Cie, Limagrain Cereales Ingredients SA*, No. 18-CV-8059, 2019 WL 1447138 (S.D.N.Y. Feb. 5, 2019) .................................................................. 23

*Breuninger v. Williams*, No. 20 CIV. 7033, 2023 WL 4211030 (S.D.N.Y. June 27, 2023) .... 5, 19

*Brock v. Logsdon,* No. 19-CV-6082, 2023 WL 203356 (W.D.N.Y. Jan. 17, 2023) ...................... 9

*Cameau v. Nat'l Recovery Agency, Inc.,* No. 15CV2861, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) ........................................................................................................................................ 22

*Caspian Invs., Ltd. v. Vicom Holdings, Ltd*., 770 F. Supp. 880 (S.D.N.Y. 1991) ....................... 16

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc*., No. 22 CIV. 2716, 2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023) ............................................................................ 6

*Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.,* No. 14-CV-1561, 2016 WL 3542453 (S.D.N.Y. June 23, 2016) .......................................................................................................... 17

*Eikenberry v Lamson*, 2021 NY Slip Op 30561 (Sup.Ct. Kings County, Feb. 19, 2021) ........... 13

*Fishoff v. Coty Inc*., 634 F.3d 647 (2d Cir. 2011) ......................................................................... 5

*Freidrich v. Davis*, 767 F.3d 374 (3d Cir. 2014) ......................................................................... 11

*Goldwater Bank, N.A. v. Elizarov*, No. 521CV00616, 2023 WL 3149287 (C.D. Cal. Feb. 13, 2023) .......................................................................................................................................... 12

*Henry v. U.S. Dep't of Homeland Sec*., No. 10-CV-2164, 2011 WL 477719 (E.D.N.Y. Feb. 2, 2011) .......................................................................................................................................... 14

*Hernandez v. Miller*, No. 22-CV-6964, 2022 WL 17584025 (S.D.N.Y. Dec. 12, 2022) ....... 19, 21

*Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc*., No. CV 10-4677, 2018 WL 4692353 (E.D.N.Y. Aug. 31, 2018) .......................................................................................................... 24

*In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223 (2d Cir. 1984) ........................... 18

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc*., 875 F.2d 388 (2d Cir. 1989) ........................... 16

*Jes Solar Co. Ltd. v. Tong Soo Chung*, 725 F. App'x 467 (9th Cir.), *amended on denial of reh'g*, 716 F. App'x 635 (9th Cir. 2018) .............................................................................................. 9

*Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010) .............................................................................. 4

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd*., 327 F. Supp. 3d 673 (S.D.N.Y. 2018) ............................................................................................................................................ 9

*LaVigna v. WABC Television, Inc*., 159 F.R.D. 432 (S.D.N.Y. 1995) ......................................... 15

*Lead Creation Inc. v. Partnerships & Unincorporated Associations identified on Schedule A*, No. 22CV10377, 2023 WL 2816904 (S.D.N.Y. Apr. 6, 2023) ...................................................... 17

*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44 (2d Cir. 1996).......... 11

*Lok v. I. N. S.*, 681 F.2d 107 (2d Cir. 1982)................................................................................ 7

*Morana v. Park Hotels & Resorts, Inc.*, No. 20-CV-2797, 2022 WL 769327 (S.D.N.Y. Mar. 14, 2022) ................................................................................................................................. 4, 5

*Nardoni v. City of New York*, No. 17-CIV-2695, 2019 WL 542349 (S.D.N.Y. Feb. 12, 2019), *report and recommendation adopted*, No. 17-CV-2695, 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019) .................................................................................................................................. 6

*NYC St. Tree Consortium, Inc. v. Eber-Schmid*, No. 07-CV-0348, 2009 WL 398726 (S.D.N.Y. Feb. 18, 2009) ..................................................................................................................... 10

*O'Brien v. Alexande*r, 101 F.3d 1479 (2d Cir. 1996) .................................................................. 5

*Okla. L. Enf't Ret. Sys. V. Telefonaktiebolaget LM Ericsson*, No. 18-cv-03021, 2020 WL 1228664 (S.D.N.Y. Mar. 13, 2020) ...................................................................................... 5

*Olive Grp. N. Am. LLC v. Afghanistan Int'l Bank*, No. 21-CV-10836, 2023 WL 2644350 (S.D.N.Y. Mar. 27, 2023) ................................................................................................... 6

*Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38 (2d Cir. 2000) ................................................. 10

*Pickett v. Migos Touring, Inc.*, No. 118CV09775, 2020 WL 1853202 (S.D.N.Y. Feb. 25, 2020), *report and recommendation adopted in part*, *rejected in part*, No. 18CIV9775, 2020 WL 2904864 (S.D.N.Y. June 3, 2020)........................................................................................ 22

*Rapp v. Fowler*, No. 20-CV-9586, 2022 WL 2037682 (S.D.N.Y. June 6, 2022).......................... 8

*Remcoda, LLC v. Ridge Hill Trading (Pty) Ltd.*, No. 21 CIV. 979, 2023 WL 2647854 (S.D.N.Y. Mar. 27, 2023) .................................................................................................................. 10

*Sacerdote v. Cammack Larhette Advisors, LLC*, No. 17-CV-8834, 2022 WL 2078012 (S.D.N.Y. June 8, 2022)......................................................................................................................... 6

*Source Vagabond Sys., Ltd. v. Hydrapak, Inc.*, No. 11-CV-5379, 2013 WL 634510 (S.D.N.Y. Feb. 21, 2013) ..................................................................................................................... 22

*Suedrohrbau Saudi Co. v. Bazzi*, No. 21-2307-CV, 2023 WL 1807717 (2d Cir. Feb. 8, 2023) .. 10

*Tounkara v. Republic of Senegal*, No. 21CV8027, 2022 WL 17826422 (S.D.N.Y. Mar. 29, 2023) ........................................................................................................................................... 8

*Weisman v Awnair Corp. of Am.*, 3 NY2d 444 (1957) .................................................................. 13

*Weiss v. David Benrimon Fine Art LLC*, No. 20-3842-CV, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) ............................................................................................................................................... 7

*Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44 (S.D.N.Y. 1993) ...................................................... 16

*Yousef v. Al Jazeera Media Network*, No. 16-CV-6416, 2018 WL 6332904 (S.D.N.Y. Oct. 31, 2018) ............................................................................................................................................... 20

**Statutes**

Fed. R. Civ. P. 11(c)(2) ................................................................................................................. 23

Plaintiff Christopher Freeman ("Plaintiff" or "Freeman") respectfully submits this memorandum of law in opposition to the motion for sanctions submitted by Defendants Stake.com ("Stake" or "Stake.com"), Primedice, Edward Craven, Bijan Tehrani, Slicemedia B.V., Medium Rare N.V., Easygo Solutions Pty Ltd, MeBit.io, and Mladen Vuckovic (collectively "Defendants"). For the reasons that follow, Defendants' motion should be denied.

## INTRODUCTION

On June 26, 2023, the Court granted Defendants' Rule 12(b)(1) motion, holding that the Court lacked subject matter jurisdiction over Plaintiff's Amended Complaint. Declining to find that an amendment would be futile, the Court granted the motion without prejudice to Plaintiff filing an amended complaint.

Despite possessing the factual and legal support necessary to amend and address the infirmities identified by the Court, Plaintiff elected to eliminate the issue of subject matter jurisdiction by bringing his otherwise meritorious claims in state court. In response, Defendants angrily vowed to start "doing some litigating of [their] own[.]" Hours later, Defendants filed the instant Motion for Sanctions (the "Motion") under Rule 11.[1]

This Motion is legally and factually erroneous. Defendants prevailed on a Rule 12(b)(1) motion but have not shown—and cannot show—that Plaintiff violated any aspect of Rule 11(b). Framed as if the Court decided on the merits and deemed Plaintiffs' claims to be frivolous, Defendants ignore that the dismissal did not resolve any substantive issues or causes of action. The Court focused solely on two jurisdictional components: (a) Tehrani's place of domicile; and (b)

---

[1] Notably, Defendants' motion to dismiss did not raise any issue about baseless or frivolous arguments.

whether Plaintiff was or was not still a partner of a New York partnership (Primedice) on the date of the Amended Complaint. Neither component involved frivolous allegations or arguments.

Indeed, in granting leave to amend, the Court explicitly declined to find that "any amendment would necessarily be futile." *See* Opinion & Order ("MTD Order"), ECF No. 52 at 10. That ruling under Rule 12(b)(1), with leave to amend, does not indicate that the Amended Complaint has no chance of success or was otherwise frivolous.

Consequently, Defendants have failed to demonstrate the extraordinary circumstances that justify sanctions under Rule 11. Plaintiffs' claims and allegations, even though unsuccessful, were well-founded, reasonable, and made in good faith. By contrast, Defendants' Motion was filed for a retaliatory purpose and without the possibility of obtaining meaningful relief. The Motion should be denied, and the Court should award Plaintiff reasonable attorneys' fees incurred in defending Defendants' unreasonable filing. *See* Fed. R. Civ. Pro. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.").

## PROCEDURAL HISTORY

On August 17, 2022, Plaintiff filed his Complaint in this Court. *See* ECF No. 1. Defendants argued it was infirm because it named Stake.com as a defendant even though, they claimed, Stake.com was not a "jural entity." *See* Affirmation of William B. Fleming, filed concurrently herewith ("Fleming Aff."), ¶ 3. At the Initial Pretrial Conference held on December 2, 2022, the parties addressed this issue, and a planned amendment to address it, with the Court. Fleming Aff., ¶ 4. During that conference, and in discussions leading up to it, Defendants did not complain about the points now raised in their Motion—including their assertion that subject matter jurisdiction could not be established because defendant Tehrani was "stateless." *Id.*; *see also*

Declaration of David McGill ("McGill Decl."), ECF No. 54, Ex. C at 1-2 (referencing Tehrani's 2021 threat to avail himself of the federal court in New York).

On January 4, 2023, Plaintiff filed a First Amended Complaint ("Complaint") which, addressing Defendants' concerns, added allegations clarifying the corporate structure undergirding Stake.com. *See* ECF No. 27; Fleming Aff., ¶ 5. On February 9, 2023, Defendants filed a motion to dismiss the Complaint. *See* ECF No. 32. On March 23, 2023, Plaintiff filed its opposition to the motion, and on April 13, 2023, Defendants filed their reply papers. *See* ECF Nos. 45, 51. Neither of Defendants' submissions included any expressions that Plaintiff's Complaint was sanctionable on any ground. Fleming Aff., ¶¶ 6-7.

On April 21, 2023—*after* Defendants' motion to dismiss was fully briefed and *sub judice*—Defendants sent a letter stating that, unless Plaintiff withdrew the Complaint, Defendants reserved the right to file a motion, pursuant to Rule 11, for "sanctions up to and including payment of [Defendants'] reasonable attorneys' fees and other expenses made necessary by the assertion of frivolous legal claims and unsupported factual allegations." *See* Fleming Aff., ¶ 8; McGill Decl., Ex. A at 1 (the "Rule 11 Letter").[2] Defendants sent their Rule 11 Letter after they had already incurred all fees and expenses on their motion to dismiss. On May 9, 2023, Plaintiff responded to the Rule 11 Letter (*see* McGill Decl., Ex. C), after which Defendants made no further effort to pursue the issue until after the Court's decision on the motion, and after Plaintiff filed his complaint in New York state court.

On June 26, 2023, the Court granted Defendants' motion to dismiss the complaint without prejudice. *See* MTD Order, ECF No. 52. On the evening of July 6, 2023, within the 30-day deadline imposed by the Court—and in deference to the Court's expressed concerns about its

---

[2]      On the same day, lawyers at Orrick sent another letter threatening to file a related claim against Plaintiff in Florida. *See* Fleming Aff., ¶ 10.

subject matter jurisdiction—Plaintiff filed his action in New York state court. Contrary to Defendants' accusation (*see* Defendants' Memorandum of Law in Support of Motion ("Defs.'' Mem."), ECF No. 55 at 1), Plaintiff's counsel notified Defendants in person by telephone of the state court filing the next day, on Friday, July 7. *See* Fleming Aff., ¶ 20. The following Monday, in a further phone conversation, Defendants' counsel declared, in words or substance, that Defendants would now be "do[ing] some litigating of [their] own." *Id.* at ¶ 21. Hours later, Defendants filed the instant motion. *Id.* at ¶ 22.

## LEGAL STANDARD

"As relevant here, Rule 11(b) requires that '[b]y presenting to the court a pleading,' an attorney 'certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,' 'the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and 'the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Morana v. Park Hotels & Resorts, Inc.*, No. 20-CV-2797, 2022 WL 769327, at *11 (S.D.N.Y. Mar. 14, 2022) (quoting Fed. R. Civ. P. 11(b)).[3]

"Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Id.* at 81.

---

[3]     Unless otherwise noted, emphasis has been added, and internal quotations and citations have been cleaned up or omitted.

Moreover, "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011); *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) ("[S]anctions may not be imposed unless a particular allegation is utterly lacking in support"). Additionally, "[t]he standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." *Morana*, 2022 WL 769327, at *11.

Therefore, the fact that a "Plaintiff's claims failed to pass the motion-to-dismiss threshold does not mean that they clearly had no chance of success and that there was no reasonable argument to extend the law as it stood at the time of filing." *Okla. L. Enf't Ret. Sys. V. Telefonaktiebolaget LM Ericsson*, No. 18-cv-03021, 2020 WL 1228664, at *1 (S.D.N.Y. Mar. 13, 2020) ("Although the Court concluded that the SAC failed adequately to plead the elements of falsity and scienter . . . Plaintiffs and their [counsel] asserted claims and legal contentions warranted by existing law."). Furthermore, "even if the Court finds that a party moving under Rule 11 has met this high bar, the decision whether or not to impose sanctions is a matter for the court's discretion." *See Breuninger v. Williams*, No. 20 CIV. 7033, 2023 WL 4211030, at *4 (S.D.N.Y. June 27, 2023).

Ultimately, "the decision to impose sanctions should be made with restraint . . . and a court must resolve all doubts in favor of the signer of the pleading." *Morana*, 2022 WL 769327, at *11; *see also Okla. L. Enf't Ret. Sys*, No. 18-CV-03021, at *1 ("The Second Circuit has stressed that any and all doubts must be resolved in favor of the signer."). Simply put, "courts may issue Rule 11 sanctions only in extraordinary circumstances[.]" *Morana*, 2022 WL 769327, at *11.

## ARGUMENT

Defendants raise three arguments in support of sanctions: (i) Plaintiff's claim that the Court had subject matter jurisdiction was frivolous and false under Rule 11(b)(2) and (3); (ii) Plaintiff improperly disclosed privileged information for an improper purpose under Rule 11(b)(1); and (iii) Plaintiff's substantive allegations and claims were frivolous and sanctionable. For the following reasons, Defendants have not met their burden under Rule 11, and sanctions are unwarranted.[4]

I.     **In Seeking To Establish Diversity Jurisdiction, Plaintiff Did Not Raise Any Unsupported Factual Assertions, Frivolous Arguments, or Legal Positions With No Chance of Success.**

Defendants claim that it was frivolous for Plaintiff to argue that there is diversity jurisdiction for this action. Defendants are wrong. Although Plaintiff did not prevail, his allegations were well-founded, and his arguments had precedential support, were objectively reasonable, and had a chance of success.

A.     Plaintiff raised well-founded arguments with precedential support to argue that Tehrani is not domiciled in Australia and is not stateless.

---

[4]     As a threshold matter, Defendants' Motion is procedurally defective. The notice requirement under Rule 11 "is not satisfied with [a]n informal warning in the form a letter without service of a separate Rule 11 motion." *Sacerdote v. Cammack Larhette Advisors, LLC*, No. 17-CV-8834, 2022 WL 2078012, at *6 (S.D.N.Y. June 8, 2022) (collecting cases). Indeed, "[t]his procedural requirement is strict, and an informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient." *Olive Grp. N. Am. LLC v. Afghanistan Int'l Bank*, No. 21-CV-10836, 2023 WL 2644350, at *5 (S.D.N.Y. Mar. 27, 2023). Nonetheless, a party can "meet the procedural requirements of the safe harbor provision of Rule 11(c)(2) even if it does not serve at that time supporting affidavits or a memorandum of law," as they "need only to serve [a] notice of motion" with the letter. *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, No. 22 CIV. 2716, 2023 WL 2346337, at *4 (S.D.N.Y. Mar. 3, 2023). However, some courts have indicated that the notice of motion itself should describe the basis for the motion. *See Nardoni v. City of New York*, No. 17-CIV-2695, 2019 WL 542349, at *5 (S.D.N.Y. Feb. 12, 2019), *report and recommendation adopted*, No. 17-CV-2695, 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019) ("In this case, the notice of motion was devoid of any description of the offending conduct."). Here, Defendants' notice of motion was devoid of the grounds for sanctions. *See* McGill Aff., Ex. A. Indeed, the Motion, Memorandum and affidavits are still "devoid of description" on important elements of the motion. *See, e.g.,* Defs.' Mem., ECF No. 55 at 17 (failing to specify any supposed privileged information or to articulate how the use of information, if privileged, supports Rule 11 sanctions).

Defendants assert that it was frivolous for Plaintiff to argue that the legality of Tehrani's presence in Australia was relevant to whether Tehrani was domiciled there. *See* Defs.' Mem., ECF No. 55 at 9-11. That argument fails. "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, *it must be clear* under existing precedents that there is *no chance of success and no reasonable argument to extend . . . the law as it stands.*" *Weiss v. David Benrimon Fine Art LLC*, No. 20-3842-CV, 2021 WL 6128437, at *2 (2d Cir. Dec. 28, 2021) (noting that even an out-of-jurisdiction opinion can sufficiently support a good faith argument to extend existing law).

For <u>three</u> primary reasons, Plaintiff's argument that the legality of Tehrani's domicile in Australia was relevant to this Court's domicile analysis was made in good faith, was rooted in an extension of precedent, and had a chance of success. <u>First</u>, Plaintiff cited a Second Circuit opinion that acknowledged a distinction between a "lawful" and unlawful domicile:

> Tim Lok established domicile in the United States only when he established an intent to remain. Lok established lawful domicile only when his intent to remain was legal under the immigration laws. . . . As a seaman who had overstayed his 29 days, Lok was in the United States illegally. He could not establish lawful domicile.

*Lok v. I. N. S.*, 681 F.2d 107, 109 (2d Cir. 1982). Relying on that precedent, Plaintiff sought to extend that concept. If "lawful domicile" requires an intent to remain that is legal under the applicable immigration laws, then it could follow that the "intent" inquiry for domicile can encompass the legality of one's presence abroad. Given that reasonable (albeit unsuccessful) conclusion, rooted in Second Circuit precedent, Plaintiff's argument had more than a zero percent chance of a success. *See Weiss*, 2021 WL 6128437, at *2 (requiring "no chance of success" and no reasonable argument to extend the law).

<u>Second</u>, Plaintiff openly informed the Court that the argument was novel, stating:

Possibly an issue of first impression, as we have not found cases addressing the precise issue, it remains true as a matter of logic and coherence that, if not lawfully domiciled in Australia, Tehrani cannot be said to be a "stateless" American citizen who is "domiciled abroad."

Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Ptf's MTD Opp."), ECF No. 45 at 24. That straightforward acknowledgment evinces good faith advocacy of a unique argument, not frivolousness. *See Tounkara v. Republic of Senegal*, No. 21CV8027, 2022 WL 17826422, at *13 (S.D.N.Y. Mar. 29, 2023) (noting that "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable" and holding that "[w]hile the Court has determined there is no basis for [plaintiff]'s claims in federal court, the claims asserted and arguments raised do not strike the Court as having been advanced in bad faith or otherwise justifying sanctions").

<u>Finally</u>, there is some additional precedent showing that Plaintiff's argument was not objectively unreasonable. In *Rapp v. Fowler*, the court acknowledged that the legality of one's residence abroad can be relevant to whether that person is "domiciled" abroad as assessed for diversity jurisdiction under U.S. law:

[A]s a substantive matter, any assertion that Mr. Fowler ever has been a domiciliary of the UK would be undercut substantially by the lack of any evidence indicating that Mr. Fowler ever received – or even sought – permission to reside in the UK for more than a temporary period.

*Rapp v. Fowler*, No. 20-CV-9586, 2022 WL 2037682, at *3 (S.D.N.Y. June 6, 2022). Similarly, the Ninth Circuit has considered a party's foreign immigration status, under foreign law, as one relevant factor in determination whether that party was domiciled in Maryland or South Korea:

If a party establishes domicile outside of the United States, he becomes a "stateless" citizen, destroying diversity jurisdiction under 28 U.S.C. § 1332. The analysis of domicile is essentially factual, so we review under a clearly erroneous standard. The district court properly weighed the factors enumerated in *Lew v. Moss*, 797 F.2d at 750, and did not clearly err in finding Chung to be domiciled in Maryland. The district court rightfully found compelling that Chung had acquired an F–4 non-

immigrant visa when he returned to South Korea rather than an F-5 visa for permanent residency. There was no error in finding not credible Chung's testimony that he intended to remain in Korea, gave no thought to the distinctions between an F-4 and F-5 visa, and could not recall either giving a sworn affidavit in 2002 that he intended to maintain his Maryland home as his primary residence or his political activities in the United States. The district court did not disregard uncontested testimony, as Chung asserts, but rather assessed credibility in weighing competing pieces of evidence, e.g., Chung's assertion that he intended to remain in Korea indefinitely versus his failure to apply for a permanent residence visa.

*Jes Solar Co. Ltd. v. Tong Soo Chung*, 725 F. App'x 467, 469 (9th Cir.), *amended on denial of reh'g*, 716 F. App'x 635 (9th Cir. 2018). This additional precedent shows that it is objectively reasonable to argue that the legality of a party's presence abroad can be relevant to whether that person has the intent to remain abroad indefinitely.

In sum, Plaintiff argued for the extension of Second Circuit precedent, highlighted for the Court that the argument was unique, and asserted a position that has some additional precedential support. Thus, Plaintiff's argument cannot fairly be characterized as a Rule 11 violation. *See, e.g., Brock v. Logsdon,* No. 19-CV-6082, 2023 WL 203356, at *3 (W.D.N.Y. Jan. 17, 2023) (noting that "[t]he standard for imposing Rule 11 sanctions . . . is purposefully high, so as not to stifle legal creativity and zealous advocacy" and holding that "Rule 11 is reserved for extreme cases of misconduct"); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 689 (S.D.N.Y. 2018) ("[O]n the whole, [plaintiff] advanced colorable arguments . . . . That they were ultimately unsuccessful does not render them objectively unreasonable or clearly frivolous.").

B. The unresolved factual disputes as to Tehrani's place of domicile indicate that Plaintiff's assertion of diversity jurisdiction was not unreasonable or frivolous.

The Court's ruling on "statelessness" impliedly determined that the legal presumption that Tehrani's domicile was the place of his birth had been rebutted. "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient

evidence of a change." *Suedrohrbau Saudi Co. v. Bazzi*, No. 21-2307-CV, 2023 WL 1807717, at *2 (2d Cir. Feb. 8, 2023) (summary order) ("Questions as to a person's intent to change, or not to change, his domicile from one state to another are factual questions."); *see also NYC St. Tree Consortium, Inc. v. Eber-Schmid*, No. 07-CV-0348, 2009 WL 398726, at *3 (S.D.N.Y. Feb. 18, 2009) ("Courts presume that a long-term domicile in a particular jurisdiction will continue, absent sufficient evidence of change"). Rebutting that presumption of U.S. domicile is Tehrani's burden. *See Suedrohrbau Saudi Co.*, 2023 WL 1807717, at *2 ("The party alleging that there has been a change of domicile bears the burden of proof by clear and convincing evidence."); *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("A party alleging that there has been a change of domicile has the burden of proving the required intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality, and must prove those facts by clear and convincing evidence."); *see also Remcoda, LLC v. Ridge Hill Trading (Pty) Ltd.*, No. 21 CIV. 979, 2023 WL 2647854, at *8 (S.D.N.Y. Mar. 27, 2023) ("To effect a change of domicile, two things are indispensable: First, residence in a new domicile; and second, the intention to remain there.").

Plaintiff's position that Tehrani had never established a change in his legal domicile was not frivolous for three reasons. First, as discussed above, Tehrani could not possess the requisite intent to change his domicile to a place where he was not lawfully permitted to be. *See* Ptf's MTD Opp., ECF No. 45 at 12-15. The Court's determination that this question implicated "principles of comity" should not be a basis to determine that the argument was frivolous. *See* MTD Order, ECF No. 52 at 8.

Second, Tehrani's own submissions on his motion to dismiss did not try to carry his burden of rebutting the presumption. Rather, Tehrani's submissions provided evidence of his

"residence" while remaining silent on the questions of "domicile" and whether he intended permanently to reside in Australia without eventually returning to his permanent residence in Connecticut. *See* Declaration of Bijan Tehrani ("Tehrani Decl."), ECF No. 34. In his declaration, Tehrani never mentioned his domicile, citizenship, or intent to remain:

> I am a United States citizen residing in Australia. I moved to New York in the summer of 2015 but remained a Connecticut **resident** through that year. In 2016, I was a **resident** of New York until I moved to Australia in August 2016.

*Id.* at ¶ 2 (emphasis added).[5] The same was true of Defendants' memorandum in support of their motion to dismiss. *See* ECF No. 42 at 23 ("Because Tehrani is a U.S. citizen **residing** in Australia, he is 'stateless,' and this Court cannot exercise diversity jurisdiction over any suit to which he is a party.") (emphasis added).[6]

Third, to the extent that Plaintiff failed to allege sufficient facts to establish subject matter jurisdiction, that failure is not the same as having a frivolous position on the intensely fact-dependent questions of Tehrani's place of domicile and "statelessness." Such questions frequently turn on information in a defendant's control such as records concerning driver's licenses, taxes, voting, and personal travel. In fact, Defendants successfully opposed Plaintiff's request for jurisdictional discovery of precisely such issues. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plf's Opp."), ECF No. 45 at 24; *see, e.g., Freidrich v. Davis*, 767 F.3d 374, 375-76 (3d Cir. 2014) (ordering jurisdictional discovery and an evidentiary hearing on the issue of foreign domicile); *cf. Goldwater Bank, N.A. v. Elizarov*, No. 521CV00616, 2023

---

[5] Notably, Defendants' Rule 7.1 Statement also ignored "domicile" and instead stated that "Bijan Tehrani is a citizen of the United States residing in Australia." *See* ECF No. 24.

[6] Defendants even acknowledged this inadequacy, noting in their memorandum that "'a statement of the parties' residence is insufficient to establish their citizenship.'" *Id.* at 22 (quoting *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 47 (2d Cir. 1996)).

WL 3149287, at *4 (C.D. Cal. Feb. 13, 2023) ("Further discovery may reveal additional facts that contradict Plaintiffs' claims, but the Court declines to impose the extraordinary remedy of Rule 11 sanctions based on what is essentially a factual dispute.").

Thus, a finding of frivolousness—on potentially unresolved factual questions of whether Tehrani's foreign domicile is legal or permanent—is unwarranted. Plaintiff raised good faith, well-founded allegations and arguments for diversity jurisdiction and was granted leave to re-plead a basis for subject matter jurisdiction. If he had chosen to re-plead, instead of proceeding in state court, Plaintiff could have raised the issue of Tehrani's presumptive domicile in Connecticut and Tehrani's burden to rebut that U.S. domicile with evidence. Plaintiff does not wish to now litigate those issues, but the open factual and legal issues as to domicile reflect that there are valid, reasonable arguments that negate a finding of frivolousness as to Plaintiff's assertion of subject matter jurisdiction.

C. The unresolved factual disputes as to whether and when Plaintiff was removed from Primedice indicate that Plaintiff's assertion of diversity jurisdiction was not unreasonable or frivolous.

The Court held that diversity jurisdiction was also defeated because Plaintiff was asserting claims against a partnership in which he was a partner. *See* ECF No. 52 at 9-11. However, if Plaintiff had elected to file an amended complaint, Plaintiff could have amplified his pre-existing allegations and arguments to demonstrate that Plaintiff had co-founded Primedice but, prior to the filing of the Amended Complaint, had been wrongfully deprived of his role and interests as a partner. For example, in the Amended Complaint, Plaintiff alleged that, *inter alia*:

- He co-founded Primedice in 2013 (Complaint, ECF No. 27, ¶¶ 1-2);
- "Tehrani and Craven have acted to freeze out Freeman from the partnership entirely" (*id*. at ¶ 14);
- Defendants "conver[ted] . . . Freeman's equity interest in Primedice" (*id*. at ¶ 17);

- "As a result of Defendants' conversion of Freeman's equity interest in Primedice and its successor entities, Freeman has been damaged in an amount to be determined at trial, plus attorney fees, court costs, and collection costs (*id*. at ¶ 291).

Those collective allegations reflect a reasonable theory that Plaintiff has been wrongfully deprived of his partnership interest such that, at the time of filing, he had been rendered by Defendants no longer a partner of Primedice.

Moreover, a subsequent amendment could have made clearer that a sale, merger, or acquisition of a partnership by a corporation destroys the underlying partnership and its partners' interests by converting it into a corporation. *See Eikenberry v Lamson*, 2021 NY Slip Op 30561 (Sup.Ct. Kings County, Feb. 19, 2021) ("It is well settled in New York that a partnership or joint venture may not operate through a corporate form and that any fiduciary obligations that the 'partners' owe one another cease to exist once they agree to conduct business as a corporation" (citing *Weisman v Awnair Corp. of Am*., 3 NY2d 444 (1957)). Despite Plaintiff's lack of knowledge or consent to any such transfer, Primedice was acquired by corporations in which Defendants Tehrani and Craven have no interest—first, by Medium Rare, a Curacao corporation, and then, by Slicemedia, another Curacao corporation, both of which were wholly-owned by Defendant Vukovic. *See* ECF No. 36, ¶¶ 1, 3; *see also* 26 U.S.C. § 708 (stating a partnership "shall be considered terminated" where no part of a partnership's business is carried on by any of its partners). Further, such a transaction for any partnership in the U.S. was a taxable event, carrying requirements to provide tax-related notifications to the partners, including Plaintiff. None of these legal requirements were observed. With the partnership destroyed and Plaintiff having been ousted from his interests, it was not frivolous to assert diversity jurisdiction against his former partnership.

Further, Plaintiff's allegations that he, Tehrani, and Craven presently "are partners in Primedice" (*see* Complaint, ECF No. 27, ¶¶ 301-308) and that Primedice "is" a partnership (*id*.,

¶ 21), are not substantively inconsistent with the allegations that Plaintiff has been wrongfully deprived of, or no longer possesses, his partnership interest. Those assertions were clearly intended to convey the reality that the partners owed each other duties as partners. Obviously, the Complaint asserted numerous factual allegations making it abundantly clear that the partnership was not continuing since it had been destroyed by Defendants' conduct, including acts taken to transfer the partnership to a Curacaoan corporate entity over which none of the partners has any ownership interest but which is exclusively controlled by a third party. *See* Fleming Aff., ¶ 28 (citing ECF No. 27, ¶¶ 129, 136, 142, 310-14; ECF No. 36, ¶ 3; ECF No. 32 at 7; ECF No. 30 at 2); *see also id.*, ¶¶ 10-11 (describing additional transfers that were inconsistent with Plaintiff's previous partnership rights in Primedice). Defendants' alleged conduct violated their obligations as Plaintiff's partners and deprived Plaintiff of his partnership interest in Primedice. *Id*.

In any event, it was permissible for Plaintiff to plead in the alternative. *See, e.g., Henry v. U.S. Dep't of Homeland Sec.*, No. 10-CV-2164, 2011 WL 477719, at *7 (E.D.N.Y. Feb. 2, 2011) ("Federal Rule of Civil Procedure 8(d)(2) specifically permits a party to plead inconsistent positions in the alternative, even in the same action. Moreover, this rule also allows a plaintiff to plead alternative factual positions, even if certain facts are inconsistent with the plaintiff's own personal recollection, as long as there is a good faith basis for such alternative allegations."). For these reasons, Defendants' eagerness to characterize the complicated allegations concerning Defendants' perfidious conduct as "false" and worthy of sanctions is misplaced.

D. Defendants rely on distinguishable cases that do not support the imposition of sanctions here.

In support of sanctions, Defendants rely primarily on <u>four</u> opinions that are over twenty-five years old. None supports sanctions here.

<u>First</u>, in *LaVigna*, the court found a Rule 11 violation where the plaintiff invoked Title VII and the FLSA without any colorable arguments or allegations. *LaVigna v. WABC Television, Inc*., 159 F.R.D. 432, 435 (S.D.N.Y. 1995). Specifically, the plaintiff invoked Title VII's anti-retaliation provision without a "hint of an underlying Title VII claim—not even a bare allegation of impermissible discrimination based on race, color, nation origin, religion, or sex" and invoked the FLSA without any allegations on the necessary topics of "minimum wages, maximum hours, and child labor practices." *Id.* The court further concluded that "[b]ecause plaintiff's Title VII and FLSA claims are wholly frivolous, plaintiff's attorney may also be sanctioned for improperly invoking the court's subject matter jurisdiction." *Id.*

That holding is plainly inapposite. Here, Plaintiff has not failed to address the basic elements or subject matter of any cause of action. The subject matter jurisdiction dispute, moreover, concerned fact-specific questions as to domicile and statelessness, and Plaintiff rooted his position in existing precedent and good faith arguments.

<u>Second</u>, in *International Shipping*, the plaintiff raised an unsupportable argument— in patent contradiction to binding precedent—that it is "irrelevant" to a diversity inquiry whether there are aliens on both sides of the case:

> In view of these precedents we are forced to conclude that a reasonable inquiry into the current law would have precluded the argument counsel made at the hearing on June 30—that "[w]hether or not you have aliens on both sides [of a litigation is] irrelevant once their principal places of business are here in New York."
> \*        \*        \*
> In addition, we search in vain for any principled argument advanced by counsel to reverse or modify our holding in *Venezolana*. Instead, he insists that what was decided in that case was not, in fact, decided at all. Yet in *Venezolana* we concluded beyond cavil that, in this circuit, a corporation organized under the laws of a foreign nation remains an alien corporation under § 1332, even if its principal place of business is in one of the States.

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989). Plaintiff here has not ignored binding precedent or made specious assertions of the law. As explained, *supra*, Plaintiff raised reasonable, principled allegations and arguments that were rooted in an interpretation and/or extension of precedent. Although the arguments did not prevail and the remaining factual disputes will not be adjudicated, the record reflects good faith advocacy, not frivolousness.

Third, in *Caspian*, the plaintiff ignored that there were two alien corporations on each side of the case and then "concede[d] that it had improperly invoked the court's subject matter jurisdiction in its original complaint, and that it became aware of this error only after reading Vicom's motion to dismiss." *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 886 (S.D.N.Y. 1991). Here, by contrast, Plaintiff did not ignore the verifiable and indisputable place of incorporation of a party. Rather, the diversity jurisdiction questions arose from fact-specific determinations as to where Tehrani intends, or is permitted by the Australian government, to remain indefinitely and whether and when Plaintiff was removed as a partner from Primedice. There is no conclusive indisputable factual source resolving those questions, and Plaintiff raised colorable, good faith arguments that Tehrani is not stateless and that, at the time of filing, Plaintiff had lost (albeit improperly) his partnership status even though Primedice should be a partnership including Plaintiff.

Finally, in *Wood*, the plaintiff sought less than $30,000 in damages yet sought to invoke diversity jurisdiction subject to a $50,000 amount-in-controversy requirement. *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 51 (S.D.N.Y. 1993). In other words, the plaintiff had exclusive control of the relevant facts (*e.g.*, his claimed damages), and he asserted diversity jurisdiction based on a purely objective threshold that could never be met with those unambiguous facts.

The foregoing circumstances differ from the more complicated and still unresolved factual questions underlying the Court's diversity jurisdiction. Defendants cannot rely on distinguishable or inapposite holdings, with disparate facts, to support sanctions here. Neither Tehrani's citizenship nor Plaintiff's partnership status in Primedice has been conclusively established, and Plaintiff raised good faith, colorable, and reasonable allegations and arguments as to both issues.

## II.     Defendants Have Not Met Their Burden To Show That Plaintiff Violated Any Privilege or Otherwise Violated Rule 11 as to Privileged Information.

Defendants contend that "Plaintiff sought to secure a litigation advantage by knowingly disclosing privileged information and legal advice allegedly provided to Primedice, in violation of its right to preserve its attorney-client privilege." Defs' Mem., ECF No. 55 at 13. For three primary reasons, this assertion is specious.

First, Defendants have neither acknowledged nor met their burden to establish the attorney-client privilege as to any particular document or piece of information. "Under federal common law, [t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Lead Creation Inc. v. Partnerships & Unincorporated Associations identified on Schedule A*, No. 22CV10377, 2023 WL 2816904, at *3 (S.D.N.Y. Apr. 6, 2023).[7] Critically, "[t]he party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements." *Id.* "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the

---

[7]     As an additional deficiency, Defendants have not even specified whether they are applying federal common law, New York law, or another state's law to the putative privilege analysis. *See Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.,* No. 14-CV-1561, 2016 WL 3542453, at *1 (S.D.N.Y. June 23, 2016) ("[I]n a diversity case, the issue of privilege is to be governed by the substantive law of the forum state, here, New York").

privileged relationship, . . . a burden not discharged by mere conclusory or ipse dixit assertions."
*In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984).

Despite bearing the burden of establishing that these are the type of extraordinary circumstances warranting sanctions, Defendants ignore the basic privilege analysis. They claim that "legal advice" was knowingly disclosed, but do not (and cannot) identify any advice disclosed. *See* Defs.' Mem., ECF No. 55 at 13 (citing to ECF No. 45 at 2, 8, and 15-16, and ECF No. 47, ¶¶ 14 *et seq.*). Similarly, they claim an "improper purpose" under Rule 11(b)(1), but do not attempt to satisfy their burden to prove specific information was privileged. Their privilege assertion is hollow and conclusory.

Second, even if privileged information was disclosed (it was not), Defendants have not sufficiently rebutted the evidence the privilege was waived. Defendants contend that Plaintiff included no facts supporting the waiver of privilege even though unrefuted affidavit evidence established that the Primedice partners discussed legal advice received with their common circle of friends. *See* Affidavit of Christopher Freeman, ECF No. 47, ¶¶ 11-12. Additionally, with news reporters from the Financial Times, Defendants themselves have also acknowledged working with attorney Friedberg and discussed the work they did based on his advice. *See* Fleming Aff., ¶ 18.[8]

Finally, Defendants have failed to articulate how or why Rule 11 applies to an issue of attorney-client privilege.[9] The fact of engagement of the different lawyers bears on Plaintiff's

---

[8]     Of course, if a partner, Plaintiff had the authority to waive any privilege by publicizing it in a filed complaint. *See, e.g., EEOC v. Episcopal Diocese of Long Island*, No. CV06-5302, 2009 WL 10702666, at *6 (E.D.N.Y. Dec. 7, 2009) ("It is well established that the attorney client privilege is not absolute and may be waived by the voluntary disclosure of a privileged communication to a third party, especially a litigation adversary."). Conversely, if not a partner to the Stake.com venture as Defendants' claim, then Plaintiff's possession of the purportedly privileged information concerning legal advice given to it would itself be a waiver.

[9]     Defendants rely on two inapposite cases. First, *Midamines SPRL Ltd. v. KBC Bank N.V.*, 719 F. App'x 41, 42 (2d Cir. 2017), is an unpublished summary order concerning the reasonableness of attorneys' fees as a sanction for plaintiffs' frivolous motion to disqualify bank's counsel. Second, *Bernard v. Galen Group, Inc.*, 901 F. Supp. 778 (S.D.N.Y. 1995) involves the imposition of sanctions against a lawyer for disclosures of settlement offers

implementation of measures to achieve legal compliance, an effort which further caused his ouster from the partnership by Defendants. It is thus pertinent to Defendants' improper motivation in this case, not to an "improper purpose" of Plaintiff as stated.

In sum, Defendants have not met their burden of establishing that privileged information has even been disclosed and, likewise, have failed to establish the improper purpose on which their motion depends. Defendants' argument is baseless, and sanctions are unwarranted.

### III. Defendants Have Not Met Their Burden To Show That Any Substantive Allegations or Claims Were Frivolous.

Defendants seek sanctions for Plaintiff's idea misappropriation allegations. Motion at 16-17. That assertion is factually and procedurally baseless.

"[W]hile sanctions under Rule 11 may be warranted for unsupportable legal arguments, courts frequently deny them as premature when the motion would force a court to prejudge the merits of a party's legal arguments." *Hernandez v. Miller*, No. 22-CV-6964, 2022 WL 17584025, at *1 (S.D.N.Y. Dec. 12, 2022). "Indeed, even when a court is faced with a frivolous action, it should consider dismissal through dispositive motions such as summary judgment as a first option and only resort to the imposition of sanctions as a choice of last resort." *Id*. "A motion for sanctions cannot serve as an end-run around the fact finder's exclusive role to resolve factual disputes." *Breuninger*, 2023 WL 4211030, at *8.

Accordingly, "a pre-trial motion for sanctions is not the appropriate vehicle to test the truth or falsity of allegations in a complaint." *Id.* ("If I were to accept this claim and sanction Plaintiffs, it would be tantamount to discrediting the truth of these allegations. Such a finding, if

---

made in violation of the court's order requiring confidentiality. Neither of these cases even reference Rule 11, let alone stand for the proposition, as Defendants seem to contend, that "knowingly disclosing privileged information" is a Rule 11 violation.

warranted, is and should remain in the discretion of the fact finder."); *Yousef v. Al Jazeera Media Network*, No. 16-CV-6416, 2018 WL 6332904, at *2 (S.D.N.Y. Oct. 31, 2018) ("The motion for sanctions was premature. It is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the *end of the litigation*. This is because the court requires additional information to determine whether the claim is frivolous." (emphasis in original)).

Here, Plaintiff is pursuing his claims in state court—not abandoning them or in any way conceding his right to recovery for Defendants' egregious conduct pleaded in the Amended Complaint. By seeking sanctions regarding a claim's substantive viability, however, Defendants improperly seek an end-run around the litigation process. There is no record from which the Court should (or can) determine that any claim is frivolous under Rule 11. The Court has not adjudicated the legal sufficiency of any claims under Rule 12(b)(6). Plaintiff has not obtained discovery from Defendants. The parties and Court have not assessed the sufficiency of evidence under Rule 56. And a trier of fact has not heard the evidence or resolved disputes of fact.

Nonetheless, Defendants maintain that Plaintiff's allegations of idea misappropriation "illuminate the objective unreasonableness of his claim." Defs.' Mem., ECF No. 55, at 13. That contention is meritless. In fact, Defendants expose their own misunderstanding of the allegations—specifically, the very technological advancement Plaintiff introduced to them and which they used to create Stake.com and now claim is theirs to Plaintiff's exclusion—while denying Plaintiff's contributions.

Defendants find "frivolous and harassing" the Complaint's assertion that the Primedice idea, conceived by Plaintiff, was "simply an 'improvement upon' Satoshi Dice, an existing 'blockchain-based gambling concept.'" *Id.* (citing Complaint, ECF No. 27 at ¶ 35). They ignore the factual questions inherent in the legal requirement of "novelty," and instead, argue that

the Complaint is frivolous because it did not include factual support. In reality, Primedice was not a blockchain-based gambling concept at all, as Satoshi Dice had been at the time of Primedice's creation. Nor was Satoshi Dice a dice game like Primedice. Rather, Satoshi Dice was the equivalent of a technological coin flip where a bet either won or lost according to an algorithm.

In contrast with the simplistic, blockchain-based Satoshi Dice, Primedice was created to exist independent of the blockchain, *i.e.*, it was a full and independent infrastructure which permitted an attractive player experience using graphics, user interfaces, deep gameplayer relationships, and multiple casino style games which was the partnership's objective from its formation. Such an experience was impossible on the blockchain, as Defendants should know. Indeed, after the launch of Primedice in May 2013 (*see* Complaint, ECF No. 27 at ¶ 42), it was Satoshi Dice which copied Primedice, not the other way around. Satoshi Dice introduced an "off-chain" version of its game in October 2013.[10] Defendants' ignorance about the central and novel technological feature of Primedice is telling of their lack of involvement in its creation. In any case, these facts negate Defendants' assertions of frivolousness of this undecided claim.

In sum, Defendants cannot utilize a Rule 11 motion to test the efficacy of Plaintiffs' allegations as to idea misappropriation or otherwise. Nor can Defendants bypass the entire litigation process and then conclude that they will prevail on any cause of action—let alone conclude that the cause of action is so unsupportable as to be sanctionable. For this reason, too, the Motion should be denied. *See Hernandez*, 2022 WL 17584025, at *1 ("Rule 11 motions should not be employed to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.").

---

[10] *See* https://www.coindesk.com/markets/2013/10/31/new-satoshidice-owner-launches-tribute-game/.

## IV. Defendants, not Plaintiff, Have Caused the Needless Expense of Attorneys' Fees

### A. Defendants have not shown fees and other expenses directly resulting from the alleged Rule 11 violation.

Under Rule 11(c)(4), a sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Applying that standard, courts have focused on the fees that would have been avoided if the opposing party had withdrawn the filing after receiving the safe harbor notification. *See, e.g.*, *Pickett v. Migos Touring, Inc.*, No. 118CV09775, 2020 WL 1853202, at *9 (S.D.N.Y. Feb. 25, 2020), *report and recommendation adopted in part*, *rejected in part*, No. 18CIV9775, 2020 WL 2904864 (S.D.N.Y. June 3, 2020) ("Defendants did not serve their Rule 11 motion upon Plaintiff's counsel until July 25, 2019. Thereafter, pursuant to Rule 11(c)(2), Plaintiff and his counsel had 21 days, *i.e.*, until August 15, 2019, to withdraw Plaintiff's claim. Thus, the attorneys' fees which Plaintiff and his counsel are required to pay under Rule 11 did not start to accrue until August 15, 2019"); *see also Cameau v. Nat'l Recovery Agency, Inc.,* No. 15CV2861, 2018 WL 4853050, at *3 (E.D.N.Y. Sept. 28, 2018) (awarding fees and expenses for briefing summary judgment where that briefing "could have been avoided had [plaintiff] withdrawn the claim as requested" during the safe harbor period); *Source Vagabond Sys., Ltd. v. Hydrapak, Inc.*, No. 11-CV-5379, 2013 WL 634510, at *1 (S.D.N.Y. Feb. 21, 2013) (awarding attorney's fees under Rule 11 for the time spent by party to respond to "motion for reconsideration [that] was itself frivolous").

Even if Plaintiff's Complaint were sanctionable under Rule 11 (it is not), then Defendants would not be entitled to attorneys' fees in connection with their motion to dismiss. Defendants only served their Rule 11 Letter—providing notice of their contention that the Complaint asserted frivolous legal claims and unsupported factual allegations—on April 21, 2023,

after the motion to dismiss had been fully briefed and was *sub judice*. No oral argument was held on the motion, and no further proceedings were held before the Court decided the motion on June 26, 2023. Accordingly, Defendants did not accrue any expense defending against the allegations of the Complaint after providing notice in their Rule 11 Letter. Put another way, Defendants would be in the same position even if Plaintiff had withdrawn the Amended Complaint after receiving the safe harbor letter. Their incurred fees did not directly result from the alleged Rule 11 violation.

Even so, Defendants have elected to burden the Court and subject Plaintiff to the added expense of defending against charges of having filed a sanctionable pleading (which, for reasons provided above, Plaintiff did not do). Under those circumstances—where there is no injury suffered by Defendants—an award of fees or costs is unwarranted even if there had been a Rule 11 violation.

B. Defendants should pay Plaintiff's fees and costs incurred in responding to this unmeritorious Motion.

Rule 11 provides that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Under that provision, the Court may award Plaintiff his attorneys' fees incurred in responding to this Motion:

> The Court has no trouble concluding that [plaintiff] had an objectively reasonable basis [for] alleging personal jurisdiction over [defendant], and it hereby denies [defendant]'s motion. Indeed, the Court has so little trouble reaching this conclusion that it finds, instead, that it is [defendant]'s motion that is frivolous. . . . [Plaintiff] has requested that the Court award attorneys' fees incurred in defending the instant motion, and the Court hereby grants [plaintiff]'s request.

*Arcadia Biosciences, Inc. v. Vilmorin & Cie, Limagrain Cereales Ingredients SA*, No. 18-CV-8059, 2019 WL 1447138, at *3 (S.D.N.Y. Feb. 5, 2019).

Plaintiff is entitled to fees for opposing the Motion. Setting aside the plain reasonableness of Plaintiff's claims and allegations, Defendants served their Rule 11 Letter *after*

their motion to dismiss was fully briefed, meaning they lacked a mechanism to save time and effort if Plaintiff had withdrawn any filing. Nevertheless, Defendants filed the Motion—i.e., started "doing some litigating of [their] own"—only after Plaintiff informed them that he was proceeding in state court (so as to avoid costly jurisdictional challenges in this Court). In other words, Defendants prolonged the dispute in this Court, while detracting from litigation on the merits in state court, without a reasonable basis and for a seemingly retaliatory purpose.

Worse yet, their Motion raised a ground not specified in their earlier Letter and provided little (if any) support for their accusations that Plaintiff had taken frivolous positions on unresolved factual and legal issues. There have been no adjudications as to the legal or factual sufficiency of Plaintiff's idea misappropriation claim, yet Defendants seek sanctions for those allegations. Defendants have not established the existence—or lack of waiver—of any privileged information, yet they accuse Plaintiff of violating privilege. They nonsensically accuse Plaintiff of "forum shopping" because he filed his claims in state court in response to Defendants' jurisdictional challenges.

These facts suggest that Defendants brought this Motion to harass and retaliate against Plaintiff, rather than to mitigate the fees and costs of litigating unsupported issues. Unfortunately, the ploy succeeded in forcing Plaintiff to expend substantial time and effort in preparing these responsive papers. Hence, Plaintiff should be deemed the "prevailing party" and awarded reasonable fees under Rule 11(c)(2).

**V.     To the Extent the Court Is Considering Sanctions, Plaintiff Requests an Evidentiary Hearing.**

Courts have discretion to hold evidentiary hearings prior to awarding sanctions under Rule 11. *See, e.g., Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*, No. CV 10-4677, 2018 WL 4692353, at *15 (E.D.N.Y. Aug. 31, 2018) ("[T]his Court recommends that

Plaintiff's motion for Rule 11 sanctions be denied without prejudice to renewal upon a full evidentiary hearing.").

As explained *supra*, the record does not support a finding that Plaintiff violated Rule 11. Further, if deemed necessary, Plaintiff would want the opportunity to furnish important context bearing on the issues raised. Accordingly, if the Court believes that any aspect of Defendants' broad submission requires additional consideration, Plaintiff and counsel respectfully request an evidentiary hearing so that they can present evidence and argument addressing the Court's inquiries.

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied in full, and this case should be closed as the parties proceed in state court.

Dated:    New York, New York
         September 1, 2023

GAGE SPENCER & FLEMING LLP


*/s/ William B. Fleming*
William B. Fleming
410 Park Avenue, Suite 810
New York, New York 10022
Tel. (212) 768-4900
Email: wfleming@gagespencer.com
*Attorneys for Plaintiff Christopher Freeman*
