UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER FREEMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>STAKE.COM, PRIMEDICE, EDWARD CRAVEN, BIJAN TEHRANI, SLICEMEDIA B.V., MEDIUM RARE N.V., EASYGO SOLUTIONS PTY LTD, MEBIT.IO, AND MLADEN VUČKOVIĆ,<br><br>        Defendants. | Case No. 22-CV-7002 (RA) |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

David McGill
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
Email: dmcgill@orrick.com

R. David Hosp
Stephen Hall (*admitted pro hac vice*)
222 Berkeley Street
Suite 2000
Boston, MA 02116
Telephone: (617) 880-1802
Facsimile: (617) 880-1801
Email: dhosp@orrick.com
       stephen.hall@orrick.com

Orrick, Herrington & Sutcliffe LLP
*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | Preliminary Statement | 1 |
| II. | Argument | 1 |
| | A. Defendants Provided Sufficient Notice of Potential Rule 11 Sanctions | 1 |
| | B. Plaintiff's Frivolous Theory of Subject Matter Jurisdiction Warrants Sanctions Under Rule 11(b)(2) | 3 |
| | C. Plaintiff's Conflicting Allegations of Fact Warrant Sanctions Under Rule 11(b)(3) | 5 |
| | D. Plaintiff's Claim for Idea Misappropriation Merits Sanctions | 7 |
| | E. Plaintiff's Knowing Disclosure of Privileged Information Warrants Sanctions | 8 |
| | F. Substantial Monetary Sanctions Are Available and Warranted. | 9 |
| III. | Conclusion | 10 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Almazan v. Almazan*,
   No. 14-CV-311, 2015 WL 500176 (S.D.N.Y. Feb. 4, 2015)..........................................................6

*Appel v. Hayut*,
   No. 20 CIV. 6265, 2022 WL 214450 (S.D.N.Y. Jan. 25, 2022), *aff'd sub nom.
   Appel v. Cohen*, No. 22-170, 2023 WL 1431691 (2d Cir. Feb. 1, 2023)...................................2

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
   No. 22 CIV. 2716, 2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023) ...............................4, 5, 7, 10

*Glassman v. Feldman*,
   No. 19-CV-5002, 2020 WL 6119270 (E.D.N.Y. Oct. 16, 2020).................................................9

*Herrera v. Clipper Grp., L.P.*,
   No. 97-CIV-560, 1998 WL 229499 (S.D.N.Y. May 6, 1998)....................................................9

*Herrick Co. v. SCS Comms., Inc.*
   251 F.3d 315 (2d Cir. 2001)..........................................................................................................5

*Jeffreys v. Rossi*,
   275 F. Supp. 2d 463 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New
   York*, 426 F.3d 549 (2d Cir. 2005)................................................................................................2

*Jes Solar Co. Ltd. v. Tong Soo Chung*,
   725 F. App'x 467 (9th Cir.), *amended on denial of reh'g*, 716 F. App'x 635
   (9th Cir. 2018)................................................................................................................................5

*LaVigna v. WABC Television, Inc.*,
   159 F.R.D. 432 (S.D.N.Y. 1995) .................................................................................................1

*Lawson v. Rubin*,
   No. 17-CV-6404, 2018 WL 4861380 (E.D.N.Y. Oct. 5, 2018)......................................7, 9, 10

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................................................6

*Lok v. I.N.S.*,
   681 F.2d 107 (2d Cir. 1982).........................................................................................................4

*Nardoni v. City of New York*,
   No. 17CIV2695, 2019 WL 542349 (S.D.N.Y. Feb. 12, 2019), No. 1:17-CV-
   2695, 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019).....................................................................2

*Priest v. Hennessy*, 51 N.Y.2d 62, 70, 409 N.E.2d 983 (1980) ....................................................... 8

*Rapp v. Fowler*,
  No. 20-CV-9586, 2022 WL 2037682 (S.D.N.Y. June 6, 2022) ................................................. 5

*Sacerdote v. Cammack Larhette Advisors*,
  LLC, No. 17-CV-8834, 2022 WL 2078012 (S.D.N.Y. June 8, 2022) ....................................... 2

*Spectrum Sys. Int'l Corp. v. Chem. Bank*,
  78 N.Y.2d 371, 581 N.E.2d 1055 (1991) ................................................................................. 8

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
  682 F.3d 170 (2d Cir. 2012) ..................................................................................................... 2

*United States v. Ghavami*,
  882 F. Supp. 2d 532 (S.D.N.Y. 2012) ...................................................................................... 8

*Universitas Educ., LLC v. Nova Grp., Inc.*,
  No. 11-CV-1590, 2021 WL 4443962 (S.D.N.Y. Sept. 28, 2021), *aff'd sub
  nom. Universitas Educ., LLC v. Grist Mill Cap., LLC*, No. 21-2690, 2023 WL
  2170669 (2d Cir. Feb. 23, 2023) ............................................................................................... 4

*XL Specialty Ins. Co. v. Otto Naumann, Ltd.*,
  No. 12-CV-8224, 2015 WL 1499208 (S.D.N.Y. Mar. 31, 2015) .............................................. 6

**Statutes**

U.S. Immigration and Nationality Act ............................................................................................ 4

**Other Authorities**

Fed. R. Civ. P. 8 .............................................................................................................................. 6

Fed. R. Civ. P. 11 .................................................................................................................. *passim*

**PRELIMINARY STATEMENT**

In their Opposition to Defendants' Motion for Sanctions ("Opposition" or "Opp.," Dkt. 60), Freeman and his counsel merely paint themselves into a corner. By offering a series of *post hoc* justifications that lack any mooring in the Amended Complaint, the Opposition provides final confirmation that Freeman and his counsel never conducted a reasonable inquiry into the viability of their theories of jurisdiction and misappropriation, much less their allegations about Primedice.

As explained in Defendants' opening brief (Dkt. 55), Rule 11(b)(2) "imposes an affirmative duty on the signer to conduct a reasonable inquiry into the viability of a pleading *before it is signed*." *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 434 (S.D.N.Y. 1995) (cleaned up) (emphasis added). Nowhere in their Opposition papers (spanning 34-pages of briefing and affirmations) do Freeman or his counsel discuss or describe any inquiry, let alone a reasonable one, undertaken in support of Freeman's frivolous theories *before* filing the Amended Complaint. That is because no such inquiry occurred; their current arguments are just nonsensical backfill.

Ultimately, what is most offensive about the misconduct before the Court is not that Freeman and his counsel failed to conduct appropriate due diligence. It is the fact that they have consistently refused to be candid with the Court in acknowledging their errors, repeatedly attempting to defend the indefensible and explain the inexplicable, with sworn statements no less. While the Court can – and should – impose an appropriate sanction for the failure to conduct the reasonable inquiry required by Rule 11, it should impose a much harsher sanction for the ongoing lack of candor reflected in Freeman's filings on the issues now before the Court.

**ARGUMENT**

**I.   Defendants Provided Sufficient Notice of Potential Rule 11 Sanctions.**

As a preliminary matter, Plaintiff's technical challenge to the procedural legitimacy of Defendants' motion is based on a misstatement of the law. *See* Dkt. 60 at 6 n.4. Defendants served

1

a letter and a notice of motion on April 21, 2023, which Freeman concedes is sufficient notice under Rule 11(c)(2). *Id.*; Dkt. 54 ¶¶ 2, 3; Dkt. 54.01 (the "Rule 11 Letter"), Dkt. 54.02.[1] His only quibble is that the specific grounds for the motion were explained in the letter. Dkt. 60 at 6 n.4. But the notice of motion specifically referred to the letter, stating Defendants' grounds for sanctions were "as set forth in prior correspondence." Dkt. 54.02. Furthermore, courts have held that a letter alone is sufficient notice under Rule 11(c)(2). *Sacerdote v. Cammack Larhette Advisors*, LLC, No. 17-CV-8834 (AT)(VF), 2022 WL 2078012, at *8 (S.D.N.Y. June 8, 2022) (notice sufficient when particular grounds explained "either in a notice of motion or the letter itself, and the subsequent sanctions motions raised 'substantially' the same grounds as those raised in the letter"); *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 480, fn. 27 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).[2]

Directly contrary to what Freeman represents in the Opposition, Defendants also previewed the sanctionable nature of Freeman's claims throughout their motion to dismiss. *Compare* Opp. at 1 n.1 ("Defendants' motion to dismiss did not raise any issue about baseless or frivolous arguments") *with, e.g.,* Dkt. 42 at 1 (describing the Amended Complaint as lacking "any semblance of legal merit" and citing inconsistent allegations, unsupported arguments, and "uncurable failures"), 8 (no "colorable argument"), 24 (noting "incurable defects"), 25 (noting "the frivolous

---

[1] As the Court may recall, Defendants also previewed that they intended to raise "substantial" jurisdictional challenges to the action during the December 2, 2022 conference, which is why the parties proposed a schedule for motion to dismiss briefing on December 28, 2022 (Dkt. 25), even before Freeman had filed the Amended Complaint.

[2] *Nardoni v. City of New York*, cited by Plaintiff, says nothing to the contrary. *See* No. 17CIV2695GHWGWG, 2019 WL 542349, at *5 (S.D.N.Y. Feb. 12, 2019), *report and recommendation adopted*, No. 1:17-CV-2695-GHW, 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019) (where the notice of motion did not state grounds for sanctions, court proceeded to assess the motion based on grounds enumerated in the letter).

nature of the Amended Complaint").[3]

## II. Plaintiff's Theory of Jurisdiction Warrants Sanctions Under Rule 11(b)(2).

Freeman's own allegations and sworn statements long ago exposed the frivolous nature of his subject matter jurisdiction theory, as they squarely establish that Mr. Tehrani is stateless, thus eliminating diversity between the parties. As the Court noted, "(1) the Complaint alleges Tehrani has physically resided in Australia since 2016 … and (2) the Complaint, along with Freeman's own filings, establish Tehrani's continued intent to remain there.…" Dkt. 52 at 8. Freeman has been confronted with this fatal flaw twice, when Defendants filed their motion to dismiss and again through their Rule 11 Letter. Yet, instead of withdrawing the Amended Complaint, Freeman defended it by advancing a separately sanctionable, entirely frivolous legal argument, which, by his own admission, lacks any support in the expansive body of case law addressing jurisdiction. *See* Dkt. 45 at 14 ("[W]e have not found cases addressing the precise issue").

Specifically, in resisting dismissal for lack of jurisdiction, Freeman argued that this Court should (1) decide that Mr. Tehrani has violated the laws of foreign sovereigns or been sufficiently "associated with a person, group or organization" that has violated the laws of foreign sovereigns, despite no sovereign having made any determination of the sort, and (2) assume the role of Australian immigration authorities and conclude that, based on these supposed violations and/or associations, Mr. Tehrani cannot legally remain in Australia. *See id.* at 11-15.  Notably, nowhere in the 316-paragraph Amended Complaint does Freeman allege *any* facts to support his convoluted theory of unlawful domicile – to the contrary, he affirmatively alleged that Mr. Tehrani is currently

---

[3] Freeman also complains that Defendants "raised a ground not specified in their earlier Letter," Dkt. 60 at 24, specifically his failure to allege the citizenship of each Defendant, as relevant to his subject matter jurisdiction theory. Dkt. 59 at ¶ 24. But a motion based on "substantially" the same grounds as those enumerated in the notice is sufficient. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012); *Appel v. Hayut*, No. 20 CIV. 6265 (JPC), 2022 WL 214450, at *3 (S.D.N.Y. Jan. 25, 2022), *aff'd sub nom. Appel v. Cohen*, No. 22-170, 2023 WL 1431691 (2d Cir. Feb. 1, 2023).

3

a resident of Australia and later acknowledged in a sworn statement that he expected him to stay. Dkt. 27 at ¶¶ 19, 115; Dkt. 47 at ¶ 41. In any event, as this Court noted, the inquiries necessitated by Freeman's theory "would run afoul of the basic principles of comity." Dkt. 52 at 8. And neither jurisdictional discovery nor an evidentiary hearing would relieve these comity concerns.

Undeterred by the Court's prior ruling, Freeman now argues that his frivolous theory is "rooted in Second Circuit precedent." Opp. at 7. But the only case he cites as support addresses "lawful unrelinquished domicile" for purposes of a deportation exception under the U.S. Immigration and Nationality Act. *Lok v. I.N.S.*, 681 F.2d 107, 108 (2d Cir. 1982). *Lok* has nothing to do with the diversity statute, the domicile of a U.S. citizen residing abroad, or a federal court's authority to second-guess a foreign sovereign's immigration determinations. *Id.*; *see also* Dkt. 51 at 4; *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 WL 4443962, at *11 (S.D.N.Y. Sept. 28, 2021), *aff'd sub nom. Universitas Educ., LLC v. Grist Mill Cap.*, LLC, No. 21-2690, 2023 WL 2170669 (2d Cir. Feb. 23, 2023) (sanctioning jurisdiction arguments that "are not only without merit, but have been considered and rejected by this Court on prior occasions").

Freeman next argues that his theory falls within Rule 11(b)(2)'s safe harbor for any "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *see* Opp. at 9. But there is no safe harbor for his conduct here. Setting aside that Freeman developed this new theory only in response to a motion to dismiss, rather than *before* filing the Amended Complaint, the argument he now advances relies on mischaracterizations of existing precedent rather than logical extensions of it. Underscoring the point, Freeman offers no argument whatsoever for *why* the law should change and compel U.S. federal courts to assume the roles of foreign criminal and immigration authorities. *See Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, No. 22 CIV. 2716, 2023 WL

4

2346337, at *8 (S.D.N.Y. Mar. 3, 2023) (imposing sanctions where plaintiff failed to "make any argument at all for why these propositions of law should be modified or overturned").[4]

### III. Plaintiff's Conflicting Allegations Merit Sanctions Under Rule 11(b)(3).

Rule 11(b) applies to "representations to the Court." Here, Freeman named Primedice (a partnership that he and his lawyer now say does not exist) as a Defendant, and made very specific allegations as to its ongoing existence and Freeman's current role in it, including that: (1) "Primedice *is* a New York common law partnership," (2) "Freeman *is* a partner in Primedice with Tehrani and Craven," and (3) "Freeman, Tehrani, and Craven *are* partners in Primedice." Dkt. 27 at ¶¶ 21, 262, 301 (emphasis added). These allegations rendered Freeman's diversity theory objectively unreasonable from the outset. Even a cursory review of relevant precedent would show, as the Court noted, that "a partnership assumes the citizenship of each of its partners." Dkt. 52 at 9; *see also*, Dkt. 42 at 12; Dkt. 51 at 6; Dkt. 55 at 8. Between this well-established principle and the incurable statelessness defect, it is clear Freeman had no chance of success on his diversity theory and had not conducted any reasonable inquiry into its viability before filing his complaints.

Regrettably, when confronted with the consequences of his allegations as to the Primedice

---

[4] The cases Freeman cites for the first time in his Opposition highlight his reliance on *post hoc* justifications developed after filing the Amended Complaint. *See* Opp. at 8. They are also inapposite: First, *Rapp* determined the Defendant's domicile based on primary factors that would weigh decidedly against Freeman's arguments, including the residency of the Defendant at the time of the assertion of diversity jurisdiction (alleged to be Australia), the length of time the Defendant had resided in that jurisdiction prior to the assertion of diversity jurisdiction (since 2016, according to Freeman), and the ownership of a home in that jurisdiction. *See Rapp v. Fowler*, No. 20-CV-9586, 2022 WL 2037682, at *3 (S.D.N.Y. June 6, 2022). Second, *Jes Solar*, an unpublished opinion from another circuit, did not involve a determination of the legality of a party's domicile and involved competing evidence, unlike here where Freeman's own allegations and sworn statements establish that Mr. Tehrani is a U.S. citizen domiciled in Australia. *See Jes Solar Co. Ltd. v. Tong Soo Chung*, 725 F. App'x 467, 469 (9th Cir.), *amended on denial of reh'g*, 716 F. App'x 635 (9th Cir. 2018) (unpub). Finally, Freeman's citation to burden-shifting caselaw, which appears nowhere in his earlier briefing, does not apply in light of his own sworn statement supporting Mr. Tehrani's place of domicile in Australia. *See* Dkt. 47 at ¶ 41; Opp. at 9-12; *see Herrick Co. v. SCS Comms., Inc.* 251 F.3d 315, 323-24 (2d Cir. 2001) ("[A] party seeking to challenge diversity by alleging a change of domicile does not … bear the burden of proving that change if the party seeking to establish diversity has not carried its (prior) burden of establishing a specific initial domicile from which the change would be a departure.").

5

partnership, instead of withdrawing his complaint, Freeman doubled down and engaged in another layer of sanctionable conduct by contradicting his own allegations and claiming that Primedice – one of the parties that he named as a defendant and from whom he sought specific relief – is no longer in existence. *See* Dkt. 55 at 11. Since these competing allegations and representations about Primedice's current status as a partnership cannot both be true, at least one runs afoul of Rule 11.

Freeman's justification for his reversal on a key factual issue is that Defendants and the Court should have inferred from allegations that Defendants converted only a **portion** of Freeman's equity interest and sought to "freeze" him out in various ways that what he *really* intended to allege is that Primedice *used to be* a partnership. Dkt. 27 at ¶¶ 74, 78, 220-21, 286; Dkt. 60 at 12, 13; Dkt. 59 at ¶ 28. Never mind that this proposed inference directly contradicts the specific allegations and relief sought in his Amended Complaint. *See* Dkt. 27 at ¶¶ 21, 221 ("Freeman should be declared to possess a share of the partnership in Primedice"), 262, 301.

While Rule 8(d)(2) permits "alternative statements *of a claim*," it does not grant Plaintiff "license to plead inconsistent *assertions of facts* within the allegations that serve as the factual predicates for an independent, unitary claim." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 406-07 (S.D.N.Y. 2001) (emphasis added); *see XL Specialty Ins. Co. v. Otto Naumann, Ltd.*, No. 12-CV-8224 DAB, 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015) ("Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit 'inconsistent assertions of facts within the allegations'"); *Almazan v. Almazan*, No. 14-CV-311 AJN, 2015 WL 500176, at *13 (S.D.N.Y. Feb. 4, 2015) ("The Federal Rules expressly allow for pleading in the alternative … However, Plaintiffs may not plead facts in the alternative."). In sum, Rule 11 prohibits a plaintiff from pleading contradictory facts when his original allegations do not suit his legal theories, and Freeman should not get a pass for forcing Defendants (and the Court)

to deal with the fallout from his failure to adhere to this basic obligation. Fed. R. Civ. P. 11(b)(3).[5]

### IV. Freeman's Frivolous Claim for Idea Misappropriation Merits Sanctions.

Freeman's own allegations confirm that the alleged "idea" at the core of his idea misappropriation claim lacks the requisite novelty, and his claim is therefore frivolous and sanctionable. *See* Dkt. 55 at 12-13; Dkt. 42 at 39-40. In his Opposition, Freeman argues that Defendants' motion for sanctions as to this claim is "premature" since the claim has not been tested on dispositive motion or at trial. Opp. at 19-20. This argument misses the mark for two reasons. First, Defendants moved to dismiss the idea misappropriation claim, and courts frequently grant sanctions after granting motions to dismiss. *See* Dkt. 42 at 39-41; *Charles Equip. Energy Sys., LLC*, 2023 WL 2346337, at *9 (granting motion for sanctions filed after motion to dismiss); *Lawson v. Rubin*, No. 17-CV-6404, 2018 WL 4861380, at *2 (E.D.N.Y. Oct. 5, 2018) (same). While the Court did not reach Defendants' arguments as to the idea misappropriation claim, the Court's dismissal on another ground does not shield Freeman from sanctions for that claim.

Second, the assertion (Opp. at 20) that Defendants are seeking "an end-run around the litigation process" is simply false: Freeman's misappropriation claim is not going to trial in any forum. In stark contrast to what he has now represented to the Court, Freeman in fact *has* abandoned his idea misappropriation claim in state court, effectively conceding the frivolous nature of that claim. *Compare* Opp. at 20 ("Plaintiff is pursuing his claims in state court—not abandoning them or in any way conceding his right to recovery") *with* Dkt. 54.04 (New York State

---

[5] In a sworn affirmation, Plaintiff's counsel attempts to portray a series of direct and specific allegations that Primedice is an active partnership, including two allegations that specifically frame his client as a current partner, as wholly consistent with "the central contention that Freeman was improperly ousted from the partnership and the partnership destroyed." *Compare* Dkt. 27 at ¶¶ 21, 262, 301 *with* Dkt. 59 at ¶ 29. Tellingly, he does not attempt to explain why Primedice was named as a Defendant, which is again the case in his recently filed state action (Dkt. 54.04), or why Freeman sought relief specific to Primedice in this action if the partnership had been "destroyed" and no longer exists. Regrettably, these claims and omissions are emblematic of the overall lack of candor reflected in Freeman's filings.

complaint containing no cause of action for idea misappropriation).[6]

## V. Freeman's Knowing Disclosure of Privileged Information Warrants Sanctions.

In his response to Defendants' Rule 11 Letter, Freeman did not dispute that disclosure of privileged information is sanctionable, and he conceded the "privileged and confidential nature" of the information he disclosed. Dkt. 54.03 at 3.  His belated attempts to reverse course on these points succeed only in showcasing his ongoing lack of candor and bad faith.

Courts have recognized that "attorneys may be sanctioned in federal court for breaches of professional ethics," including the improper disclosure of privileged communications. *Glassman v. Feldman*, No. 19-CV-5002, 2020 WL 6119270, at *6 (E.D.N.Y. Oct. 16, 2020) ("[w]here lawyers are involved in scurrilous allegations, professional sanctions may be available, as are monetary sanctions under Rule 11") (internal quotation marks omitted). And Freeman ignores that sanctions based on his improper disclosures are equally available under the Court's inherent authority. *See, e.g., Herrera v. Clipper Grp., L.P.*, No. 97-CIV-560, 1998 WL 229499, at *5 (S.D.N.Y. May 6, 1998) (imposing sanctions for unauthorized disclosures).

Furthermore, it is black letter law that "the privilege protects not only the advice of the attorney to the client, but also the information communicated by the client that provides a basis for giving advice." *United States v. Ghavami*, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012); *see Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377, 581 N.E.2d 1055 (1991); *Priest v. Hennessy*, 51 N.Y.2d 62, 70, 409 N.E.2d 983 (1980) ("the statements of the client for the purpose of seeking advice from his counsel were the disclosures which were to be kept secret"). These principles clearly apply here. *See, e.g.*, Dkt. 45 at 8 ("Tehrani … asks questions of Hoegner about the full-

---

[6] Freeman's decision not to further amend his pleadings, as the Court permitted if he had "a good faith basis for doing so," Dkt. 52 at 11, and instead to file a state court action without even bothering to apprise the Court of his choice, only adds to the long list of ways in which he has abused the litigation process in this matter.

service online casino project …. Freeman emails Hoegner questions about the developers on the bigger casino project …."), 12 ("attorneys retained to assist the partnership affirmatively notified Tehrani and Craven that online cryptocurrency gambling was not legal…."), 15-16 ("In 2014 … Tehrani consulted with a New York law firm which concluded that Primedice needed to shut down"); Dkt. 47 at ¶¶ 14, 20 ("Tehrani asked me to communicate with Hoegner questions he had about the full service online casino project we had been working on").

Notably, Freeman and his counsel make no attempt to explain why the inclusion of these disclosures was necessary to grounding any claims in the Amended Complaint. The reason is clear: Freeman, who alleged himself to be a Primedice partner, *see, e.g.*, Dkt. 27 at ¶ 262, included these statements in public filings for improper purpose, namely, to gain a litigation advantage at the expense of Primedice's right to keep legal advice privileged and confidential. And he did so as part of a broader strategy to insert irrelevant, inflammatory anecdotes in the Amended Complaint to harass Defendants and make it appear as though they are engaged in dubious conduct. *See, e.g.*, Dkt. 27 at ¶ 66 (irrelevant *ad hominem* allegation about substance abuse), ¶ 30(f)(i) (irrelevant *ad hominem* allegation that parent of Defendant has been convicted of a crime), ¶ 31 (irrelevant references to FTX); Dkt. 45 at 10-14 (assuming illegal activity and purported immigration violations); Dkt. 60 at 13 (gratuitous anecdote about supposed tax fraud).[7]

### VI. Substantial Monetary Sanctions Are Available and Warranted.

Freeman's contention that attorneys' fees are unavailable due to the timing of Defendants' motion for sanctions is contradicted by the caselaw. *See, e.g.*, *Lawson*, 2018 WL 4861380, at *2

---

[7] Freeman's argument that Defendants must rebut evidence of waiver is a red herring. *See* Opp. at 18. By disclosing legal advice without any advance notice to Defendants, Freeman deprived Defendants of the opportunity to debate the merits of their privilege claims. In any event, the so-called "evidence" of waiver he cites pertains to only one of the myriad improper disclosures and is unspecific, omitting details such as to whom the waiver was made and when. Dkt. 47 at ¶ 12 (stating that information was shared with "social friends").

("The argument by plaintiffs' counsel that I should reduce Schnur's award because she waited to bring her sanctions motion until after I ruled on her motion to dismiss is equally without merit. A party is not obligated to bring a Rule 11 motion at the earliest possible opportunity"); *Charles Equip. Energy Sys., LLC*, 2023 WL 2346337, at *9 (granting motion for sanctions filed after motion to dismiss briefing and awarding "the amount of costs and attorneys' fees reasonably incurred to make the successful motion to dismiss").

Freeman also contends that Defendants' "incurred fees did not directly result from the alleged Rule 11 violation." Opp. at 23. But had Freeman not brought a lawsuit in federal court premised on a frivolous theory of subject matter jurisdiction, Defendants would have incurred *none* of the costs associated with this litigation. In any event, Freeman misapprehends the key purpose of Rule 11 sanctions, which is to act as a deterrent rather than provide compensatory damages. *Lawson*, 2018 WL 4861380, at *1 ("The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses") (cleaned up). Accordingly, the Court may properly exercise its discretion to award Defendants' fees and impose any other available form of sanction as well, such as issuing reprimand. Fed. R. Civ. P. 11 (Advisory Committee Notes explaining variety of available forms of sanctions.)

## II.    CONCLUSION

After forcing Defendants to defend against a frivolous lawsuit in federal court, Freeman is now content to "proceed in state court," implicitly conceding that he never should have filed suit in federal court in the first place. Opp. at 25. For the reasons stated herein and in Defendants' opening brief, Defendants' motion should be granted, and the Court should impose meaningful sanctions on Freeman and his counsel, inclusive of reasonable attorneys' fees accrued by Defendants in responding to filings made by Freeman and his counsel in violation of Rule 11.

Dated: September 15, 2023                                ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  */s/ David McGill*
David McGill
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
Email: dmcgill@orrick.com

R. David Hosp
Stephen Hall (*admitted pro hac vice*)
222 Berkeley Street
Suite 2000
Boston, MA 02116
Telephone: (617) 880-1802
Facsimile: (617) 880-1801
Email: dhosp@orrick.com
          stephen.hall@orrick.com

*Attorneys for Defendants*